**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

**CLERK'S CERTIFICATE AND APPEALS COVER SHEET**

**ABBREVIATED ELECTRONIC RECORD**

Case Caption:  State of New York et al v. Trump et al

District Court Number:  25cv11221-PBS

Fee:    Paid?   Yes _____   No _____   Government filer __X__  *In Forma Pauperis* Yes _____   No _____

Motions Pending        Yes _____ No __X__          Sealed documents       Yes _____ No __X__
*If yes, document #*    _____          *If yes, document #*    _____

*Ex parte* documents   Yes _____ No __X__          Transcripts            Yes __X__ No _____
*If yes, document #*    _____          *If yes, document #*    142,159,215,232,237

Notice of Appeal filed by: Plaintiff/Petitioner _____   Defendant/Respondent __X__  Other: _____

Appeal from:

#162 Memorandum and Order, #234 Memorandum and Order, #240 Judgment
Other information:

I, Robert M. Farrell, Clerk of the United States District Court for the District of Massachusetts, do hereby certify that the annexed electronic documents:

#162, #234, #240, and #241
with the electronic docket sheet, constitute the abbreviated record on appeal in the above entitled case for the Notice of Appeal # ___241___ filed on February 17, 2026_____.

In testimony whereof, I hereunto set my hand and affix the seal of this Court on ___February 17, 2026___.

**ROBERT M. FARRELL**
Clerk of Court

/s/Matthew A. Paine
Deputy Clerk

COURT OF APPEALS DOCKET NUMBER ASSIGNED: _____

**PLEASE RETURN TO THE USDC CLERK'S OFFICE**

# United States District Court
## District of Massachusetts (Boston)
## CIVIL DOCKET FOR CASE #: 1:25-cv-11221-PBS

| | |
|---|---|
| State of New York et al v. Trump et al | Date Filed: 05/05/2025 |
| Assigned to: District Judge Patti B. Saris | Date Terminated: 12/18/2025 |
| Cause: 05:551 Administrative Procedure Act | Jury Demand: None |
| | Nature of Suit: 899 Other Statutes: Administrative Procedures Act/Review or Appeal of Agency Decision |
| | Jurisdiction: U.S. Government Defendant |

**Intervenor Plaintiff**

**Alliance for Clean Energy New York**      represented by      **Brook Detterman**
Beveridge & Diamond, P.C.
155 Federal Street
Suite 1600
Boston, MA 02110
617-419-2345
Email: bdetterman@bdlaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**James Michael Auslander**
Beveridge & Diamond, P.C.
1900 N Street NW
Suite 100
Washington, DC 20036
202-789-6009
Fax: 202-789-6190
Email: jauslander@bdlaw.com
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Commonwealth of Massachusetts**      represented by      **Jon Whitney**
Massachusetts Attorney General's Office
McCormack Building
One Ashburton Place
Boston, MA 02108
701-740-3356
Email: jon.whitney@mass.gov
*ATTORNEY TO BE NOTICED*

**Nathaniel Haviland-Markowitz**
Massachusetts Attorney General's Office
One Ashburton Place, 20th Floor
Boston, MA 02108
347-463-7595
Email: nathaniel.haviland-markowitz@mass.gov

*ATTORNEY TO BE NOTICED*

**Turner Smith**
Massachusetts Attorney General's Office
McCormack Building
One Ashburton Place
Boston, MA 02108
617-963-2784
Email: turner.smith@mass.gov
*ATTORNEY TO BE NOTICED*

**Plaintiff**

| | | |
|---|---|---|
| **State of New York** | represented by | **Jon Whitney** |

**Jon Whitney**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Michael Myers**
NYS Office of The Attorney General
Environmental Protection Bureau
The Capitol
Albany, NY 12224
518-776-2382
Email: michael.myers@ag.ny.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Joya C Sonnenfeldt**
NYS Office of The Attorney General
Litigation Bureau
28 Liberty Street
New York, NY 10005
212-416-8184
Email: joya.sonnenfeldt@ag.ny.gov
*ATTORNEY TO BE NOTICED*

**Laura Mirman-Heslin**
NYS Office of The Attorney General
Environmental Protection Bureau
28 Liberty Street
New York, NY 10005
212-416-6091
Fax: 212-416-6007
Email: laura.mirman-heslin@ag.ny.gov
*ATTORNEY TO BE NOTICED*

**Nathaniel Haviland-Markowitz**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Rene Hertzog**
New York State Attorney General's Office
28 Liberty Street
New York, NY 11201

212-416-8645
Email: rene.hertzog@ag.ny.gov
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**State of Arizona**        represented by   **Jon Whitney**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Mary Curtin**
Arizona Attorney General's Office
2005 N Central Avenue
Phoenix, AZ 85004
602-542-8304
Fax: 602-542-8303
Email: mary.curtin@azag.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Nathaniel Haviland-Markowitz**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**State of California**        represented by   **Jamie Jefferson**
Office of The Attorney General
Department of Justice
1515 Clay Street, 20th Floor
Oakland, CA 94612
510-879-0172
Email: jamie.jefferson@doj.ca.gov
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jon Whitney**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Vanessa Christine Morrison**
Office of The Attorney General
600 West Broadway Ste. 1800
Suite 1800
San Diego, CA 92101
619-738-9447
Fax: 916-732-7920
Email: vanessa.morrison@doj.ca.gov
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Kate Marie Hammond**

Office of the Attorney General
300 South Spring Street
Suite 1702
Los Angeles, CA 90013
213-269-6531
Email: kate.hammond@doj.ca.gov
*ATTORNEY TO BE NOTICED*

**Nathaniel Haviland-Markowitz**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Robert Donald Swanson**
Office of The Attorney General
1300 I St.
Sacramento, CA 95814
916-210-7808
Email: robert.swanson@doj.ca.gov
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**State of Colorado**        represented by   **Jon Whitney**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Carrie Noteboom**
CO Attorney General
1300 Broadway
Denver, CO 80203
720-508-6285
Email: carrie.noteboom@coag.gov
*ATTORNEY TO BE NOTICED*

**Jessica Lowrey**
Colorado Department of Law
1300 Broadway, 10th floor
Denver, CO 80203
720-508-6167
Email: jessica.lowrey@coag.gov
*ATTORNEY TO BE NOTICED*

**Nathaniel Haviland-Markowitz**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**State of Connecticut**        represented by   **Jon Whitney**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jill Lacedonia**
Office of the Attorney General, State of

Connecticut
Environment Department
165 Capitol Avenue
Hartford, CT 06106
860-808-5250
Fax: 860-808-5386
Email: jill.lacedonia@ct.gov
*ATTORNEY TO BE NOTICED*

**Nathaniel Haviland-Markowitz**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**State of Delaware**                        represented by **Ian Liston**
Delaware Department of Justice
Fraud and Consumer Protection Division,
White Collar Crime U
820 North French Street
Wilmington, DE 19801
302-683-8875
Email: ian.liston@delaware.gov
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jon Whitney**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Ralph K Durstein , III**
State of Delaware Department of Justice
Fraud Division Impact Litigation
820 N. French Street
Union Park Gaardens
Wilmington, DE 19801
302-750-7498
Email: ralph.durstein@delaware.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Vanessa L Kassab**
Delaware Department of Justice
Division of Fraud and Consumer Protection
Carvel State Building
820 N. French St.
Wilmington, DE 19801
302-683-8881
Email: vanessa.kassab@delaware.gov
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Nathaniel Haviland-Markowitz**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**District of Columbia**                    represented by **Jon Whitney**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Nathaniel Haviland-Markowitz**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**State of Illinois**                    represented by **Jon Whitney**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jason Elliott James**
Illinois Office of the Attorney General
Environmental Bureau
201 W. Pointe Drive
Suite 7
Belleville, IL 62226
217-843-0322
Email: jason.james@ilag.gov
*ATTORNEY TO BE NOTICED*

**Nathaniel Haviland-Markowitz**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**State of Maine**                    represented by **Caleb Edward Elwell**
Office of the Maine Attorney General
6 State House Station
Augusta, ME 04333
207-626-8545
Email: caleb.elwell@maine.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jon Whitney**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Nathaniel Haviland-Markowitz**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Robert L Martin**

Maine Office of the Attorney General
Natural Resources Division
6 State House Station
Augusta, ME 04333-0006
207-626-8579
Email: robert.martin@maine.gov
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**State of Maryland**                    represented by    **Jon Whitney**
                                                           (See above for address)
                                                           *LEAD ATTORNEY*
                                                           *ATTORNEY TO BE NOTICED*

                                                           **Nathaniel Haviland-Markowitz**
                                                           (See above for address)
                                                           *ATTORNEY TO BE NOTICED*

                                                           **Steven J. Goldstein**
                                                           Office of the Attorney General- State of
                                                           Maryland
                                                           200 Saint Paul Place
                                                           Baltimore, MD 21202
                                                           410-576-6414
                                                           Email: sgoldstein@oag.state.md.us
                                                           *ATTORNEY TO BE NOTICED*

**Plaintiff**

**State of Michigan**                    represented by    **Jon Whitney**
                                                           (See above for address)
                                                           *LEAD ATTORNEY*
                                                           *ATTORNEY TO BE NOTICED*

                                                           **Nathaniel Haviland-Markowitz**
                                                           (See above for address)
                                                           *ATTORNEY TO BE NOTICED*

**Plaintiff**

**State of Minnesota**                   represented by    **Jon Whitney**
                                                           (See above for address)
                                                           *LEAD ATTORNEY*
                                                           *ATTORNEY TO BE NOTICED*

                                                           **Catherine Rios-Keating**
                                                           Minnesota Attorney General's Office
                                                           445 Minnesota Street, Suite 600
                                                           Saint Paul, MN 55101
                                                           651-300-7302
                                                           Email: Catherine.Rios-
                                                           Keating@ag.state.mn.us
                                                           *ATTORNEY TO BE NOTICED*

                                                           **Nathaniel Haviland-Markowitz**

(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**State of New Jersey**                                      represented by **Jon Whitney**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Nathaniel Haviland-Markowitz**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Terel Klein**
Office of the Attorney General, Division of Law
25 Market St.
P.O. Box 112
Ste 7th Floor
Trenton, NJ 08625
609-815-2645
Email: terel.klein@law.njoag.gov
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**State of New Mexico**                                      represented by **Jon Whitney**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Nathaniel Haviland-Markowitz**
(See above for address)
*ATTORNEY TO BE NOTICED*

**William Grantham**
NM Department of Justice
408 Galisteo
Santa Fe, NM 87501
505-717-3520
Email: wgrantham@nmdoj.gov
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**State of Oregon**                                          represented by **Jon Whitney**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Nathaniel Haviland-Markowitz**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Paul Garrahan**
Oregon Department of Justice

Natural Resources Section
1162 Court St. NE
Salem, OR 97301-4096
503-947-4540
Email: paul.garrahan@doj.oregon.gov
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**State of Rhode Island**                    represented by    **Jon Whitney**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Nathaniel Haviland-Markowitz**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Nicholas M. Vaz**
RI Department of Attorney General
150 South Main Street
Providence, RI 02903
401-274-4400
Email: nvaz@riag.ri.gov
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**State of Washington**                    represented by    **Jon Whitney**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Nathaniel Haviland-Markowitz**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Yuriy Korol**
Washington State Attorney General's Office
Environmental Protection Division
800 5th Ave
Ste 2000
Seattle, WA 98104-3188
206-498-3167
Email: yuriy.korol@atg.wa.gov
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**State of Michigan**                           represented by  **Amanda Churchill**
                                                               State of Michigan
                                                               Attorney General
                                                               525 W Ottawa Street
                                                               Lansing, MI 48933
                                                               517-375-7627
                                                               Email: churchilla1@michigan.gov
                                                               *ATTORNEY TO BE NOTICED*

**Plaintiff**

**Climate Jobs MA**                             represented by  **Climate Jobs MA**
                                                               8 Beacon St., 4th Floor
                                                               Boston, MA 02108
                                                               PRO SE

**Plaintiff**

**Redwood Coast Energy Authority**              represented by  **Redwood Coast Energy Authority**
                                                               633 3rd St
                                                               Eureka, CA 94901
                                                               PRO SE

V.

**Defendant**

**Donald J Trump**                              represented by  **Michael Keith Robertson**
*in his official capacity as President of the*                  DOJ-Enrd
*United States*                                                150 M Street, NE
                                                               Washington, DC 20002
                                                               202-598-3835
                                                               Email: michael.robertson@usdoj.gov
                                                               *ATTORNEY TO BE NOTICED*

                                                               **Phillip R. Dupre**
                                                               Phelps Dunbar LLP
                                                               3600 N Capital of Texas Highway
                                                               Suite B300
                                                               Austin, TX 78746
                                                               512-796-9195
                                                               *TERMINATED: 07/30/2025*
                                                               *ATTORNEY TO BE NOTICED*

**Defendant**

**United States of America**                    represented by  **Michael Keith Robertson**
                                                               (See above for address)
                                                               *ATTORNEY TO BE NOTICED*

                                                               **Phillip R. Dupre**
                                                               (See above for address)
                                                               *TERMINATED: 07/30/2025*
                                                               *ATTORNEY TO BE NOTICED*

**Defendant**

**Douglas Burgum**
*in his official capacity as Secretary of the Interior*

represented by **Michael Keith Robertson**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Phillip R. Dupre**
(See above for address)
*TERMINATED: 07/30/2025*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Bureau of Ocean Energy Management**

represented by **Michael Keith Robertson**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Phillip R. Dupre**
(See above for address)
*TERMINATED: 07/30/2025*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Walter Cruickshank**
*in his official capacity as Acting Director of Bureau of Ocean Energy Management*

represented by **Michael Keith Robertson**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Phillip R. Dupre**
(See above for address)
*TERMINATED: 07/30/2025*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Bureau of Land Management**

represented by **Michael Keith Robertson**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Phillip R. Dupre**
(See above for address)
*TERMINATED: 07/30/2025*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Jonathan Raby**
*in his official capacity as State Director of the Bureau of Land Management*

represented by **Michael Keith Robertson**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Phillip R. Dupre**
(See above for address)
*TERMINATED: 07/30/2025*
*ATTORNEY TO BE NOTICED*

**Defendant**

**U.S. Fish and Wildlife Service**

represented by **Michael Keith Robertson**
(See above for address)
*ATTORNEY TO BE NOTICED*

Case: 26-1174    Document: 00118407391    Page: 13    Date Filed: 02/23/2026    Entry ID: 6787901

**Phillip R. Dupre**
(See above for address)
*TERMINATED: 07/30/2025*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Paul Souza**
*in his official capacity as Regional Director of the United States Fish and Wildlife Service*

represented by **Michael Keith Robertson**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Phillip R. Dupre**
(See above for address)
*TERMINATED: 07/30/2025*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Department of Commerce**

represented by **Michael Keith Robertson**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Phillip R. Dupre**
(See above for address)
*TERMINATED: 07/30/2025*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Howard Lutnick**
*in his official capacity as Secretary of Commerce*

represented by **Michael Keith Robertson**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Phillip R. Dupre**
(See above for address)
*TERMINATED: 07/30/2025*
*ATTORNEY TO BE NOTICED*

**Defendant**

**National Oceanic and Atmospheric Administration**

represented by **Michael Keith Robertson**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Phillip R. Dupre**
(See above for address)
*TERMINATED: 07/30/2025*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Laura Grimm**
*in her official capacity as Chief of Staff of the National Oceanic and Atmospheric Administration*

represented by **Michael Keith Robertson**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Phillip R. Dupre**
(See above for address)

Case: 26-1174 Document: 00118407391 Page: 14 Date Filed: 02/23/2026 Entry ID: 6787901

*TERMINATED: 07/30/2025*
*ATTORNEY TO BE NOTICED*

**Defendant**

**National Marine Fisheries Service**          represented by **Michael Keith Robertson**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Phillip R. Dupre**
(See above for address)
*TERMINATED: 07/30/2025*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Eugenio Pieiro Soler**          represented by **Michael Keith Robertson**
*in his official capacity as Director of the*          (See above for address)
*National Marine Fisheries Service*          *ATTORNEY TO BE NOTICED*

**Phillip R. Dupre**
(See above for address)
*TERMINATED: 07/30/2025*
*ATTORNEY TO BE NOTICED*

**Defendant**

**U.S. Army Corps of Engineers**          represented by **Michael Keith Robertson**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Phillip R. Dupre**
(See above for address)
*TERMINATED: 07/30/2025*
*ATTORNEY TO BE NOTICED*

**Defendant**

**William "Butch" H. Graham, Jr.**          represented by **Michael Keith Robertson**
*in his official capacity as Chief of Engineers*          (See above for address)
*for the United States Army Corps of*          *ATTORNEY TO BE NOTICED*
*Engineers*

**Phillip R. Dupre**
(See above for address)
*TERMINATED: 07/30/2025*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Environmental Protection Agency, US**          represented by **Michael Keith Robertson**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Phillip R. Dupre**
(See above for address)
*TERMINATED: 07/30/2025*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Lee Zeldin**                                                represented by    **Michael Keith Robertson**
*in his official capacity as Administrator of*                                 (See above for address)
*the U.S. Environmental Protection Agency*                                      *ATTORNEY TO BE NOTICED*

                                                                               **Phillip R. Dupre**
                                                                               (See above for address)
                                                                               *TERMINATED: 07/30/2025*
                                                                               *ATTORNEY TO BE NOTICED*

**Defendant**

**US Department of Agriculture**                             represented by    **Michael Keith Robertson**
                                                                               (See above for address)
                                                                               *ATTORNEY TO BE NOTICED*

                                                                               **Phillip R. Dupre**
                                                                               (See above for address)
                                                                               *TERMINATED: 07/30/2025*
                                                                               *ATTORNEY TO BE NOTICED*

**Defendant**

**Brooke Rollins**                                           represented by    **Michael Keith Robertson**
*in her official capacity as Secretary of*                                     (See above for address)
*Agriculture*                                                                  *ATTORNEY TO BE NOTICED*

                                                                               **Phillip R. Dupre**
                                                                               (See above for address)
                                                                               *TERMINATED: 07/30/2025*
                                                                               *ATTORNEY TO BE NOTICED*

**Defendant**

**US Department of Energy**                                  represented by    **Michael Keith Robertson**
                                                                               (See above for address)
                                                                               *ATTORNEY TO BE NOTICED*

                                                                               **Phillip R. Dupre**
                                                                               (See above for address)
                                                                               *TERMINATED: 07/30/2025*
                                                                               *ATTORNEY TO BE NOTICED*

**Defendant**

**Chris Wright**                                             represented by    **Michael Keith Robertson**
*in his official capacity as Secretary of*                                     (See above for address)
*Energy*                                                                       *ATTORNEY TO BE NOTICED*

                                                                               **Phillip R. Dupre**
                                                                               (See above for address)
                                                                               *TERMINATED: 07/30/2025*
                                                                               *ATTORNEY TO BE NOTICED*

**Defendant**

**US Department of the Treasury**                            represented by    **Michael Keith Robertson**
                                                                               (See above for address)

*ATTORNEY TO BE NOTICED*

**Phillip R. Dupre**
(See above for address)
*TERMINATED: 07/30/2025*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Scott Bessent**                                 represented by  **Michael Keith Robertson**
*in his official capacity as Secretary of the*                   (See above for address)
*Treasury*                                                       *ATTORNEY TO BE NOTICED*

**Phillip R. Dupre**
(See above for address)
*TERMINATED: 07/30/2025*
*ATTORNEY TO BE NOTICED*

**Defendant**

**US Department of Interior**                     represented by  **Michael Keith Robertson**
                                                                 (See above for address)
                                                                 *ATTORNEY TO BE NOTICED*

**Phillip R. Dupre**
(See above for address)
*TERMINATED: 07/30/2025*
*ATTORNEY TO BE NOTICED*

**Amicus**

**Citizens Campaign for the Environment**         represented by  **Julia Kathryn Forgie**
                                                                 Natural Resources Defense Council
                                                                 1314 Second Street
                                                                 Santa Monica, CA 90401
                                                                 310-434-2351
                                                                 Email: jforgie@nrdc.org
                                                                 *LEAD ATTORNEY*
                                                                 *ATTORNEY TO BE NOTICED*

**Erica A. Fuller**
Conservation Law Foundation
62 Summer Street
Boston, MA 02110
617-850-1727
Email: efuller@clf.org
*ATTORNEY TO BE NOTICED*

**Jared E Knicley**
Natural Resources Defense Council
1152 15th St. NW
Suite 300
Washington, DC 20005
202-513-6242
Email: jknicley@nrdc.org
*ATTORNEY TO BE NOTICED*

Case: 26-1174    Document: 00118407391    Page: 17    Date Filed: 02/23/2026    Entry ID: 6787901

**Amicus**

**Conservation Law Foundation**         represented by   **Erica A. Fuller**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Amicus**

**Environmental Advocates NY**         represented by   **Erica A. Fuller**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Susan Kraham**
Earthjustice
Northeast Regional Office
48 Wall St.
Fl 15
New York, NY 10005
212-284-8035
Fax: 212-854-3554
Email: skraham@earthjustice.org
*ATTORNEY TO BE NOTICED*

**Amicus**

**Environmental Protection Information Center**         represented by   **Julia Kathryn Forgie**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Erica A. Fuller**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Jared E Knicley**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Amicus**

**National Wildlife Federation**         represented by   **Erica A. Fuller**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Lucy Lefkowitz**
333 N Main St
Ashland, OR 97520
541-625-9965
Email: lefkowitzl@nwf.org
*ATTORNEY TO BE NOTICED*

**Amicus**

**Natural Resources Defense Council**         represented by   **Julia Kathryn Forgie**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

Case: 26-1174        Document: 00118407391        Page: 18        Date Filed: 02/23/2026        Entry ID: 6787901

**Erica A. Fuller**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Jared E Knicley**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Amicus**

**New York League of Conservation Voters**                represented by    **Julia Kathryn Forgie**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Erica A. Fuller**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Jared E Knicley**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Amicus**

**Sierra Club**                represented by    **Erica A. Fuller**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Susan Kraham**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Amicus**

**Southern Environmental Law Center**                represented by    **Gudrun Elise Thompson**
Southern Environmental Law Center
136 East Rosemary Street
Suite 500
Chapel Hill, NC 27514
919-810-1856
Email: gthompson@selc.org
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Erica A. Fuller**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Amicus**

**Environmental Defense Fund, Inc.**                represented by    **Megan M. Herzog**
Donahue Goldberg, LLP
1008 Pennsylvania Avenue SE
Washington, DC 20003
650-353-8719

Email: megan@donahuegoldberg.com
*ATTORNEY TO BE NOTICED*

**Amicus**

**Save Long Beach Island, Inc.**  represented by **Thomas William Stavola , Jr**
Law Office of Thomas Stavola Jr. LLC
209 County Road 537
Colts Neck, NJ 07722
732-539-7244
Email: tstavolajr@stavolalaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Amicus**

**Clean Air Task Force**  represented by **Shaun Goho**
Clean Air Task Force
114 State Street
Ste 6th Floor
Boston, MA 02109
617-678-2516
Email: sgoho@catf.us
*ATTORNEY TO BE NOTICED*

**Amicus**

**Climate Jobs MA**  represented by **Richard F. Griffin , Jr**
Bredhoff & Kaiser P.L.L.C.
805 15th Street NW
Ste 1000
Washington, DC 20005
202-842-2600
Fax: 202-842-1888
Email: rgriffin@bredhoff.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Kyle Andrew Berner**
Segal Roitman, LLP
33 Harrison Ave
7th Floor
Boston, MA 02151
617-603-1427
Email: kberner@segalroitman.com
*ATTORNEY TO BE NOTICED*

**Nicole Horberg Decter**
Segal Roitman, LLP
33 Harrison Avenue
7th Floor
Boston, MA 02111
617-742-0208
Fax: 617-742-2187
Email: ndecter@segalroitman.com
*ATTORNEY TO BE NOTICED*

**Amicus**

**Climate Jobs MA**

**Amicus**

**Climate Jobs NY**                    represented by    **Richard F. Griffin , Jr**
                                                        (See above for address)
                                                        *LEAD ATTORNEY*
                                                        *ATTORNEY TO BE NOTICED*

                                                        **Kyle Andrew Berner**
                                                        (See above for address)
                                                        *ATTORNEY TO BE NOTICED*

                                                        **Nicole Horberg Decter**
                                                        (See above for address)
                                                        *ATTORNEY TO BE NOTICED*

**Amicus**

**Climate Jobs Rhode Island**          represented by    **Richard F. Griffin , Jr**
                                                        (See above for address)
                                                        *LEAD ATTORNEY*
                                                        *ATTORNEY TO BE NOTICED*

                                                        **Kyle Andrew Berner**
                                                        (See above for address)
                                                        *ATTORNEY TO BE NOTICED*

                                                        **Nicole Horberg Decter**
                                                        (See above for address)
                                                        *ATTORNEY TO BE NOTICED*

**Amicus**

**Maine Labor Climate Council**        represented by    **Richard F. Griffin , Jr**
                                                        (See above for address)
                                                        *LEAD ATTORNEY*
                                                        *ATTORNEY TO BE NOTICED*

                                                        **Kyle Andrew Berner**
                                                        (See above for address)
                                                        *ATTORNEY TO BE NOTICED*

                                                        **Nicole Horberg Decter**
                                                        (See above for address)
                                                        *ATTORNEY TO BE NOTICED*

**Amicus**

**David S. Louk**

**Amicus**

**San Francisco Public Utilities**     represented by    **David Scott Louk**
**Commission**                                          San Francisco City Attorney's Office
                                                        California
                                                        1390 Market St.

Fox Plaza, 7th Floor
San Francisco, CA 94102
415-355-3314
Fax: 415-437-4644
Email: david.louk@sfcityatty.org
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Amicus**

**Redwood Coast Energy Authority**          represented by   **David Scott Louk**
                                                            (See above for address)
                                                            *ATTORNEY TO BE NOTICED*

**Amicus**

**Marin Clean Energy**                      represented by   **David Scott Louk**
                                                            (See above for address)
                                                            *ATTORNEY TO BE NOTICED*

**Amicus**

**Jordan Cunningham**                       represented by   **David Scott Louk**
                                                            (See above for address)
                                                            *ATTORNEY TO BE NOTICED*

                                                            **Peter Ton**
                                                            Ton Law P.C.
                                                            2450 Potomac Street
                                                            Oakland, CA 94602
                                                            510-725-5318
                                                            Email: peter@tonlawpc.com
                                                            *ATTORNEY TO BE NOTICED*

**Amicus**

**Offshore Wind California**                represented by   **David Scott Louk**
                                                            (See above for address)
                                                            *ATTORNEY TO BE NOTICED*

                                                            **Peter Ton**
                                                            (See above for address)
                                                            *ATTORNEY TO BE NOTICED*

**Amicus**

**Brightline Defense Project**              represented by   **David Scott Louk**
                                                            (See above for address)
                                                            *ATTORNEY TO BE NOTICED*

                                                            **Peter Ton**
                                                            (See above for address)
                                                            *ATTORNEY TO BE NOTICED*

**Amicus**

**350 Humboldt**                            represented by   **David Scott Louk**
                                                            (See above for address)
                                                            *ATTORNEY TO BE NOTICED*

                                                         **Peter Ton**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Amicus**

| | | |
|---|---|---|
| **Climate First: Replacing Oil & Gas** | represented by | **David Scott Louk**<br>(See above for address)<br>*ATTORNEY TO BE NOTICED* |
| | | **Peter Ton**<br>(See above for address)<br>*ATTORNEY TO BE NOTICED* |

**Amicus**

| | | |
|---|---|---|
| **The Central Coast Alliance United for a Sustainable Economy** | represented by | **David Scott Louk**<br>(See above for address)<br>*ATTORNEY TO BE NOTICED* |
| | | **Peter Ton**<br>(See above for address)<br>*ATTORNEY TO BE NOTICED* |

**Amicus**

| | | |
|---|---|---|
| **International Brotherhood of Electrical Worker Local 639** | represented by | **David Scott Louk**<br>(See above for address)<br>*ATTORNEY TO BE NOTICED* |
| | | **Peter Ton**<br>(See above for address)<br>*ATTORNEY TO BE NOTICED* |

**Amicus**

| | | |
|---|---|---|
| **California Environmental Voters** | represented by | **David Scott Louk**<br>(See above for address)<br>*ATTORNEY TO BE NOTICED* |
| | | **Peter Ton**<br>(See above for address)<br>*ATTORNEY TO BE NOTICED* |

Email All Attorneys

Email All Attorneys and Additional Recipients

| Date Filed | # | Docket Text |
|---|---|---|

| 05/05/2025 | 1 | COMPLAINT against All Defendants Filing fee: $ 405, receipt number AMADC-10988078 (Fee Status: Filing Fee paid), filed by State of New York, Commonwealth of Massachusetts, State of Arizona, State of California, State of Colorado, State of Connecticut, State of Delaware, District of Columbia, State of Illinois, State of Maine, State of Maryland, State of Michigan, State of Minnesota, State of New Jersey, State of New Mexico, State of Oregon, State of Rhode Island, State of Washington (Attachments: # 1 Civil Cover Sheet and Addendum, # 2 Local Category Sheet)(Smith, Turner) (Entered: 05/05/2025) |
|---|---|---|
| 05/05/2025 | 2 | ELECTRONIC NOTICE of Case Assignment. Chief Judge F. Dennis Saylor, IV assigned to case. If the trial Judge issues an Order of Reference of any matter in this case to a Magistrate Judge, the matter will be transmitted to Magistrate Judge Jennifer C. Boal. (CEH) (Entered: 05/05/2025) |
| 05/05/2025 | 3 | Summons Issued as to Scott Bessent, Bureau of Land Management, Bureau of Ocean Energy Management, Douglas Burgum, Walter Cruickshank, Department of Commerce, Environmental Protection Agency, US, William "Butch" H. Graham, Jr, Laura Grimm, Howard Lutnick, National Marine Fisheries Service, National Oceanic and Atmospheric Administration, Eugenio Pieiro Soler, Jonathan Raby, Brooke Rollins, Paul Souza, Donald J Trump, U.S. Army Corps of Engineers, U.S. Fish and Wildlife Service, US Department of Agriculture, US Department of Energy, US Department of Interior, US Department of the Treasury, United States of America, Chris Wright, Lee Zeldin. **Counsel receiving this notice electronically should download this summons, complete one for each defendant and serve it in accordance with Fed.R.Civ.P. 4 and LR 4.1. Summons will be mailed to plaintiff(s) not receiving notice electronically for completion of service.** (FGD) (Entered: 05/05/2025) |
| 05/05/2025 | 4 | NOTICE of Appearance by Turner Smith on behalf of Commonwealth of Massachusetts (Smith, Turner) (Entered: 05/05/2025) |
| 05/06/2025 | 5 | NOTICE of Appearance by Jon Whitney on behalf of Commonwealth of Massachusetts, State of Washington, State of Rhode Island, State of Oregon, State of New Mexico, State of New Jersey, State of Minnesota, State of Michigan, State of Maryland, State of Maine, State of Illinois, District of Columbia, State of Delaware, State of Connecticut, State of Colorado, State of California, State of Arizona, State of New York (Whitney, Jon) **Modified on 5/6/2025: corrected filer names.** (FGD) (Main Document 5 replaced on 5/6/2025) (FGD). (Entered: 05/06/2025) |
| 05/06/2025 | 6 | MOTION for Leave to Appear Pro Hac Vice for admission of Michael J. Myers, Rene F. Hertzog, Laura Mirman-Heslin Filing fee: $ 375, receipt number AMADC-10991447 by State of New York. (Attachments: # 1 Myers Certificate, # 2 Hertzog Certificate, # 3 LMH Certificate)(Whitney, Jon) (Entered: 05/06/2025) |
| 05/06/2025 | 7 | MOTION for Leave to Appear Pro Hac Vice for admission of Jason E. James Filing fee: $ 125, receipt number AMADC-10991505 by State of Illinois. (Attachments: # 1 James Certificate)(Whitney, Jon) (Entered: 05/06/2025) |
| 05/06/2025 | 8 | MOTION for Leave to Appear Pro Hac Vice for admission of Yuriy Korol Filing fee: $ 125, receipt number AMADC-10991531 by State of Washington. (Attachments: # 1 Korol Certificate)(Whitney, Jon) (Entered: 05/06/2025) |
| 05/06/2025 | 9 | MOTION for Leave to Appear Pro Hac Vice for admission of Mary M. Curtin Filing fee: $ 125, receipt number AMADC-10991694 by State of Arizona. (Attachments: # 1 Curtin Certificate)(Whitney, Jon) (Entered: 05/06/2025) |
| 05/06/2025 | 10 | MOTION for Leave to Appear Pro Hac Vice for admission of Carrie Noteboom, Jessica Lowrey Filing fee: $ 250, receipt number AMADC-10991790 by State of |

| | | Colorado. (Attachments: # 1 Noteboom Certificate, # 2 Lowrey Certificate)(Whitney, Jon) (Entered: 05/06/2025) |
|---|---|---|
| 05/06/2025 | 11 | MOTION for Leave to Appear Pro Hac Vice for admission of Catherine Rios-Keating Filing fee: $ 125, receipt number AMADC-10991810 by State of Minnesota. (Attachments: # 1 Rios-Keating Certificate)(Whitney, Jon) (Entered: 05/06/2025) |
| 05/06/2025 | 12 | Chief Judge F. Dennis Saylor, IV: ELECTRONIC ORDER entered GRANTING 6 Motion for Leave to Appear Pro Hac Vice Added Michael J. Myers, Rene F. Hertzog, Laura Mirman-Heslin.<br><br>**Attorneys admitted Pro Hac Vice must have an individual PACER account, not a shared firm account, to electronically file in the District of Massachusetts. To register for a PACER account, go the Pacer website at https://pacer.uscourts.gov/register-account. You must put the docket number under ADDITIONAL FILER INFORMATION on your form when registering or it will be rejected.**<br><br>Pro Hac Vice Admission Request Instructions https://www.mad.uscourts.gov/caseinfo/nextgen-pro-hac-vice.htm.<br><br>A Notice of Appearance must be entered on the docket by the newly admitted attorney.<br><br>(MAC) (Entered: 05/06/2025) |
| 05/06/2025 | 13 | Chief Judge F. Dennis Saylor, IV: ELECTRONIC ORDER entered GRANTING 7 Motion for Leave to Appear Pro Hac Vice Added Jason E. James.<br><br>**Attorneys admitted Pro Hac Vice must have an individual PACER account, not a shared firm account, to electronically file in the District of Massachusetts. To register for a PACER account, go the Pacer website at https://pacer.uscourts.gov/register-account. You must put the docket number under ADDITIONAL FILER INFORMATION on your form when registering or it will be rejected.**<br><br>Pro Hac Vice Admission Request Instructions https://www.mad.uscourts.gov/caseinfo/nextgen-pro-hac-vice.htm.<br><br>A Notice of Appearance must be entered on the docket by the newly admitted attorney.<br><br>(MAC) (Entered: 05/06/2025) |
| 05/06/2025 | 14 | Chief Judge F. Dennis Saylor, IV: ELECTRONIC ORDER entered GRANTING 8 Motion for Leave to Appear Pro Hac Vice Added Yuriy Korol.<br><br>**Attorneys admitted Pro Hac Vice must have an individual PACER account, not a shared firm account, to electronically file in the District of Massachusetts. To register for a PACER account, go the Pacer website at https://pacer.uscourts.gov/register-account. You must put the docket number under ADDITIONAL FILER INFORMATION on your form when registering or it will be rejected.**<br><br>Pro Hac Vice Admission Request Instructions https://www.mad.uscourts.gov/caseinfo/nextgen-pro-hac-vice.htm.<br><br>A Notice of Appearance must be entered on the docket by the newly admitted attorney. |

(MAC) (Entered: 05/06/2025)

| 05/06/2025 | 15 | Chief Judge F. Dennis Saylor, IV: ELECTRONIC ORDER entered GRANTING 9 Motion for Leave to Appear Pro Hac Vice Added Mary M. Curtin.<br><br>**Attorneys admitted Pro Hac Vice must have an individual PACER account, not a shared firm account, to electronically file in the District of Massachusetts. To register for a PACER account, go the Pacer website at https://pacer.uscourts.gov/register-account. You must put the docket number under ADDITIONAL FILER INFORMATION on your form when registering or it will be rejected.**<br><br>Pro Hac Vice Admission Request Instructions https://www.mad.uscourts.gov/caseinfo/nextgen-pro-hac-vice.htm.<br><br>A Notice of Appearance must be entered on the docket by the newly admitted attorney.<br><br>(MAC) (Entered: 05/06/2025) |
| 05/06/2025 | 16 | Chief Judge F. Dennis Saylor, IV: ELECTRONIC ORDER entered GRANTING 10 Motion for Leave to Appear Pro Hac Vice Added Carrie Noteboom, Jessica Lowrey.<br><br>**Attorneys admitted Pro Hac Vice must have an individual PACER account, not a shared firm account, to electronically file in the District of Massachusetts. To register for a PACER account, go the Pacer website at https://pacer.uscourts.gov/register-account. You must put the docket number under ADDITIONAL FILER INFORMATION on your form when registering or it will be rejected.**<br><br>Pro Hac Vice Admission Request Instructions https://www.mad.uscourts.gov/caseinfo/nextgen-pro-hac-vice.htm.<br><br>A Notice of Appearance must be entered on the docket by the newly admitted attorney.<br><br>(MAC) (Entered: 05/06/2025) |
| 05/06/2025 | 17 | Chief Judge F. Dennis Saylor, IV: ELECTRONIC ORDER entered GRANTING 11 Motion for Leave to Appear Pro Hac Vice Added Catherine Rios-Keating.<br><br>**Attorneys admitted Pro Hac Vice must have an individual PACER account, not a shared firm account, to electronically file in the District of Massachusetts. To register for a PACER account, go the Pacer website at https://pacer.uscourts.gov/register-account. You must put the docket number under ADDITIONAL FILER INFORMATION on your form when registering or it will be rejected.**<br><br>Pro Hac Vice Admission Request Instructions https://www.mad.uscourts.gov/caseinfo/nextgen-pro-hac-vice.htm.<br><br>A Notice of Appearance must be entered on the docket by the newly admitted attorney.<br><br>(MAC) (Entered: 05/06/2025) |
| 05/06/2025 | 18 | MOTION for Leave to Appear Pro Hac Vice for admission of Jill Lacedonia Filing fee: $ 125, receipt number AMADC-10992849 by State of Connecticut. (Attachments: # 1 Lacedonia Certificate)(Whitney, Jon) (Entered: 05/06/2025) |

| | | |
|---|---|---|
| 05/06/2025 | 19 | MOTION for Leave to Appear Pro Hac Vice Filing fee: $ 125, receipt number AMADC-10992867 by State of Maryland. (Attachments: # 1 Goldstein Certificate) (Whitney, Jon) (Entered: 05/06/2025) |
| 05/06/2025 | 20 | Chief Judge F. Dennis Saylor, IV: ELECTRONIC ORDER entered GRANTING 18 Motion for Leave to Appear Pro Hac Vice Added Jill Lacedonia.<br><br>**Attorneys admitted Pro Hac Vice must have an individual PACER account, not a shared firm account, to electronically file in the District of Massachusetts. To register for a PACER account, go the Pacer website at https://pacer.uscourts.gov/register-account. You must put the docket number under ADDITIONAL FILER INFORMATION on your form when registering or it will be rejected.**<br><br>Pro Hac Vice Admission Request Instructions https://www.mad.uscourts.gov/caseinfo/nextgen-pro-hac-vice.htm.<br><br>A Notice of Appearance must be entered on the docket by the newly admitted attorney.<br><br>(MAC) (Entered: 05/07/2025) |
| 05/06/2025 | 21 | Chief Judge F. Dennis Saylor, IV: ELECTRONIC ORDER entered GRANTING 19 Motion for Leave to Appear Pro Hac Vice Added Steven J. Goldstein.<br><br>**Attorneys admitted Pro Hac Vice must have an individual PACER account, not a shared firm account, to electronically file in the District of Massachusetts. To register for a PACER account, go the Pacer website at https://pacer.uscourts.gov/register-account. You must put the docket number under ADDITIONAL FILER INFORMATION on your form when registering or it will be rejected.**<br><br>Pro Hac Vice Admission Request Instructions https://www.mad.uscourts.gov/caseinfo/nextgen-pro-hac-vice.htm.<br><br>A Notice of Appearance must be entered on the docket by the newly admitted attorney.<br><br>(MAC) (Entered: 05/07/2025) |
| 05/07/2025 | 22 | NOTICE of Appearance by Brook Detterman on behalf of Alliance for Clean Energy New York (Detterman, Brook) **Modified on 5/8/2025 to correct party name** (MAC). (Entered: 05/07/2025) |
| 05/07/2025 | 23 | MOTION to Intervene by Alliance for Clean Energy New York. (Attachments: # 3 Exhibit ACE NYs Proposed Complaint in Intervention, # 4 Exhibit ACE NYs Corporate Disclosure Statement, # 5 Exhibit Proposed Order Granting ACE NY Motion to Intervene)(Detterman, Brook) **Modified on 5/8/2025 to correct party name (MAC). Modified on 5/14/2025 to Refile Memorandum and Declaration and Correct Docket Text (MAP).** (Entered: 05/07/2025) |
| 05/07/2025 | 24 | NOTICE of Appearance by Jessica Lowrey on behalf of State of Colorado (Lowrey, Jessica) (Entered: 05/07/2025) |
| 05/07/2025 | 25 | NOTICE of Appearance by Michael Myers on behalf of State of New York (Myers, Michael) (Entered: 05/07/2025) |
| 05/07/2025 | 59 | MEMORANDUM in Support re 23 MOTION to Intervene filed by Alliance for Clean Energy New York. **Memorandum Refiled in Accordance with Court Rules and** |

| | | CM/ECF Administrative Procedures - Counsel Incorrectly Attached the Memorandum to the Motion to Intervene. (MAP) (Entered: 05/14/2025) |
|---|---|---|
| 05/07/2025 | 60 | DECLARATION in Support re 23 MOTION to Intervene by Alliance for Clean Energy New York. **Declaration Refiled in Accordance with Court Rules and CM/ECF Administrative Procedures - Counsel Incorrectly Attached the Declaration to the Motion to Intervene.** (MAP) (Entered: 05/14/2025) |
| 05/07/2025 | 61 | CORPORATE DISCLOSURE STATEMENT by Alliance for Clean Energy New York. (MAP) (Entered: 05/14/2025) |
| 05/08/2025 | 26 | NOTICE of Appearance by Rene Hertzog on behalf of State of New York (Hertzog, Rene) (Entered: 05/08/2025) |
| 05/08/2025 | 27 | NOTICE of Appearance by Laura Mirman-Heslin on behalf of State of New York (Mirman-Heslin, Laura) (Entered: 05/08/2025) |
| 05/08/2025 | 28 | MOTION for Leave to Appear Pro Hac Vice for admission of Robert Martin Filing fee: $ 125, receipt number AMADC-10997225 by State of Maine. (Attachments: # 1 Martin Certificate)(Whitney, Jon) (Entered: 05/08/2025) |
| 05/08/2025 | 29 | MOTION for Leave to Appear Pro Hac Vice for admission of Paul Garrahan Filing fee: $ 125, receipt number AMADC-10997242 by State of Oregon. (Attachments: # 1 Garrahan Certificate)(Whitney, Jon) (Entered: 05/08/2025) |
| 05/08/2025 | 30 | Chief Judge F. Dennis Saylor, IV: ELECTRONIC ORDER entered GRANTING 28 Motion for Leave to Appear Pro Hac Vice Added Robert Martin.<br><br>**Attorneys admitted Pro Hac Vice must have an individual PACER account, not a shared firm account, to electronically file in the District of Massachusetts. To register for a PACER account, go the Pacer website at https://pacer.uscourts.gov/register-account. You must put the docket number under ADDITIONAL FILER INFORMATION on your form when registering or it will be rejected.**<br><br>Pro Hac Vice Admission Request Instructions https://www.mad.uscourts.gov/caseinfo/nextgen-pro-hac-vice.htm.<br><br>A Notice of Appearance must be entered on the docket by the newly admitted attorney.<br><br>(MAC) (Entered: 05/08/2025) |
| 05/08/2025 | 31 | Chief Judge F. Dennis Saylor, IV: ELECTRONIC ORDER entered GRANTING 29 Motion for Leave to Appear Pro Hac Vice Added Paul Garrahan.<br><br>**Attorneys admitted Pro Hac Vice must have an individual PACER account, not a shared firm account, to electronically file in the District of Massachusetts. To register for a PACER account, go the Pacer website at https://pacer.uscourts.gov/register-account. You must put the docket number under ADDITIONAL FILER INFORMATION on your form when registering or it will be rejected.**<br><br>Pro Hac Vice Admission Request Instructions https://www.mad.uscourts.gov/caseinfo/nextgen-pro-hac-vice.htm.<br><br>A Notice of Appearance must be entered on the docket by the newly admitted attorney.<br><br>(MAC) (Entered: 05/08/2025) |

| 05/08/2025 | 32 | MOTION for Leave to Appear Pro Hac Vice for admission of Robert Swanson, Jamie Jefferson, Kate Hammond Filing fee: $ 375, receipt number AMADC-10997371 by State of California. (Attachments: # 1 Swanson Certificate, # 2 Jefferson Certificate, # 3 Hammond Certificate)(Whitney, Jon) (Entered: 05/08/2025) |
|---|---|---|
| 05/08/2025 | 33 | Assented to MOTION for Leave to File Excess Pages by State of Delaware, District of Columbia, Commonwealth of Massachusetts, State of Arizona, State of California, State of Colorado, State of Connecticut, State of Illinois, State of Maine, State of Maryland, State of Michigan, State of Minnesota, State of New Jersey, State of New Mexico, State of New York, State of Oregon, State of Rhode Island, State of Washington.(Myers, Michael) (Entered: 05/08/2025) |
| 05/08/2025 | 34 | Chief Judge F. Dennis Saylor, IV: ELECTRONIC ORDER entered GRANTING 32 Motion for Leave to Appear Pro Hac Vice Added Robert Swanson, Jamie Jefferson, Kate M. Hammond.<br><br>**Attorneys admitted Pro Hac Vice must have an individual PACER account, not a shared firm account, to electronically file in the District of Massachusetts. To register for a PACER account, go the Pacer website at https://pacer.uscourts.gov/register-account. You must put the docket number under ADDITIONAL FILER INFORMATION on your form when registering or it will be rejected.**<br><br>Pro Hac Vice Admission Request Instructions https://www.mad.uscourts.gov/caseinfo/nextgen-pro-hac-vice.htm.<br><br>A Notice of Appearance must be entered on the docket by the newly admitted attorney.<br><br>(MAC) (Entered: 05/08/2025) |
| 05/08/2025 | 35 | NOTICE of Appearance by Michael Keith Robertson on behalf of Scott Bessent, Bureau of Land Management, Bureau of Ocean Energy Management, Douglas Burgum, Walter Cruickshank, Department of Commerce, Environmental Protection Agency, US, William "Butch" H. Graham, Jr, Laura Grimm, Howard Lutnick, National Marine Fisheries Service, National Oceanic and Atmospheric Administration, Eugenio Pieiro Soler, Jonathan Raby, Brooke Rollins, Paul Souza, Donald J Trump, U.S. Army Corps of Engineers, U.S. Fish and Wildlife Service, US Department of Agriculture, US Department of Energy, US Department of Interior, US Department of the Treasury, United States of America, Chris Wright, Lee Zeldin (Robertson, Michael) (Entered: 05/08/2025) |
| 05/08/2025 | 36 | MOTION for Leave to Appear Pro Hac Vice for admission of James A. Auslander by Alliance for Clean Energy New York. (Attachments: # 1 Auslander Certification) (Detterman, Brook) (Entered: 05/08/2025) |
| 05/08/2025 | 37 | NOTICE OF ATTORNEY PAYMENT OF FEES by Intervenor Plaintiff Alliance for Clean Energy New York. Filing fee $ 125, receipt number AMADC-10999052. Payment Type : PRO HAC VICE. (Detterman, Brook) (Entered: 05/08/2025) |
| 05/08/2025 | 38 | Chief Judge F. Dennis Saylor, IV: ELECTRONIC ORDER entered GRANTING 36 Motion for Leave to Appear Pro Hac Vice Added James A. Auslander.<br><br>**Attorneys admitted Pro Hac Vice must have an individual PACER account, not a shared firm account, to electronically file in the District of Massachusetts. To register for a PACER account, go the Pacer website at https://pacer.uscourts.gov/register-account. You must put the docket number** |

**under ADDITIONAL FILER INFORMATION on your form when registering or it will be rejected.**

Pro Hac Vice Admission Request Instructions
https://www.mad.uscourts.gov/caseinfo/nextgen-pro-hac-vice.htm.

A Notice of Appearance must be entered on the docket by the newly admitted attorney.

(MAC) (Entered: 05/09/2025)

| | | |
|---|---|---|
| 05/09/2025 | 39 | Chief Judge F. Dennis Saylor, IV: ELECTRONIC ORDER entered granting 33 Assented to MOTION for Leave to File Excess Pages. (MMM) (Entered: 05/09/2025) |
| 05/09/2025 | 40 | NOTICE of Appearance by Carrie Noteboom on behalf of State of Colorado (Noteboom, Carrie) (Entered: 05/09/2025) |
| 05/09/2025 | 41 | NOTICE of Appearance by Jamie Jefferson on behalf of State of California (Jefferson, Jamie) (Entered: 05/09/2025) |
| 05/09/2025 | 42 | NOTICE of Appearance by Paul Garrahan on behalf of State of Oregon (Garrahan, Paul) (Entered: 05/09/2025) |
| 05/09/2025 | 43 | NOTICE of Appearance by Steven J. Goldstein on behalf of State of Maryland (Goldstein, Steven) (Entered: 05/09/2025) |
| 05/09/2025 | 44 | NOTICE of Appearance by James Michael Auslander on behalf of Alliance for Clean Energy New York (Auslander, James) (Entered: 05/09/2025) |
| 05/09/2025 | 45 | NOTICE of Appearance by Mary Curtin on behalf of State of Arizona (Curtin, Mary) (Entered: 05/09/2025) |
| 05/09/2025 | 46 | NOTICE of Appearance by Yuriy Korol on behalf of State of Washington (Korol, Yuriy) (Entered: 05/09/2025) |
| 05/09/2025 | 47 | SUMMONS Returned Executed by State of Delaware, District of Columbia, Commonwealth of Massachusetts, State of Arizona, State of California, State of Colorado, State of Connecticut, State of Illinois, State of Maine, State of Maryland, State of Michigan, State of Minnesota, State of New Jersey, State of New Mexico, State of New York, State of Oregon, State of Rhode Island, State of Washington. All Defendants., SUMMONS Returned Executed as to US Attorney by State of Delaware, District of Columbia, Commonwealth of Massachusetts, State of Arizona, State of California, State of Colorado, State of Connecticut, State of Illinois, State of Maine, State of Maryland, State of Michigan, State of Minnesota, State of New Jersey, State of New Mexico, State of New York, State of Oregon, State of Rhode Island, State of Washington. All Defendants., SUMMONS Returned Executed by State of Delaware, District of Columbia, Commonwealth of Massachusetts, State of Arizona, State of California, State of Colorado, State of Connecticut, State of Illinois, State of Maine, State of Maryland, State of Michigan, State of Minnesota, State of New Jersey, State of New Mexico, State of New York, State of Oregon, State of Rhode Island, State of Washington. (Attachments: # 1 Exhibit Declaration of Service)(Whitney, Jon) (Entered: 05/09/2025) |
| 05/12/2025 | 48 | NOTICE of Appearance by Jason Elliott James on behalf of State of Illinois (James, Jason) (Entered: 05/12/2025) |
| 05/12/2025 | 49 | NOTICE of Appearance by Phillip R. Dupre on behalf of Scott Bessent, Bureau of Land Management, Bureau of Ocean Energy Management, Douglas Burgum, Walter Cruickshank, Department of Commerce, Environmental Protection Agency, US, William "Butch" H. Graham, Jr, Laura Grimm, Howard Lutnick, National Marine |

| | | |
|---|---|---|
| | | Fisheries Service, National Oceanic and Atmospheric Administration, Eugenio Pieiro Soler, Jonathan Raby, Brooke Rollins, Paul Souza, Donald J Trump, U.S. Army Corps of Engineers, U.S. Fish and Wildlife Service, US Department of Agriculture, US Department of Energy, US Department of Interior, US Department of the Treasury, United States of America, Chris Wright, Lee Zeldin (Dupre, Phillip) (Entered: 05/12/2025) |
| 05/12/2025 | 50 | NOTICE of Appearance by Catherine Rios-Keating on behalf of State of Minnesota (Rios-Keating, Catherine) (Entered: 05/12/2025) |
| 05/12/2025 | 51 | RESPONSE to Motion re 23 MOTION to Intervene filed by Scott Bessent, Bureau of Land Management, Bureau of Ocean Energy Management, Douglas Burgum, Walter Cruickshank, Department of Commerce, Environmental Protection Agency, US, William "Butch" H. Graham, Jr, Laura Grimm, Howard Lutnick, National Marine Fisheries Service, National Oceanic and Atmospheric Administration, Eugenio Pieiro Soler, Jonathan Raby, Brooke Rollins, Paul Souza, Donald J Trump, U.S. Army Corps of Engineers, U.S. Fish and Wildlife Service, US Department of Agriculture, US Department of Energy, US Department of Interior, US Department of the Treasury, United States of America, Chris Wright, Lee Zeldin. (Robertson, Michael) (Entered: 05/12/2025) |
| 05/12/2025 | 52 | NOTICE of Appearance by Robert Donald Swanson on behalf of State of California (Swanson, Robert) (Entered: 05/12/2025) |
| 05/12/2025 | 53 | MOTION for Preliminary Injunction by State of Delaware, District of Columbia, Commonwealth of Massachusetts, State of Arizona, State of California, State of Colorado, State of Connecticut, State of Illinois, State of Maine, State of Maryland, State of Michigan, State of Minnesota, State of New Jersey, State of New Mexico, State of New York, State of Oregon, State of Rhode Island, State of Washington. (Attachments: # 3 Text of Proposed Order Proposed Preliminary Injunction)(Smith, Turner) Modified on 5/14/2025 (MAP). (Entered: 05/12/2025) |
| 05/12/2025 | 54 | MOTION for Leave to File Excess Pages by Alliance for Clean Energy New York. (Attachments: # 1 Proposed Order)(Detterman, Brook) (Entered: 05/12/2025) |
| 05/12/2025 | 55 | MOTION for Preliminary Injunction by Alliance for Clean Energy New York. (Attachments: # 9 Proposed Order)(Detterman, Brook) Modified on 5/14/2025 (MAP). (Entered: 05/12/2025) |
| 05/13/2025 | 56 | Chief Judge F. Dennis Saylor, IV: ELECTRONIC ORDER entered. Pursuant to 28 U.S.C. § 455(a), I hereby recuse myself from presiding over this proceeding. The deputy clerk is directed to return the matter for random draw to another session of this court. (MMM) (Entered: 05/13/2025) |
| 05/13/2025 | 57 | ELECTRONIC NOTICE of Reassignment. Judge William G. Young added. Chief Judge F. Dennis Saylor, IV no longer assigned to case. (SEC) (Entered: 05/13/2025) |
| 05/13/2025 | 58 | NOTICE of Appearance by Robert L Martin on behalf of State of Maine (Martin, Robert) (Entered: 05/13/2025) |
| 05/14/2025 | 62 | MEMORANDUM in Support re 55 MOTION for Preliminary Injunction filed by Alliance for Clean Energy New York. (Detterman, Brook) (Entered: 05/14/2025) |
| 05/14/2025 | 63 | DECLARATION re 55 MOTION for Preliminary Injunction by Alliance for Clean Energy New York. (Detterman, Brook) (Entered: 05/14/2025) |
| 05/14/2025 | 64 | DECLARATION re 55 MOTION for Preliminary Injunction by Alliance for Clean Energy New York. (Detterman, Brook) (Additional attachment(s) added on 5/14/2025: |

| | | |
|---|---|---|
| | | # 1 Exhibit List, # 2 Exhibits A - K) (MAP). (Main Document 64 replaced on 5/14/2025) (MAP). (Entered: 05/14/2025) |
| 05/14/2025 | 65 | DECLARATION re 55 MOTION for Preliminary Injunction by Alliance for Clean Energy New York. (Detterman, Brook) (Entered: 05/14/2025) |
| 05/14/2025 | 66 | DECLARATION re 55 MOTION for Preliminary Injunction by Alliance for Clean Energy New York. (Detterman, Brook) (Additional attachment(s) added on 5/14/2025: # 1 Exhibits A - B) (MAP). (Main Document 66 replaced on 5/14/2025) (MAP). (Entered: 05/14/2025) |
| 05/14/2025 | 67 | DECLARATION re 55 MOTION for Preliminary Injunction by Alliance for Clean Energy New York. (Detterman, Brook) (Additional attachment(s) added on 5/14/2025: # 1 Exhibits A - B) (MAP). (Main Document 67 replaced on 5/14/2025) (MAP). (Entered: 05/14/2025) |
| 05/14/2025 | 68 | DECLARATION re 55 MOTION for Preliminary Injunction by Alliance for Clean Energy New York. (Detterman, Brook) (Additional attachment(s) added on 5/14/2025: # 1 Exhibits A - B) (MAP). (Main Document 68 replaced on 5/14/2025) (MAP). (Entered: 05/14/2025) |
| 05/14/2025 | 69 | DECLARATION re 55 MOTION for Preliminary Injunction by Alliance for Clean Energy New York. (Detterman, Brook) (Entered: 05/14/2025) |
| 05/14/2025 | 70 | MEMORANDUM in Support re 53 MOTION for Preliminary Injunction filed by State of Delaware, District of Columbia, Commonwealth of Massachusetts, State of Arizona, State of California, State of Colorado, State of Connecticut, State of Illinois, State of Maine, State of Maryland, State of Michigan, State of Minnesota, State of New Jersey, State of New Mexico, State of New York, State of Oregon, State of Rhode Island, State of Washington. (Smith, Turner) (Entered: 05/14/2025) |
| 05/14/2025 | 71 | DECLARATION re 53 MOTION for Preliminary Injunction by State of Delaware, District of Columbia, Commonwealth of Massachusetts, State of Arizona, State of California, State of Colorado, State of Connecticut, State of Illinois, State of Maine, State of Maryland, State of Michigan, State of Minnesota, State of New Jersey, State of New Mexico, State of New York, State of Oregon, State of Rhode Island, State of Washington. (Attachments: # 1 Exhibit Declaration of Jonathan Binder, # 2 Exhibit Declaration of Alison Brizius, # 3 Exhibit Declaration of Megan Brunatti, # 4 Exhibit Declaration of Dan Burgess, # 5 Exhibit Declaration of Bruce K. Carlisle, # 6 Exhibit Declaration of Katherine S. Dykes, # 7 Exhibit Declaration of Stephen Gawlick, # 8 Exhibit Declaration of Brian P. Granahan, # 9 Exhibit Declaration of Christopher R. Hoagland, # 10 Exhibit Declaration of Christopher Kearns, # 11 Exhibit Declaration of Elizabeth Mahony, # 12 Exhibit Declaration of Katharine Perry, # 13 Exhibit Declaration of Paul G. Pinsky, # 14 Exhibit Declaration of John Williams, # 15 Exhibit Declaration of Dr. Pete Wyckoff, # 16 Exhibit Declaration of Denise Barton, # 17 Exhibit Presidential Memorandum)(Smith, Turner) (Entered: 05/14/2025) |
| 05/14/2025 | 72 | MOTION for Extension of Time to 06/23/2025 to File Response/Reply as to 53 MOTION for Preliminary Injunction , 55 MOTION for Preliminary Injunction by Scott Bessent, Bureau of Land Management, Bureau of Ocean Energy Management, Douglas Burgum, Walter Cruickshank, Department of Commerce, Environmental Protection Agency, US, William "Butch" H. Graham, Jr, Laura Grimm, Howard Lutnick, National Marine Fisheries Service, National Oceanic and Atmospheric Administration, Eugenio Pieiro Soler, Jonathan Raby, Brooke Rollins, Paul Souza, Donald J Trump, U.S. Army Corps of Engineers, U.S. Fish and Wildlife Service, US Department of Agriculture, US Department of Energy, US Department of Interior, US |

| | | |
|---|---|---|
| | | Department of the Treasury, United States of America, Chris Wright, Lee Zeldin. (Attachments: # 1 Text of Proposed Order)(Robertson, Michael) (Entered: 05/14/2025) |
| 05/14/2025 | 73 | MEMORANDUM in Support re 72 MOTION for Extension of Time to 06/23/2025 to File Response/Reply as to 53 MOTION for Preliminary Injunction , 55 MOTION for Preliminary Injunction filed by Scott Bessent, Bureau of Land Management, Bureau of Ocean Energy Management, Douglas Burgum, Walter Cruickshank, Department of Commerce, Environmental Protection Agency, US, William "Butch" H. Graham, Jr, Laura Grimm, Howard Lutnick, National Marine Fisheries Service, National Oceanic and Atmospheric Administration, Eugenio Pieiro Soler, Jonathan Raby, Brooke Rollins, Paul Souza, Donald J Trump, U.S. Army Corps of Engineers, U.S. Fish and Wildlife Service, US Department of Agriculture, US Department of Energy, US Department of Interior, US Department of the Treasury, United States of America, Chris Wright, Lee Zeldin. (Robertson, Michael) (Entered: 05/14/2025) |
| 05/14/2025 | 74 | NOTICE of Appearance by Jill Lacedonia on behalf of State of Connecticut (Lacedonia, Jill) (Entered: 05/14/2025) |
| 05/15/2025 | 75 | MEMORANDUM in Opposition re 72 MOTION for Extension of Time to 06/23/2025 to File Response/Reply as to 53 MOTION for Preliminary Injunction , 55 MOTION for Preliminary Injunction filed by State of Delaware, District of Columbia, Commonwealth of Massachusetts, State of Arizona, State of California, State of Colorado, State of Connecticut, State of Illinois, State of Maine, State of Maryland, State of Michigan, State of Minnesota, State of New Jersey, State of New Mexico, State of New York, State of Oregon, State of Rhode Island, State of Washington. (Myers, Michael) (Entered: 05/15/2025) |
| 05/15/2025 | 76 | Opposition re 72 MOTION for Extension of Time to 06/23/2025 to File Response/Reply as to 53 MOTION for Preliminary Injunction , 55 MOTION for Preliminary Injunction filed by Alliance for Clean Energy New York. (Detterman, Brook) (Entered: 05/15/2025) |
| 05/15/2025 | 77 | Amicus Curiae APPEARANCE entered by Erica A. Fuller on behalf of Citizens Campaign for the Environment, Conservation Law Foundation, Environmental Advocates NY, Environmental Protection Information Center, National Wildlife Federation, Natural Resources Defense Council, New York League of Conservation Voters, Sierra Club, Southern Environmental Law Center (Fuller, Erica) **Modified on 5/15/2025 to Correct Docket Text as Counsel Fuller Filed the Notice of Appearance Under the Wrong Event in CM/ECF. (MAP). (Entered: 05/15/2025)** |
| 05/15/2025 | 78 | Judge William G. Young: ELECTRONIC ORDER entered **allowed** 23 MOTION to Intervene by Alliance for Clean Energy New York. (MAP) (Entered: 05/15/2025) |
| 05/15/2025 | 79 | Judge William G. Young ELECTRONIC ORDER entered: 54 Motion for Leave to File Excess Pages. **The motion to file an excessively long brief is ALLOWED. It is the Court's intention promptly to entertain New York's motion for preliminary injunction. To the extent Intervenors may have raised new claims they may have to wait for the government's response.** (MAP) (Entered: 05/15/2025) |
| 05/15/2025 | 80 | Amicus Curiae APPEARANCE entered by Megan M. Herzog on behalf of Environmental Defense Fund, Inc.. (Herzog, Megan) (Entered: 05/15/2025) |
| 05/15/2025 | 81 | MOTION for Leave to File *Amici Curiae Brief* by Citizens Campaign for the Environment, Conservation Law Foundation, Environmental Advocates NY, |

| | | |
|---|---|---|
| | | Environmental Defense Fund, Inc., Environmental Protection Information Center, National Wildlife Federation, Natural Resources Defense Council, New York League of Conservation Voters, Sierra Club, Southern Environmental Law Center. (Attachments: # 1 Proposed Brief of Amici Curiae of Environmental Organizations ry Injunctions)(Fuller, Erica) (Entered: 05/15/2025) |
| 05/15/2025 | 82 | MOTION for Leave to Appear Pro Hac Vice for admission of Julia K. Forgie by Natural Resources Defense Council, Citizens Campaign for the Environment, Environmental Protection Information Center, New York League of Conservation Voters . (Attachments: # 1 PHV Certification)(Fuller, Erica) Modified on 5/16/2025 (MAP). (Entered: 05/15/2025) |
| 05/15/2025 | 83 | MOTION for Leave to Appear Pro Hac Vice for admission of Gudrun Thompson Filing fee: $ 125, receipt number AMADC-11013584 by Southern Environmental Law Center. (Attachments: # 1 PHV Certification)(Fuller, Erica) (Entered: 05/15/2025) |
| 05/15/2025 | 84 | MOTION for Leave to Appear Pro Hac Vice for admission of Lucy Lefkowitz Filing fee: $ 125, receipt number AMADC-11013607 by National Wildlife Federation. (Attachments: # 1 PHV Certification)(Fuller, Erica) (Entered: 05/15/2025) |
| 05/15/2025 | 85 | MOTION for Leave to Appear Pro Hac Vice for admission of Susan J. Kraham Filing fee: $ 125, receipt number AMADC-11013615 by Environmental Advocates NY, Sierra Club. (Attachments: # 1 PHV Certification)(Fuller, Erica) (Entered: 05/15/2025) |
| 05/15/2025 | 86 | MOTION for Leave to Appear Pro Hac Vice for admission of Jared E. Knicley Filing fee: $ 125, receipt number AMADC-11013644 by Citizens Campaign for the Environment, Environmental Protection Information Center, Natural Resources Defense Council, New York League of Conservation Voters. (Attachments: # 1 PHV Certification)(Fuller, Erica) (Entered: 05/15/2025) |
| 05/16/2025 | 87 | Judge William G. Young: ELECTRONIC ORDER entered granting 83 Motion for Leave to Appear Pro Hac Vice Added Gudrun Thompson.<br><br>**Attorneys admitted Pro Hac Vice must have an individual PACER account, not a shared firm account, to electronically file in the District of Massachusetts. To register for a PACER account, go the Pacer website at https://pacer.uscourts.gov/register-account. You must put the docket number under ADDITIONAL FILER INFORMATION on your form when registering or it will be rejected.**<br><br>Pro Hac Vice Admission Request Instructions https://www.mad.uscourts.gov/caseinfo/nextgen-pro-hac-vice.htm.<br><br>AMICUS CURIAE APPEARANCE must be entered on the docket by the newly admitted attorney.<br><br>(MAP) (Entered: 05/16/2025) |
| 05/16/2025 | 88 | Judge William G. Young: ELECTRONIC ORDER entered granting 84 Motion for Leave to Appear Pro Hac Vice Added Lucy Lefkowitz.<br><br>**Attorneys admitted Pro Hac Vice must have an individual PACER account, not a shared firm account, to electronically file in the District of Massachusetts. To register for a PACER account, go the Pacer website at https://pacer.uscourts.gov/register-account. You must put the docket number under ADDITIONAL FILER INFORMATION on your form when registering or it will be rejected.** |

| | | |
|---|---|---|
| | | Pro Hac Vice Admission Request Instructions https://www.mad.uscourts.gov/caseinfo/nextgen-pro-hac-vice.htm. AMICUS CURIAE APPEARANCE must be entered on the docket by the newly admitted attorney. (MAP) (Entered: 05/16/2025) |
| 05/16/2025 | 89 | Judge William G. Young: ELECTRONIC ORDER entered granting 85 Motion for Leave to Appear Pro Hac Vice Added Susan J. Kraham. **Attorneys admitted Pro Hac Vice must have an individual PACER account, not a shared firm account, to electronically file in the District of Massachusetts. To register for a PACER account, go the Pacer website at https://pacer.uscourts.gov/register-account. You must put the docket number under ADDITIONAL FILER INFORMATION on your form when registering or it will be rejected.** Pro Hac Vice Admission Request Instructions https://www.mad.uscourts.gov/caseinfo/nextgen-pro-hac-vice.htm. AMICUS CURIAE APPEARANCE must be entered on the docket by the newly admitted attorney. (MAP) (Entered: 05/16/2025) |
| 05/16/2025 | 90 | Judge William G. Young: ELECTRONIC ORDER entered granting 86 Motion for Leave to Appear Pro Hac Vice Added Jared E. Knicley. **Attorneys admitted Pro Hac Vice must have an individual PACER account, not a shared firm account, to electronically file in the District of Massachusetts. To register for a PACER account, go the Pacer website at https://pacer.uscourts.gov/register-account. You must put the docket number under ADDITIONAL FILER INFORMATION on your form when registering or it will be rejected.** Pro Hac Vice Admission Request Instructions https://www.mad.uscourts.gov/caseinfo/nextgen-pro-hac-vice.htm. AMICUS CURIAE APPEARANCE must be entered on the docket by the newly admitted attorney. (MAP) (Entered: 05/16/2025) |
| 05/16/2025 | 91 | NOTICE OF ATTORNEY PAYMENT OF FEES as to 82 MOTION for Leave to Appear Pro Hac Vice for admission of Julia K. Forgie by Amicus Parties Citizens Campaign for the Environment, Environmental Protection Information Center, Natural Resources Defense Council, New York League of Conservation Voters. Filing fee $ 125, receipt number AMADC-11014149. Payment Type : PRO HAC VICE. (Fuller, Erica) (Entered: 05/16/2025) |
| 05/16/2025 | 92 | Judge William G. Young: ELECTRONIC ORDER entered granting 82 Motion for Leave to Appear Pro Hac Vice Added Julia K. Forgie. **Attorneys admitted Pro Hac Vice must have an individual PACER account, not a shared firm account, to electronically file in the District of Massachusetts. To register for a PACER account, go the Pacer website at** |

Case: 26-1174    Document: 00118407301    Page: 35    Date Filed: 02/23/2026    Entry ID: 6787901

|  |  |  |
|---|---|---|
|  |  | https://pacer.uscourts.gov/register-account. **You must put the docket number under ADDITIONAL FILER INFORMATION on your form when registering or it will be rejected.**<br><br>Pro Hac Vice Admission Request Instructions https://www.mad.uscourts.gov/caseinfo/nextgen-pro-hac-vice.htm.<br><br>AMICUS CURIAE APPEARANCE must be entered on the docket by the newly admitted attorney.<br>(MAP) (Entered: 05/16/2025) |
| 05/16/2025 | 93 | ELECTRONIC NOTICE Setting Hearing on Motion 53 MOTION for Preliminary Injunction , 55 MOTION for Preliminary Injunction. Motion Hearing set for 6/4/2025 03:00 PM in Courtroom 18 (In person with remote access provided) before Judge William G. Young. Audio access to the hearing may be available to the media and public. Please check the Court schedule. In order to gain access to the hearing, you must sign up at the following address: https://forms.mad.uscourts.gov/courtlist.html.<br><br>For questions regarding access to hearings, you may refer to the general orders and public notices of the Court available on www.mad.uscourts.gov or contact the session here.<br><br>(KB) (Entered: 05/16/2025) |
| 05/16/2025 | 94 | NOTICE of Appearance by Kate Marie Hammond on behalf of State of California (Hammond, Kate) (Entered: 05/16/2025) |
| 05/16/2025 | 95 | Amicus Curiae APPEARANCE entered by Susan Kraham on behalf of Environmental Advocates NY, Sierra Club (Kraham, Susan)<br><br>**Modified on 5/16/2025 to Correct Docket Text as Counsel Kraham Filed the Notice of Appearance Under the Wrong Event in CM/ECF (MAP).**<br><br>(Entered: 05/16/2025) |
| 05/16/2025 | 96 | Amicus Curiae APPEARANCE entered by Jared E Knicley on behalf of Citizens Campaign for the Environment, Environmental Protection Information Center, Natural Resources Defense Council, New York League of Conservation Voters. (Knicley, Jared) (Entered: 05/16/2025) |
| 05/19/2025 | 97 | MOTION for Leave to Appear Pro Hac Vice for admission of Lucas Wollenzien, Michael Moody Filing fee: $ 250, receipt number AMADC-11016673 by State of Michigan. (Attachments: # 1 Wollenzien Certificate, # 2 Moody Certificate)(Whitney, Jon) (Entered: 05/19/2025) |
| 05/19/2025 | 98 | MOTION for Leave to Appear Pro Hac Vice for admission of William Grantham Filing fee: $ 125, receipt number AMADC-11016742 by State of New Mexico. (Attachments: # 1 Grantham Certificate)(Whitney, Jon) (Entered: 05/19/2025) |
| 05/19/2025 | 99 | Judge William G. Young: ELECTRONIC ORDER entered granting 97 Motion for Leave to Appear Pro Hac Vice Added Lucas Wollenzien and Michael Moody.<br><br>**Attorneys admitted Pro Hac Vice must have an individual PACER account, not a shared firm account, to electronically file in the District of Massachusetts. To register for a PACER account, go the Pacer website at https://pacer.uscourts.gov/register-account. You must put the docket number** |

| | | |
|---|---|---|
| | | under ADDITIONAL FILER INFORMATION on your form when registering or it will be rejected.<br><br>Pro Hac Vice Admission Request Instructions https://www.mad.uscourts.gov/caseinfo/nextgen-pro-hac-vice.htm.<br><br>A Notice of Appearance must be entered on the docket by the newly admitted attorney. (MAP) (Entered: 05/19/2025) |
| 05/19/2025 | 100 | Judge William G. Young: ELECTRONIC ORDER entered granting 98 Motion for Leave to Appear Pro Hac Vice Added William Grantham.<br><br>**Attorneys admitted Pro Hac Vice must have an individual PACER account, not a shared firm account, to electronically file in the District of Massachusetts. To register for a PACER account, go the Pacer website at https://pacer.uscourts.gov/register-account. You must put the docket number under ADDITIONAL FILER INFORMATION on your form when registering or it will be rejected.**<br><br>Pro Hac Vice Admission Request Instructions https://www.mad.uscourts.gov/caseinfo/nextgen-pro-hac-vice.htm.<br><br>A Notice of Appearance must be entered on the docket by the newly admitted attorney.<br><br>(MAP) (Entered: 05/19/2025) |
| 05/19/2025 | 101 | MOTION for Leave to Appear Pro Hac Vice for admission of Ralph K. Durstein III Filing fee: $ 125, receipt number AMADC-11017093 by State of Delaware. (Attachments: # 1 Durstein Certificate)(Whitney, Jon) (Entered: 05/19/2025) |
| 05/19/2025 | 102 | Judge William G. Young: ELECTRONIC ORDER entered granting 101 Motion for Leave to Appear Pro Hac Vice Added Ralph K. Durstein.<br><br>**Attorneys admitted Pro Hac Vice must have an individual PACER account, not a shared firm account, to electronically file in the District of Massachusetts. To register for a PACER account, go the Pacer website at https://pacer.uscourts.gov/register-account. You must put the docket number under ADDITIONAL FILER INFORMATION on your form when registering or it will be rejected.**<br><br>Pro Hac Vice Admission Request Instructions https://www.mad.uscourts.gov/caseinfo/nextgen-pro-hac-vice.htm.<br><br>A Notice of Appearance must be entered on the docket by the newly admitted attorney.<br><br>(MAP) (Entered: 05/19/2025) |
| 05/19/2025 | 103 | NOTICE of Appearance by Nicholas M. Vaz on behalf of State of Rhode Island (Vaz, Nicholas) (Entered: 05/19/2025) |
| 05/19/2025 | 104 | Amicus Curiae APPEARANCE entered by Julia Kathryn Forgie on behalf of Citizens Campaign for the Environment, Environmental Protection Information Center, Natural Resources Defense Council, New York League of Conservation Voters. (Forgie, Julia) (Entered: 05/19/2025) |
| 05/20/2025 | 105 | Amicus Curiae APPEARANCE entered by Gudrun Elise Thompson on behalf of Southern Environmental Law Center (Thompson, Gudrun) |

Case: 26-1174    Document: 00118407391    Page: 37    Date Filed: 02/23/2026    Entry ID: 6787901

| | | |
|---|---|---|
| | | **Modified on 5/20/2025 o Correct Docket Text as Counsel Thompson Filed the Notice of Appearance Under the Wrong Event in CM/ECF (MAP).** (Entered: 05/20/2025) |
| 05/20/2025 | 106 | Amicus Curiae APPEARANCE entered by Thomas William Stavola, Jr on behalf of Save Long Beach Island, Inc.. (Stavola, Thomas) (Entered: 05/20/2025) |
| 05/20/2025 | 107 | MOTION for Leave to File *Amicus Curiae Brief* by Save Long Beach Island, Inc.. (Attachments: # 1 Proposed Brief of Amicus Curiae Save Long Beach Island, Inc.) (Stavola, Thomas) (Entered: 05/20/2025) |
| 05/20/2025 | 108 | NOTICE of Appearance by Nathaniel Haviland-Markowitz on behalf of Commonwealth of Massachusetts (Haviland-Markowitz, Nathaniel) (Entered: 05/20/2025) |
| 05/21/2025 | 109 | Judge William G. Young ELECTRONIC ORDER entered: 72 Motion for Leave to File Excess Pages. **The federal defendants shall filed a consolidated response to the Plaintiffs' and ACE New York's motions not exceeding 40-pages.** (MAP) (Entered: 05/21/2025) |
| 05/21/2025 | 110 | Judge William G. Young: ELECTRONIC ORDER entered granting 107 MOTION for Leave to File Amicus Curiae Brief; Counsel using the Electronic Case Filing System should now file the document for which leave to file has been granted in accordance with the CM/ECF Administrative Procedures. Counsel must include - Leave to file granted on (date of order)- in the caption of the document. (MAP) (Entered: 05/21/2025) |
| 05/21/2025 | 111 | AMICUS BRIEF filed by Save Long Beach Island, Inc. *In Support of Defendants' Opposition to Motions for Preliminary Injunction*. (Stavola, Thomas) (Entered: 05/21/2025) |
| 05/21/2025 | 112 | Amicus Curiae APPEARANCE entered by Isabella Lefkowitz on behalf of National Wildlife Federation. (Lefkowitz, Isabella) (Entered: 05/21/2025) |
| 05/21/2025 | 113 | MOTION for Leave to Appear Pro Hac Vice for admission of Terel L. Klein Filing fee: $ 125, receipt number AMADC-11022510 by State of New Jersey. (Attachments: # 1 Klein Certificate)(Whitney, Jon) (Entered: 05/21/2025) |
| 05/21/2025 | 114 | Intervenor COMPLAINT , filed by Alliance for Clean Energy New York.(Detterman, Brook) (Entered: 05/21/2025) |
| 05/22/2025 | 115 | Judge William G. Young: ELECTRONIC ORDER entered granting 113 Motion for Leave to Appear Pro Hac Vice Added Terel L. Klein. |

**Attorneys admitted Pro Hac Vice must have an individual PACER account, not a shared firm account, to electronically file in the District of Massachusetts. To register for a PACER account, go the Pacer website at https://pacer.uscourts.gov/register-account. You must put the docket number under ADDITIONAL FILER INFORMATION on your form when registering or it will be rejected.**

Pro Hac Vice Admission Request Instructions https://www.mad.uscourts.gov/caseinfo/nextgen-pro-hac-vice.htm.

A Notice of Appearance must be entered on the docket by the newly admitted attorney.

(MAP) (Entered: 05/22/2025)

| 05/22/2025 | 116 | Consent MOTION for Extension of Time to 05/29/2025 to File Response/Reply as to 53 MOTION for Preliminary Injunction , 55 MOTION for Preliminary Injunction by Scott Bessent, Bureau of Land Management, Bureau of Ocean Energy Management, Douglas Burgum, Walter Cruickshank, Department of Commerce, Environmental Protection Agency, US, William "Butch" H. Graham, Jr, Laura Grimm, Howard Lutnick, National Marine Fisheries Service, National Oceanic and Atmospheric Administration, Eugenio Pieiro Soler, Jonathan Raby, Brooke Rollins, Paul Souza, Donald J Trump, U.S. Army Corps of Engineers, U.S. Fish and Wildlife Service, US Department of Agriculture, US Department of Energy, US Department of Interior, US Department of the Treasury, United States of America, Chris Wright, Lee Zeldin. (Attachments: # 1 Text of Proposed Order)(Robertson, Michael) (Entered: 05/22/2025) |
| --- | --- | --- |
| 05/22/2025 | 117 | ELECTRONIC NOTICE Resetting Hearing on Motion 53 MOTION for Preliminary Injunction , 55 MOTION for Preliminary Injunction : Motion Hearing set for 6/5/2025 11:00 AM in Courtroom 18 (In person only) before Judge William G. Young. Audio access to the hearing may be available to the media and public. Please check the Court schedule. In order to gain access to the hearing, you must sign up at the following address: https://forms.mad.uscourts.gov/courtlist.html. <br><br> For questions regarding access to hearings, you may refer to the general orders and public notices of the Court available on www.mad.uscourts.gov or contact the session here. <br><br> (KB) (Entered: 05/22/2025) |
| 05/22/2025 | 118 | Judge William G. Young ELECTRONIC ORDER entered: allowed 81 MOTION for Leave to File Amici Curiae Brief ; Counsel using the Electronic Case Filing System should now file the document for which leave to file has been granted in accordance with the CM/ECF Administrative Procedures. Counsel must include - Leave to file granted on (date of order)- in the caption of the document. (MAP) (Entered: 05/22/2025) |
| 05/22/2025 | 119 | AMICUS BRIEF filed by Citizens Campaign for the Environment, Conservation Law Foundation, Environmental Advocates NY, Environmental Defense Fund, Inc., Environmental Protection Information Center, National Wildlife Federation, Natural Resources Defense Council, New York League of Conservation Voters, Sierra Club, Southern Environmental Law Center *In Support of the Motions for a Preliminary Injunction*. (Fuller, Erica) (Entered: 05/22/2025) |

| 05/22/2025 | 120 | Judge William G. Young ELECTRONIC ORDER entered: allowed 116 Consent Motion for Extension of Time to File Response/Reply re 53 MOTION for Preliminary Injunction , 55 MOTION for Preliminary Injunction Responses due by 5/29/2025 (MAP) (Entered: 05/22/2025) |
|---|---|---|
| 05/23/2025 | 121 | NOTICE of Appearance by William Grantham on behalf of State of New Mexico (Grantham, William) (Entered: 05/23/2025) |
| 05/27/2025 | 122 | NOTICE of Appearance by Terel Klein on behalf of State of New Jersey (Klein, Terel) (Entered: 05/27/2025) |
| 05/29/2025 | 123 | Opposition re 53 MOTION for Preliminary Injunction , 55 MOTION for Preliminary Injunction filed by Scott Bessent, Bureau of Land Management, Bureau of Ocean Energy Management, Douglas Burgum, Walter Cruickshank, Department of Commerce, Environmental Protection Agency, US, William "Butch" H. Graham, Jr, Laura Grimm, Howard Lutnick, National Marine Fisheries Service, National Oceanic and Atmospheric Administration, Eugenio Pieiro Soler, Jonathan Raby, Brooke Rollins, Paul Souza, Donald J Trump, U.S. Army Corps of Engineers, U.S. Fish and Wildlife Service, US Department of Agriculture, US Department of Energy, US Department of Interior, US Department of the Treasury, United States of America, Chris Wright, Lee Zeldin. (Attachments: # 1 Declaration of Jessica Stromberg, # 2 Declaration of Tunis McElwain, # 3 Declaration of Matthew Giacona, # 4 Declaration of Travis Voyles, # 5 Declaration of Elizabeth Maclin, # 6 Declaration of Jerome Ford, # 7 Declaration of Samuel D. Rauch III)(Robertson, Michael) (Entered: 05/29/2025) |
| 05/30/2025 | 124 | MOTION for Leave to Appear Pro Hac Vice for admission of Ian R. Liston, Vanessa L. Kassab Filing fee: $ 250, receipt number AMADC-11037755 by State of Delaware. (Attachments: # 1 Liston Certificate, # 2 Kassab Certificate)(Whitney, Jon) (Entered: 05/30/2025) |
| 05/30/2025 | 125 | Assented to MOTION for Leave to File *Reply Memorandum of Law* by State of Delaware, District of Columbia, Commonwealth of Massachusetts, State of Arizona, State of California, State of Colorado, State of Connecticut, State of Illinois, State of Maine, State of Maryland, State of Michigan, State of Minnesota, State of New Jersey, State of New Mexico, State of New York, State of Oregon, State of Rhode Island, State of Washington. (Attachments: # 1 Exhibit Proposed Order)(Hertzog, Rene) (Entered: 05/30/2025) |
| 05/30/2025 | 126 | NOTICE of Appearance by Ralph K Durstein, III on behalf of State of Delaware (Durstein, Ralph) (Entered: 05/30/2025) |
| 05/30/2025 | 127 | Assented to MOTION for Leave to File *Reply Memorandum of Law* by Alliance for Clean Energy New York. (Attachments: # 1 Exhibit Proposed Order)(Detterman, Brook) (Entered: 05/30/2025) |
| 05/30/2025 | 128 | Judge William G. Young: ELECTRONIC ORDER entered granting 124 Motion for Leave to Appear Pro Hac Vice Added Ian R. Liston and Vanessa L. Kassab. **Attorneys admitted Pro Hac Vice must have an individual upgraded PACER account, not a shared firm account, to electronically file in the District of Massachusetts. Counsel may need to link their CM/ECF account to their upgraded individual pacer account.** Instructions on how to link CM/ECF accounts to upgraded pacer account can be found at https://www.mad.uscourts.gov/caseinfo/nextgen-current-pacer-accounts.htm#link-account. (MAP) (Entered: 05/30/2025) |

| | | |
|---|---|---|
| 05/30/2025 | 129 | NOTICE of Appearance by Ian Liston on behalf of State of Delaware (Liston, Ian) (Entered: 05/30/2025) |
| 06/02/2025 | 130 | Judge William G. Young: ELECTRONIC ORDER entered granting 125 Assented to MOTION for Leave to File Reply ; Counsel using the Electronic Case Filing System should now file the document for which leave to file has been granted in accordance with the CM/ECF Administrative Procedures. Counsel must include - Leave to file granted on (date of order)- in the caption of the document. (MAP) (Entered: 06/02/2025) |
| 06/02/2025 | 131 | Judge William G. Young: ELECTRONIC ORDER entered granting 127 Assented to MOTION for Leave to File Reply ; Counsel using the Electronic Case Filing System should now file the document for which leave to file has been granted in accordance with the CM/ECF Administrative Procedures. Counsel must include - Leave to file granted on (date of order)- in the caption of the document. (MAP) (Entered: 06/02/2025) |
| 06/02/2025 | 132 | NOTICE of Appearance by Vanessa L Kassab on behalf of State of Delaware (Kassab, Vanessa) (Entered: 06/02/2025) |
| 06/02/2025 | 133 | NOTICE of Appearance by Amanda Churchill on behalf of State of Michigan (Churchill, Amanda) (Entered: 06/02/2025) |
| 06/02/2025 | 134 | NOTICE of Appearance by Amanda Churchill on behalf of State of Michigan (Churchill, Amanda) (Entered: 06/02/2025) |
| 06/03/2025 | 135 | REPLY to Response to 53 MOTION for Preliminary Injunction filed by District of Columbia, Commonwealth of Massachusetts, State of Arizona, State of California, State of Colorado, State of Connecticut, State of Delaware, State of Illinois, State of Maine, State of Maryland, State of Michigan, State of Michigan, State of Minnesota, State of New Jersey, State of New Mexico, State of New York, State of Oregon, State of Rhode Island, State of Washington. (Myers, Michael) (Entered: 06/03/2025) |
| 06/03/2025 | 136 | REPLY to Response to 55 MOTION for Preliminary Injunction filed by Alliance for Clean Energy New York. (Detterman, Brook) (Entered: 06/03/2025) |
| 06/05/2025 | 137 | Electronic Clerk's Notes for proceedings held before Judge William G. Young: Motion Hearing held on 6/5/2025 re 53 MOTION for Preliminary Injunction filed by State of Rhode Island, State of Minnesota, State of Michigan, State of New Jersey, State of Connecticut, State of Illinois, State of Oregon, State of Arizona, District of Columbia, State of Maine, State of Delaware, State of California, State of Maryland, State of New Mexico, Commonwealth of Massachusetts, State of New York, State of Washington, State of Colorado, 55 MOTION for Preliminary Injunction filed by Alliance for Clean Energy New York. The Court enters an order re 53 Motion for Preliminary Injunction and 55 MOTION for Preliminary Injunction: the motions are collapsed with trial on the merits in accordance with Rule 65(a). Court discusses with the parties treating the opposition to the motions as a motion to dismiss and whether or not the parties wish to proceed with argument today or hold a hearing next week. With agreement of the parties the Court will treat the opposition to the motions for preliminary injunction as a Motion to Dismiss. The Court sets a Motion Hearing for 6/11/2025 11:00 AM in Courtroom 18 (In person with remote access provided) before Judge William G. Young. Defendants will argue first, then plaintiffs. Plaintiffs discuss possibility of filing amended complaint or response to the motion to dismiss and defendants discuss responding. Parties are not foreclosed on making filings. Audio access to the hearing may be available to the media and public. Please check the Court schedule. In order to gain access to the hearing, you must sign up at the following address: https://forms.mad.uscourts.gov/courtlist.html. |

For questions regarding access to hearings, you may refer to the general orders and public notices of the Court available on www.mad.uscourts.gov or contact the session here.

(Court Reporter: Richard Romanow at rhr3tubas@aol.com.)(Attorneys present: Brook Detterman, James Michael Auslander, Nathaniel Haviland-Markowitz, Turner Smith, Michael Myers, Rene Hertzog for plaintiffs and Michael Keith Robertson for defendants) (KB) (Entered: 06/05/2025)

| 06/10/2025 | 138 | MOTION for Leave to File *SUPPLEMENTAL OPPOSITION TO MOTION TO DISMISS* by Alliance for Clean Energy New York. (Attachments: # 1 Text of Proposed Order)(Detterman, Brook) (Entered: 06/10/2025) |
| 06/10/2025 | 139 | MEMORANDUM in Support re 138 MOTION for Leave to File *SUPPLEMENTAL OPPOSITION TO MOTION TO DISMISS* filed by Alliance for Clean Energy New York. (Detterman, Brook) (Entered: 06/10/2025) |
| 06/10/2025 | 140 | AFFIDAVIT in Support re 138 MOTION for Leave to File *SUPPLEMENTAL OPPOSITION TO MOTION TO DISMISS* filed by Alliance for Clean Energy New York. (Detterman, Brook) (Entered: 06/10/2025) |
| 06/10/2025 | 141 | AMENDED COMPLAINT against All Defendants, filed by District of Columbia, Commonwealth of Massachusetts, State of Arizona, State of California, State of Colorado, State of Connecticut, State of Delaware, State of Illinois, State of Maine, State of Maryland, State of Michigan, State of Minnesota, State of New Jersey, State of New Mexico, State of New York, State of Oregon, State of Rhode Island, State of Washington.(Smith, Turner) (Entered: 06/10/2025) |
| 06/10/2025 | 142 | Transcript of Preliminary Injunction Hearing held on June 5, 2025, before Judge William G. Young. The Transcript may be purchased through the Court Reporter, viewed at the public terminal, or viewed through PACER after it is released. Court Reporter Name and Contact Information: Richard Romanow at rhr3tubas@aol.com. Redaction Request due 7/1/2025. Redacted Transcript Deadline set for 7/11/2025. Release of Transcript Restriction set for 9/8/2025. (DRK) (Entered: 06/10/2025) |
| 06/10/2025 | 143 | NOTICE is hereby given that an official transcript of a proceeding has been filed by the court reporter in the above-captioned matter. Counsel are referred to the Court's Transcript Redaction Policy, available on the court website at https://www.mad.uscourts.gov/caseinfo/transcripts.htm (DRK) (Entered: 06/10/2025) |
| 06/10/2025 | 144 | Assented to MOTION for Leave to File *Supplemental Opposition to Defendants' motion to dismiss* by District of Columbia, Commonwealth of Massachusetts, State of Arizona, State of California, State of Colorado, State of Connecticut, State of Delaware, State of Illinois, State of Maine, State of Maryland, State of Michigan, State of Minnesota, State of New Jersey, State of New Mexico, State of New York, State of Oregon, State of Rhode Island, State of Washington. (Attachments: # 1 Exhibit States' Supplemental Brief, # 2 Exhibit Mahony Declaration, # 3 Exhibit Perry Declaration, # 4 Exhibit Brown Declaration, # 5 Exhibit Proposed Order)(Hertzog, Rene) (Entered: 06/10/2025) |
| 06/10/2025 | 145 | Judge William G. Young: ELECTRONIC ORDER entered **allowed** 138 Motion for Leave to File Supplemental Opposition ; Counsel using the Electronic Case Filing System should now file the document for which leave to file has been granted in accordance with the CM/ECF Administrative Procedures. Counsel must include - Leave to file granted on (date of order)- in the caption of the document. (MAP) (Entered: 06/10/2025) |

| 06/10/2025 | 146 | SUPPLEMENTAL BRIEF in Opposition to Motion to Dismiss by Alliance for Clean Energy New York. (Attachments: # 1 Exhibit Declaration of Marguerite Wells)(MAP) (Entered: 06/10/2025) |
|---|---|---|
| 06/11/2025 | 147 | ELECTRONIC NOTICE Resetting Hearing on Motion: At request of the parties, the Motion Hearing previously set for 6/11/2025 is reset for 6/18/2025 11:30 AM in Courtroom 18 (In person with remote access provided) before Judge William G. Young. Audio access to the hearing may be available to the media and public. Please check the Court schedule. In order to gain access to the hearing, you must sign up at the following address: https://forms.mad.uscourts.gov/courtlist.html.<br><br>For questions regarding access to hearings, you may refer to the general orders and public notices of the Court available on www.mad.uscourts.gov or contact the session here.<br><br>(KB) (Entered: 06/11/2025) |
| 06/11/2025 | 148 | Judge William G. Young: ELECTRONIC ORDER entered **allowed** 144 Assented to MOTION for Leave to File Supplemental Opposition to Defendants' motion to dismiss ; Counsel using the Electronic Case Filing System should now file the document for which leave to file has been granted in accordance with the CM/ECF Administrative Procedures. Counsel must include - Leave to file granted on (date of order)- in the caption of the document. (MAP) (Entered: 06/11/2025) |
| 06/11/2025 | 149 | SUPPLEMENT BRIEF in Opposition to Defendants Motion to Dismiss by District of Columbia, Commonwealth of Massachusetts, State of Arizona, State of California, State of Colorado, State of Connecticut, State of Delaware, State of Illinois, State of Maine, State of Maryland, State of Michigan, State of Minnesota, State of New Jersey, State of New Mexico, State of New York, State of Oregon, State of Rhode Island, State of Washington *in Opposition to Defendants' Motion to Dismiss*. (Hertzog, Rene) Modified on 6/11/2025 (MAP). (Entered: 06/11/2025) |
| 06/11/2025 | 150 | DECLARATION re 149 SUPPLEMENT BRIEF in Opposition to Defendants Motion to Dismiss by District of Columbia, Commonwealth of Massachusetts, State of Arizona, State of California, State of Colorado, State of Connecticut, State of Delaware, State of Illinois, State of Maine, State of Maryland, State of Michigan, State of Minnesota, State of New Jersey, State of New Mexico, State of New York, State of Oregon, State of Rhode Island, State of Washington. (Hertzog, Rene) Modified on 6/11/2025 (MAP). (Entered: 06/11/2025) |
| 06/11/2025 | 151 | DECLARATION re 149 SUPPLEMENT BRIEF in Opposition to Defendants Motion to Dismiss by District of Columbia, Commonwealth of Massachusetts, State of Arizona, State of California, State of Colorado, State of Connecticut, State of Delaware, State of Illinois, State of Maine, State of Maryland, State of Michigan, State of Minnesota, State of New Jersey, State of New Mexico, State of New York, State of Oregon, State of Rhode Island, State of Washington. (Hertzog, Rene) Modified on 6/11/2025 (MAP). (Entered: 06/11/2025) |
| 06/11/2025 | 152 | DECLARATION re 149 SUPPLEMENT BRIEF in Opposition to Defendants Motion to Dismiss by District of Columbia, Commonwealth of Massachusetts, State of Arizona, State of California, State of Colorado, State of Connecticut, State of Delaware, State of Illinois, State of Maine, State of Maryland, State of Michigan, State of Minnesota, State of New Jersey, State of New Mexico, State of New York, State of Oregon, State of Rhode Island, State of Washington. (Hertzog, Rene) Modified on 6/11/2025 (MAP). (Entered: 06/11/2025) |

| 06/12/2025 | 153 | ELECTRONIC NOTICE Resetting Hearing on Motion: Motion Hearing reset for 6/18/2025 11:00 AM in Courtroom 18 (In person with remote access provided) before Judge William G. Young. **Note: change is to time only!** (KB) (Entered: 06/12/2025) |
|---|---|---|
| 06/17/2025 | 154 | Assented to MOTION for Leave to File *Reply Brief* by Scott Bessent, Bureau of Land Management, Bureau of Ocean Energy Management, Douglas Burgum, Walter Cruickshank, Department of Commerce, Environmental Protection Agency, US, William "Butch" H. Graham, Jr, Laura Grimm, Howard Lutnick, National Marine Fisheries Service, National Oceanic and Atmospheric Administration, Eugenio Pieiro Soler, Jonathan Raby, Brooke Rollins, Paul Souza, Donald J Trump, U.S. Army Corps of Engineers, U.S. Fish and Wildlife Service, US Department of Agriculture, US Department of Energy, US Department of Interior, US Department of the Treasury, United States of America, Chris Wright, Lee Zeldin. (Attachments: # 1 Exhibit Proposed Reply)(Robertson, Michael) (Entered: 06/17/2025) |
| 06/18/2025 | 155 | Judge William G. Young: ELECTRONIC ORDER entered **allowed** 154 Assented to MOTION for Leave to File Reply Brief ; Counsel using the Electronic Case Filing System should now file the document for which leave to file has been granted in accordance with the CM/ECF Administrative Procedures. Counsel must include - Leave to file granted on (date of order)- in the caption of the document. (MAP) (Entered: 06/18/2025) |
| 06/18/2025 | 156 | REPLY to Response to 144 Assented to MOTION for Leave to File *Supplemental Opposition to Defendants' motion to dismiss* filed by Scott Bessent, Bureau of Land Management, Bureau of Ocean Energy Management, Douglas Burgum, Walter Cruickshank, Department of Commerce, Environmental Protection Agency, US, William "Butch" H. Graham, Jr, Laura Grimm, Howard Lutnick, National Marine Fisheries Service, National Oceanic and Atmospheric Administration, Eugenio Pieiro Soler, Jonathan Raby, Brooke Rollins, Paul Souza, Donald J Trump, U.S. Army Corps of Engineers, U.S. Fish and Wildlife Service, US Department of Agriculture, US Department of Energy, US Department of Interior, US Department of the Treasury, United States of America, Chris Wright, Lee Zeldin. (Dupre, Phillip) (Entered: 06/18/2025) |
| 06/18/2025 | 157 | Electronic Clerk's Notes for proceedings held before Judge William G. Young: Motion Hearing held on 6/18/2025. The Court treats the opposition to the Motion for Preliminary Injunction as a Motion to Dismiss. Court hears argument on the motion. The Court allows the motion to dismiss in part and denies the motion in part. Court makes tentative rulings on the record. A written order will issue. The Court sets the following deadlines: Defendants to file administrative record by July 2, 2025, Plaintiffs to file any motions to supplement the record by July 9, 2025, Deadline for all parties to file motions for summary judgment is July 30, 2025. Motion hearing on the cross motions for summary Judgment is set for September 4th at 2:30pm. (Court Reporter: Richard Romanow at rhr3tubas@aol.com.)(Attorneys present: Brook Detterman, James Michael Auslander, Nathaniel Haviland-Markowitz, Turner Smith, Michael Myers for plaintiffs and Michael Keith Robertson for defendants)(Attorneys present: Brook Detterman,) (KB) (Entered: 06/18/2025) |
| 06/18/2025 | 158 | ELECTRONIC NOTICE Setting Hearing on Motion: Motion Hearing set for 9/4/2025 02:30 PM in Courtroom 18 (In person with remote access provided) before Judge William G. Young. Audio access to the hearing may be available to the media and public. Please check the Court schedule. In order to gain access to the hearing, you must sign up at the following address: https://forms.mad.uscourts.gov/courtlist.html.<br><br>For questions regarding access to hearings, you may refer to the general orders and public notices of the Court available on www.mad.uscourts.gov or contact the session |

Case: 26-1174     Document: 00118407391     Page: 44     Date Filed: 02/23/2026     Entry ID: 6787901

| | | |
|---|---|---|
| | | here.<br><br>(KB) (Entered: 06/18/2025) |
| 06/23/2025 | 159 | Transcript of Preliminary Injunction/Motion to Dismiss Hearing held on June 18, 2025, before Judge William G. Young. The Transcript may be purchased through the Court Reporter, viewed at the public terminal, or viewed through PACER after it is released. Court Reporter Name and Contact Information: Richard Romanow at rhr3tubas@aol.com. Redaction Request due 7/14/2025. Redacted Transcript Deadline set for 7/24/2025. Release of Transcript Restriction set for 9/22/2025. (DRK) (Entered: 06/24/2025) |
| 06/23/2025 | 160 | NOTICE is hereby given that an official transcript of a proceeding has been filed by the court reporter in the above-captioned matter. Counsel are referred to the Court's Transcript Redaction Policy, available on the court website at https://www.mad.uscourts.gov/caseinfo/transcripts.htm (DRK) (Entered: 06/24/2025) |
| 07/02/2025 | 161 | NOTICE by Scott Bessent, Bureau of Land Management, Bureau of Ocean Energy Management, Douglas Burgum, Walter Cruickshank, Department of Commerce, Environmental Protection Agency, US, William "Butch" H. Graham, Jr, Laura Grimm, Howard Lutnick, National Marine Fisheries Service, National Oceanic and Atmospheric Administration, Eugenio Pieiro Soler, Jonathan Raby, Brooke Rollins, Paul Souza, Donald J Trump, U.S. Army Corps of Engineers, U.S. Fish and Wildlife Service, US Department of Agriculture, US Department of Energy, US Department of Interior, US Department of the Treasury, United States of America, Chris Wright, Lee Zeldin (Attachments: # 1 Exhibit Administrative Record Certification of Matthew Giacona, # 2 Exhibit, # 3 Exhibit)(Robertson, Michael) (Entered: 07/02/2025) |
| 07/03/2025 | 162 | Judge William G. Young: ORDER entered.<br><br>MEMORANDUM AND ORDER<br><br>(Sonnenberg, Elizabeth) (Entered: 07/03/2025) |
| 07/09/2025 | 163 | Joint MOTION to Amend *Case Schedule* by Scott Bessent, Bureau of Land Management, Bureau of Ocean Energy Management, Douglas Burgum, Walter Cruickshank, Department of Commerce, Environmental Protection Agency, US, William "Butch" H. Graham, Jr, Laura Grimm, Howard Lutnick, National Marine Fisheries Service, National Oceanic and Atmospheric Administration, Eugenio Pieiro Soler, Jonathan Raby, Brooke Rollins, Paul Souza, Donald J Trump, U.S. Army Corps of Engineers, U.S. Fish and Wildlife Service, US Department of Agriculture, US Department of Energy, US Department of Interior, US Department of the Treasury, United States of America, Chris Wright, Lee Zeldin.(Robertson, Michael) (Entered: 07/09/2025) |
| 07/10/2025 | 164 | Judge William G. Young: ELECTRONIC ORDER entered **allowed** 163 Joint MOTION to Amend Case Schedule. (MAP) (Entered: 07/10/2025) |
| 07/11/2025 | 165 | NOTICE by Scott Bessent, Bureau of Land Management, Bureau of Ocean Energy Management, Douglas Burgum, Walter Cruickshank, Department of Commerce, Environmental Protection Agency, US, William "Butch" H. Graham, Jr, Laura Grimm, Howard Lutnick, National Marine Fisheries Service, National Oceanic and Atmospheric Administration, Eugenio Pieiro Soler, Jonathan Raby, Brooke Rollins, Paul Souza, Donald J Trump, U.S. Army Corps of Engineers, U.S. Fish and Wildlife Service, US Department of Agriculture, US Department of Energy, US Department of Interior, US Department of the Treasury, United States of America, Chris Wright, Lee Zeldin *of Filing Administrative Record* (Attachments: # 1 Exhibit Administrative |

| | | |
|---|---|---|
| | | Record Certification of Matthew Giacona, # 2 Exhibit, # 3 Exhibit, # 4 Exhibit Administrative Record Certification of Travis Voyles, # 5 Exhibit, # 6 Exhibit Administrative Record Certification of Samuel Rauch, # 7 Exhibit, # 8 Exhibit Administrative Record Certification of Tunis McElwain, # 9 Exhibit)(Robertson, Michael) (Entered: 07/11/2025) |
| 07/29/2025 | 166 | MOTION for Leave to Appear Pro Hac Vice for admission of Joya C. Sonnenfeldt Filing fee: $ 125, receipt number AMADC-11148496 by Commonwealth of Massachusetts. (Attachments: # 1 Sonnenfeldt Certificate)(Whitney, Jon) (Entered: 07/29/2025) |
| 07/30/2025 | 167 | Judge William G. Young: ELECTRONIC ORDER entered granting 166 Motion for Leave to Appear Pro Hac Vice. Added Joya C. Sonnenfeldt.<br><br>**Attorneys admitted Pro Hac Vice must have an individual PACER account, not a shared firm account, to electronically file in the District of Massachusetts. To register for a PACER account, go the Pacer website at https://pacer.uscourts.gov/register-account. You must put the docket number under ADDITIONAL FILER INFORMATION on your form when registering or it will be rejected.**<br><br>Pro Hac Vice Admission Request Instructions https://www.mad.uscourts.gov/caseinfo/nextgen-pro-hac-vice.htm.<br><br>A Notice of Appearance must be entered on the docket by the newly admitted attorney.<br><br>(MAP) (Entered: 07/30/2025) |
| 07/30/2025 | 168 | NOTICE of Withdrawal of Appearance by Phillip R. Dupre (Dupre, Phillip) (Entered: 07/30/2025) |
| 07/30/2025 | 169 | NOTICE of Appearance by Joya C Sonnenfeldt on behalf of State of New York (Sonnenfeldt, Joya) (Entered: 07/30/2025) |
| 07/31/2025 | 170 | ANSWER to 141 Amended Complaint, by Scott Bessent, Bureau of Land Management, Bureau of Ocean Energy Management, Douglas Burgum, Walter Cruickshank, Department of Commerce, Environmental Protection Agency, US, William "Butch" H. Graham, Jr, Laura Grimm, Howard Lutnick, National Marine Fisheries Service, National Oceanic and Atmospheric Administration, Eugenio Pieiro Soler, Jonathan Raby, Brooke Rollins, Paul Souza, Donald J Trump, U.S. Army Corps of Engineers, U.S. Fish and Wildlife Service, US Department of Agriculture, US Department of Energy, US Department of Interior, US Department of the Treasury, United States of America, Chris Wright, Lee Zeldin.(Robertson, Michael) (Entered: 07/31/2025) |
| 07/31/2025 | 171 | ANSWER to Complaint *of Intervenor Alliance for Clean Energy New York* by Scott Bessent, Bureau of Land Management, Bureau of Ocean Energy Management, Douglas Burgum, Walter Cruickshank, Department of Commerce, Environmental Protection Agency, US, William "Butch" H. Graham, Jr, Laura Grimm, Howard Lutnick, National Marine Fisheries Service, National Oceanic and Atmospheric Administration, Eugenio Pieiro Soler, Jonathan Raby, Brooke Rollins, Paul Souza, Donald J Trump, U.S. Army Corps of Engineers, U.S. Fish and Wildlife Service, US Department of Agriculture, US Department of Energy, US Department of Interior, US Department of the Treasury, United States of America, Chris Wright, Lee Zeldin. (Robertson, Michael) (Entered: 07/31/2025) |

| 08/08/2025 | 172 | MOTION for Summary Judgment by District of Columbia, Commonwealth of Massachusetts, State of Arizona, State of California, State of Colorado, State of Connecticut, State of Delaware, State of Illinois, State of Maine, State of Maryland, State of Michigan, State of Minnesota, State of New Jersey, State of New Mexico, State of New York, State of Oregon, State of Rhode Island, State of Washington. (Attachments: # 1 Text of Proposed Order Proposed Order on Plaintiff States' Motion for Summary Judgment)(Haviland-Markowitz, Nathaniel) (Entered: 08/08/2025) |
|---|---|---|
| 08/08/2025 | 173 | MEMORANDUM in Support re 172 MOTION for Summary Judgment filed by District of Columbia, Commonwealth of Massachusetts, State of Arizona, State of California, State of Colorado, State of Connecticut, State of Delaware, State of Illinois, State of Maine, State of Maryland, State of Michigan, State of Minnesota, State of New Jersey, State of New Mexico, State of New York, State of Oregon, State of Rhode Island, State of Washington. (Haviland-Markowitz, Nathaniel) (Main Document 173 replaced on 8/11/2025) (MAP). (Entered: 08/08/2025) |
| 08/08/2025 | 174 | AFFIDAVIT in Support re 172 MOTION for Summary Judgment filed by State of Arizona, State of California, State of Colorado, State of Connecticut, State of Delaware, State of Illinois, State of Maine, State of Maryland, State of Michigan, State of Minnesota, State of New Jersey, State of New Mexico, State of New York, State of Oregon, State of Rhode Island, State of Washington. (Attachments: # 1 Exhibit Declaration of Denise Barton of Massachusetts, # 2 Exhibit Declaration of Drew Bohan of California, # 3 Exhibit Declaration of Dr. Alison Brizius of Massachusetts, # 4 Exhibit Declaration of Kate Brouns of Washington, # 5 Exhibit Declaration of Michael Brown Chief Executive Officer of SouthCoast Wind Energy LLC, # 6 Exhibit Declaration of Megan Brunatti of New Jersey, # 7 Exhibit Declaration of Mike Bull of Minnesota, # 8 Exhibit Declaration of Dan Burgess of Maine, # 9 Exhibit Declaration of Diane Butorac of Washington, # 10 Exhibit Declaration of Bruce K. Carlisle of Massachusetts, # 11 Exhibit Declaration of Joel Creswell of Washington, # 12 Exhibit Declaration of Katherine S. Dykes of Connecticut, # 13 Exhibit Declaration of Stephen Gawlik of New York, # 14 Exhibit Declaration of Brian P. Granahan of Illinois, # 15 Exhibit Declaration of Christopher R. Hoagland of Maryland, # 16 Exhibit Declaration of Nicole Hughes, Executive Director of Renewable Northwest, # 17 Exhibit Declaration of Douglas Jester of Michigan, # 18 Exhibit Declaration of Christopher Kearns of Rhode Island, # 19 Exhibit Declaration of Maureen Leddy of New York, # 20 Exhibit Declaration of Elizabeth Mahony of Massachusetts, # 21 Exhibit Declaration of Colin McConnaha of Oregon, # 22 Exhibit Declaration of Joseph-Thanh Nguyen of Washington, # 23 Exhibit Declaration of Joel Nightingale of Washington, # 24 Exhibit Declaration of Katherine Perry of New Jersey, # 25 Exhibit Declaration of Paul G. Pinsky of Maryland, # 26 Exhibit Declaration of Robyn Sahid of Arizona, # 27 Exhibit Declaration of Rebecca Stair of New Mexico, # 28 Exhibit Declaration of Will Toor of Colorado, # 29 Exhibit Declaration of Evan Vaughan, Executive Director of the Mid-Atlantic Renewable Energy Coalition, # 30 Exhibit Declaration of John Williams of New York, # 31 Exhibit Declaration of Alan Zelenka of Oregon)(Haviland-Markowitz, Nathaniel) (Attachment 3 replaced on 8/11/2025) (MAP). (Attachment 10 replaced on 8/11/2025) (MAP). (Attachment 28 replaced on 8/11/2025) (MAP). (Entered: 08/08/2025) |
| 08/08/2025 | 175 | MOTION for Summary Judgment by Alliance for Clean Energy New York. (Attachments: # 1 Text of Proposed Order)(Detterman, Brook) (Entered: 08/08/2025) |
| 08/08/2025 | 176 | MEMORANDUM in Support re 175 MOTION for Summary Judgment filed by Alliance for Clean Energy New York. (Detterman, Brook) (Entered: 08/08/2025) |

| | | |
|---|---|---|
| 08/08/2025 | 177 | Supplemental AFFIDAVIT in Support re 175 MOTION for Summary Judgment filed by Alliance for Clean Energy New York. (Detterman, Brook) (Entered: 08/08/2025) |
| 08/08/2025 | 178 | Supplemental AFFIDAVIT in Support re 175 MOTION for Summary Judgment filed by Alliance for Clean Energy New York. (Detterman, Brook) (Entered: 08/08/2025) |
| 08/08/2025 | 179 | Cross MOTION for Summary Judgment by Scott Bessent, Bureau of Land Management, Bureau of Ocean Energy Management, Douglas Burgum, Walter Cruickshank, Department of Commerce, Environmental Protection Agency, US, William "Butch" H. Graham, Jr, Laura Grimm, Howard Lutnick, National Marine Fisheries Service, National Oceanic and Atmospheric Administration, Eugenio Pieiro Soler, Jonathan Raby, Brooke Rollins, Paul Souza, Donald J Trump, U.S. Army Corps of Engineers, U.S. Fish and Wildlife Service, US Department of Agriculture, US Department of Energy, US Department of Interior, US Department of the Treasury, United States of America, Chris Wright, Lee Zeldin.(Robertson, Michael) (Entered: 08/08/2025) |
| 08/08/2025 | 180 | MEMORANDUM in Support re 179 Cross MOTION for Summary Judgment filed by Scott Bessent, Bureau of Land Management, Bureau of Ocean Energy Management, Douglas Burgum, Walter Cruickshank, Department of Commerce, Environmental Protection Agency, US, William "Butch" H. Graham, Jr, Laura Grimm, Howard Lutnick, National Marine Fisheries Service, National Oceanic and Atmospheric Administration, Eugenio Pieiro Soler, Jonathan Raby, Brooke Rollins, Paul Souza, Donald J Trump, U.S. Army Corps of Engineers, U.S. Fish and Wildlife Service, US Department of Agriculture, US Department of Energy, US Department of Interior, US Department of the Treasury, United States of America, Chris Wright, Lee Zeldin. (Robertson, Michael) (Entered: 08/08/2025) |
| 08/09/2025 | 181 | ELECTRONIC NOTICE issued requesting SINGLE-SIDED PAPER courtesy copy for 172 MOTION for Summary Judgment , 175 MOTION for Summary Judgment , 173 Memorandum in Support of Motion, 174 Affidavit in Support of Motion, 178 Affidavit in Support of Motion, 180 Memorandum in Support of Motion, 179 Cross MOTION for Summary Judgment , 177 Affidavit in Support of Motion, 176 Memorandum in Support of Motion. Counsel who filed this document are requested to submit a courtesy copy of this document (or documents) to the Clerk's OfficE Attention Matthew Paine - Docket Clerk - Judge Young. **These documents must be clearly marked as a Courtesy Copy and reflect the document number assigned by CM/ECF.** (MAP) (Entered: 08/09/2025) |
| 08/11/2025 | 182 | NOTICE of Appearance by Shaun Goho on behalf of Clean Air Task Force (Goho, Shaun) (Entered: 08/11/2025) |
| 08/11/2025 | 183 | Amicus Curiae APPEARANCE entered by Shaun Goho on behalf of Clean Air Task Force. (Goho, Shaun) (Entered: 08/11/2025) |
| 08/11/2025 | 184 | MOTION for Leave to File *Amici Curiae Brief* by Citizens Campaign for the Environment, Clean Air Task Force, Conservation Law Foundation, Environmental Advocates NY, Environmental Defense Fund, Inc., Environmental Protection Information Center, National Wildlife Federation, Natural Resources Defense Council, New York League of Conservation Voters, Sierra Club, Southern Environmental Law Center. (Attachments: # 1 Proposed Brief of Amici Curiae Environmental Organizations in Support of States' and ACE NY's Motions for Summary Judgment) (Forgie, Julia) (Entered: 08/11/2025) |
| 08/14/2025 | 185 | MOTION for Leave to Appear Pro Hac Vice for admission of Caleb Elwell Filing fee: $ 125, receipt number AMADC-11177526 by State of Maine. (Attachments: # 1 Elwell Certificate)(Whitney, Jon) (Entered: 08/14/2025) |

| 08/15/2025 | 186 | Judge William G. Young: ELECTRONIC ORDER entered granting 185 Motion for Leave to Appear Pro Hac Vice. Added Caleb Elwell. **Attorneys admitted Pro Hac Vice must have an individual PACER account, not a shared firm account, to electronically file in the District of Massachusetts. To register for a PACER account, go the Pacer website at https://pacer.uscourts.gov/register-account. You must put the docket number under ADDITIONAL FILER INFORMATION on your form when registering or it will be rejected.** Pro Hac Vice Admission Request Instructions https://www.mad.uscourts.gov/caseinfo/nextgen-pro-hac-vice.htm. A Notice of Appearance must be entered on the docket by the newly admitted attorney. (MAP) (Entered: 08/15/2025) |
|---|---|---|
| 08/15/2025 | 187 | Amicus Curiae APPEARANCE entered by Kyle Andrew Berner on behalf of Climate Jobs MA (Berner, Kyle) Modified on 8/15/2025 (MAP). (Entered: 08/15/2025) |
| 08/15/2025 | 188 | Amicus Curiae APPEARANCE entered by Kyle Andrew Berner on behalf of Climate Jobs NY (Berner, Kyle) Modified on 8/15/2025 (MAP). (Entered: 08/15/2025) |
| 08/15/2025 | 189 | Amicus Curiae APPEARANCE entered by Kyle Andrew Berner on behalf of Climate Jobs Rhode Island (Berner, Kyle) Modified on 8/15/2025 (MAP). (Entered: 08/15/2025) |
| 08/15/2025 | 190 | Amicus Curiae APPEARANCE by Kyle Andrew Berner on behalf of Maine Labor Climate Council (Berner, Kyle) Modified on 8/15/2025 (MAP). (Entered: 08/15/2025) |
| 08/15/2025 | 191 | First MOTION for Leave to Appear Pro Hac Vice for admission of Richard F. Griffin, Jr. Filing fee: $ 125, receipt number AMADC-11180064 by Climate Jobs MA, Climate Jobs NY, Climate Jobs Rhode Island, Maine Labor Climate Council. (Attachments: # 1 Affidavit Certificate in Support of Pro Hac Vice Motion)(Berner, Kyle) (Entered: 08/15/2025) |
| 08/15/2025 | 192 | Unopposed MOTION for Leave to File to File Amicus Curiae Brief by Climate Jobs MA, Climate Jobs NY, Climate Jobs Rhode Island, Maine Labor Climate Council . (Berner, Kyle) Modified on 8/15/2025 (MAP). (Entered: 08/15/2025) |
| 08/15/2025 | 193 | AMICUS BRIEF filed by Climate Jobs MA, Climate Jobs NY, Climate Jobs Rhode Island, Maine Labor Climate Council . (Attachments: # 1 Affidavit Declaration of Francis Eanes, # 2 Affidavit Declaration of Kendall Martin, # 3 Affidavit Declaration of Patrick Crowley, # 4 Affidavit Declaration of Ryan Murphy, # 5 Affidavit Declaration of Esther Rosario)(Berner, Kyle) (Entered: 08/15/2025) |
| 08/15/2025 | 194 | Amicus Curiae APPEARANCE entered by David Scott Louk on behalf of David S. Louk, San Francisco Public Utilities Commission, Redwood Coast Energy Authority, Marin Clean Energy, Jordan Cunningham, Offshore Wind California, Brightline Defense Project, 350 Humboldt, Climate First: Replacing Oil & Gas, The Central Coast Alliance United for a Sustainable Economy, International Brotherhood of Electrical Worker Local 639, California Environmental Voters (Louk, David) Modified on 8/15/2025 (MAP). (Entered: 08/15/2025) |
| 08/15/2025 | 195 | MOTION for Leave to File *Amicus Brief* by 350 Humboldt, Brightline Defense Project, California Environmental Voters, Climate First: Replacing Oil & Gas, Jordan Cunningham, International Brotherhood of Electrical Worker Local 639, Marin Clean Energy, Offshore Wind California, San Francisco Public Utilities Commission, |

| | | |
|---|---|---|
| | | Redwood Coast Energy Authority, The Central Coast Alliance United for a Sustainable Economy. (Attachments: # 1 Proposed Amicus Brief)(Louk, David) (Entered: 08/15/2025) |
| 08/15/2025 | 196 | MOTION for Leave to Appear Pro Hac Vice for admission of Peter Ton by 350 Humboldt, Brightline Defense Project, California Environmental Voters, Climate First: Replacing Oil & Gas, Jordan Cunningham, International Brotherhood of Electrical Worker Local 639, Marin Clean Energy, Offshore Wind California, San Francisco Public Utilities Commission, Redwood Coast Energy Authority, The Central Coast Alliance United for a Sustainable Economy. (Attachments: # 1 Certification of Peter Ton for PHV)(Louk, David) (Entered: 08/15/2025) |
| 08/20/2025 | 197 | MOTION for Leave to Appear Pro Hac Vice for admission of Vanessa C. Morrison Filing fee: $ 125, receipt number AMADC-11187168 by State of California. (Attachments: # 1 Morrison Certificate)(Whitney, Jon) (Entered: 08/20/2025) |
| 08/20/2025 | 198 | Judge William G. Young: ELECTRONIC ORDER entered granting 197 Motion for Leave to Appear Pro Hac Vice Added Vanessa C. Morrison. <br><br> **Attorneys admitted Pro Hac Vice must have an individual PACER account, not a shared firm account, to electronically file in the District of Massachusetts. To register for a PACER account, go the Pacer website at https://pacer.uscourts.gov/register-account. You must put the docket number under ADDITIONAL FILER INFORMATION on your form when registering or it will be rejected.** <br><br> Pro Hac Vice Admission Request Instructions https://www.mad.uscourts.gov/caseinfo/nextgen-pro-hac-vice.htm. <br><br> A Notice of Appearance must be entered on the docket by the newly admitted attorney. <br><br> (KB) (Entered: 08/20/2025) |
| 08/22/2025 | 199 | NOTICE of Appearance by Caleb Edward Elwell on behalf of State of Maine (Elwell, Caleb) (Entered: 08/22/2025) |
| 08/22/2025 | 200 | Amicus Curiae APPEARANCE entered by Nicole Horberg Decter on behalf of Climate Jobs MA (Horberg Decter, Nicole) Modified on 9/2/2025 (MAP). (Entered: 08/22/2025) |
| 08/22/2025 | 201 | Amicus Curiae APPEARANCE entered by Nicole Horberg Decter on behalf of Climate Jobs NY (Horberg Decter, Nicole) Modified on 9/2/2025 (MAP). (Entered: 08/22/2025) |
| 08/22/2025 | 202 | Amicus Curiae APPEARANCE entered by Nicole Horberg Decter on behalf of Climate Jobs Rhode Island (Horberg Decter, Nicole) Modified on 9/2/2025 (MAP). (Entered: 08/22/2025) |
| 08/22/2025 | 203 | Amicus Curiae APPEARANCE entered by Nicole Horberg Decter on behalf of Maine Labor Climate Council (Horberg Decter, Nicole) Modified on 9/2/2025 (MAP). (Entered: 08/22/2025) |
| 08/22/2025 | 204 | NOTICE of Appearance by Vanessa Christine Morrison on behalf of State of California (Morrison, Vanessa) (Entered: 08/22/2025) |
| 08/22/2025 | 205 | NOTICE of Appearance by Vanessa Christine Morrison on behalf of State of California (Morrison, Vanessa) (Entered: 08/22/2025) |

| 08/22/2025 | 206 | Opposition re 179 Cross MOTION for Summary Judgment filed by Alliance for Clean Energy New York. (Auslander, James) (Entered: 08/22/2025) |
|---|---|---|
| 08/22/2025 | 207 | Opposition re 179 Cross MOTION for Summary Judgment filed by District of Columbia, Commonwealth of Massachusetts, State of Arizona, State of California, State of Colorado, State of Connecticut, State of Delaware, State of Illinois, State of Maine, State of Maryland, State of Michigan, State of Minnesota, State of New Jersey, State of New Mexico, State of New York, State of Oregon, State of Rhode Island, State of Washington. (Whitney, Jon) (Entered: 08/22/2025) |
| 08/22/2025 | 208 | AFFIDAVIT in Support re 172 MOTION for Summary Judgment filed by District of Columbia, Commonwealth of Massachusetts, State of Arizona, State of California, State of Colorado, State of Connecticut, State of Delaware, State of Illinois, State of Maine, State of Maryland, State of Michigan, State of Minnesota, State of New Jersey, State of New Mexico, State of New York, State of Oregon, State of Rhode Island, State of Washington. (Whitney, Jon) (Entered: 08/22/2025) |
| 08/22/2025 | 209 | RESPONSE to Motion re 172 MOTION for Summary Judgment , 175 MOTION for Summary Judgment filed by Scott Bessent, Bureau of Land Management, Bureau of Ocean Energy Management, Douglas Burgum, Walter Cruickshank, Department of Commerce, Environmental Protection Agency, US, William "Butch" H. Graham, Jr, Laura Grimm, Howard Lutnick, National Marine Fisheries Service, National Oceanic and Atmospheric Administration, Eugenio Pieiro Soler, Jonathan Raby, Brooke Rollins, Paul Souza, Donald J Trump, U.S. Army Corps of Engineers, U.S. Fish and Wildlife Service, US Department of Agriculture, US Department of Energy, US Department of Interior, US Department of the Treasury, United States of America, Chris Wright, Lee Zeldin. (Robertson, Michael) (Entered: 08/22/2025) |
| 08/28/2025 | 210 | NOTICE by District of Columbia, State of Arizona, State of California, State of Colorado, State of Connecticut, State of Delaware, State of Illinois, State of Maine, State of Maryland, State of Michigan, State of Minnesota, State of New Jersey, State of New Mexico, State of New York, State of Oregon, State of Rhode Island, State of Washington (Haviland-Markowitz, Nathaniel) (Entered: 08/28/2025) |
| 08/28/2025 | 211 | AFFIDAVIT in Support . (Attachments: # 1 Exhibit 1 - BOEM Director's Order) (Haviland-Markowitz, Nathaniel) (Entered: 08/28/2025) |
| 08/28/2025 | 212 | AFFIDAVIT in Support re 210 Notice (Other), . (Attachments: # 1 Exhibit 1 - BOEM Director's Order)(Haviland-Markowitz, Nathaniel) (Entered: 08/28/2025) |
| 08/29/2025 | 213 | NOTICE OF COURTROOM CHANGE: The hearing set for 9/4/2025 will occur in Courtroom 10. (KB) (Entered: 08/29/2025) |
| 09/04/2025 | 214 | Electronic Clerk's Notes for proceedings held before Judge William G. Young: Hearing held on 9/4/2025 on # 172 MOTION for Summary Judgment, # 175 MOTION for Summary Judgment, # 179 Cross MOTION for Summary Judgment. The Court treats the hearing as a Case Stated Hearing. Court hears argument on the motions. Court takes the motions under advisement. (Court Reporter: Richard Romanow at rhr3tubas@aol.com.)(Attorneys present: James Michael Auslander, Nathaniel Haviland-Markowitz, Turner Smith, Michael Myers, Joya Sonnenfeldt, Michael Keith Robertson) (KB) (Entered: 09/05/2025) |
| 09/08/2025 | 215 | Transcript of Case-State Hearing held on September 4, 2025, before Judge William G. Young. The Transcript may be purchased through the Court Reporter, viewed at the public terminal, or viewed through PACER after it is released. Court Reporter Name and Contact Information: Richard Romanow at rhr3tubas@aol.com. Redaction Request |

| | | due 9/29/2025. Redacted Transcript Deadline set for 10/9/2025. Release of Transcript Restriction set for 12/8/2025. (DRK) (Entered: 09/08/2025) |
|---|---|---|
| 09/08/2025 | 216 | NOTICE is hereby given that an official transcript of a proceeding has been filed by the court reporter in the above-captioned matter. Counsel are referred to the Court's Transcript Redaction Policy, available on the court website at https://www.mad.uscourts.gov/caseinfo/transcripts.htm (DRK) (Entered: 09/08/2025) |
| 09/10/2025 | 217 | Judge William G. Young: ELECTRONIC ORDER entered granting 184 MOTION for Leave to File Amici Curiae Brief by Citizens Campaign for the Environment, Clean Air Task Force, Conservation Law Foundation, Environmental Advocates NY, Environmental Defense Fund, Inc., Environmental Protection Information Center, National Wildlife Federation, Natural Resources Defense Council, New York League of Conservation Voters, Sierra Club, Southern Environmental Law Center; Counsel using the Electronic Case Filing System should now file the document for which leave to file has been granted in accordance with the CM/ECF Administrative Procedures. Counsel must include - Leave to file granted on (date of order)- in the caption of the document. (KB) (Entered: 09/10/2025) |
| 09/10/2025 | 218 | Judge William G. Young: ELECTRONIC ORDER entered granting 192 Unopposed MOTION for Leave to File to File Amicus Curiae Brief by Climate Jobs MA, Climate Jobs NY, Climate Jobs Rhode Island, Maine Labor Climate Council. ; Counsel using the Electronic Case Filing System should now file the document for which leave to file has been granted in accordance with the CM/ECF Administrative Procedures. Counsel must include - Leave to file granted on (date of order)- in the caption of the document. (KB) (Entered: 09/10/2025) |
| 09/10/2025 | 219 | Judge William G. Young: ELECTRONIC ORDER entered granting 195 MOTION for Leave to File Amicus Brief by 350 Humboldt, Brightline Defense Project, California Environmental Voters, Climate First: Replacing Oil & Gas, Jordan Cunningham, International Brotherhood of Electrical Worker Local 639, Marin Clean Energy, Offshore Wind California, San Francisco Public Utilities Commission, Redwood Coast Energy Authority, The Central Coast Alliance United for a Sustainable Economy ; Counsel using the Electronic Case Filing System should now file the document for which leave to file has been granted in accordance with the CM/ECF Administrative Procedures. Counsel must include - Leave to file granted on (date of order)- in the caption of the document. (KB) (Entered: 09/10/2025) |
| 09/10/2025 | 220 | AMICUS BRIEF filed by Citizens Campaign for the Environment, Clean Air Task Force, Conservation Law Foundation, Environmental Advocates NY, Environmental Defense Fund, Inc., Environmental Protection Information Center, National Wildlife Federation, Natural Resources Defense Council, New York League of Conservation Voters, Sierra Club, Southern Environmental Law Center . (Knicley, Jared) (Entered: 09/10/2025) |
| 09/10/2025 | 221 | Judge William G. Young: ELECTRONIC ORDER entered granting 191 Motion for Leave to Appear Pro Hac Vice Added Richard F. Griffin, Jr..<br><br>**Attorneys admitted Pro Hac Vice must have an individual PACER account, not a shared firm account, to electronically file in the District of Massachusetts. To register for a PACER account, go the Pacer website at https://pacer.uscourts.gov/register-account. You must put the docket number under ADDITIONAL FILER INFORMATION on your form when registering or it will be rejected.**<br><br>Pro Hac Vice Admission Request Instructions https://www.mad.uscourts.gov/caseinfo/nextgen-pro-hac-vice.htm. |

| | | A Notice of Appearance must be entered on the docket by the newly admitted attorney. (MAP) (Entered: 09/10/2025) |
|---|---|---|
| 09/10/2025 | 222 | Judge William G. Young: ELECTRONIC ORDER entered granting 196 Motion for Leave to Appear Pro Hac Vice Added Peter Ton. **Attorneys admitted Pro Hac Vice must have an individual PACER account, not a shared firm account, to electronically file in the District of Massachusetts. To register for a PACER account, go the Pacer website at https://pacer.uscourts.gov/register-account. You must put the docket number under ADDITIONAL FILER INFORMATION on your form when registering or it will be rejected.** Pro Hac Vice Admission Request Instructions https://www.mad.uscourts.gov/caseinfo/nextgen-pro-hac-vice.htm. A Notice of Appearance must be entered on the docket by the newly admitted attorney. (MAP) (Entered: 09/10/2025) |
| 09/11/2025 | 223 | Amicus Curiae APPEARANCE entered by Peter Ton on behalf of 350 Humboldt, Brightline Defense Project, California Environmental Voters, Climate First: Replacing Oil & Gas, Jordan Cunningham, International Brotherhood of Electrical Worker Local 639, Offshore Wind California, The Central Coast Alliance United for a Sustainable Economy (Ton, Peter) Modified on 9/12/2025 (MAP). (Entered: 09/11/2025) |
| 09/11/2025 | 224 | AMICUS BRIEF filed by 350 Humboldt, Brightline Defense Project, California Environmental Voters, Climate First: Replacing Oil & Gas, Jordan Cunningham, International Brotherhood of Electrical Worker Local 639, Marin Clean Energy, Offshore Wind California, San Francisco Public Utilities Commission, Redwood Coast Energy Authority, The Central Coast Alliance United for a Sustainable Economy . (Ton, Peter) (Entered: 09/12/2025) |
| 09/12/2025 | 225 | Amicus Curiae APPEARANCE entered by Richard F. Griffin, Jr on behalf of Climate Jobs MA, Climate Jobs NY, Climate Jobs Rhode Island, Maine Labor Climate Council. (Griffin, Richard) (Entered: 09/12/2025) |
| 09/12/2025 | 226 | AMICUS BRIEF filed by Climate Jobs MA, Climate Jobs NY, Climate Jobs Rhode Island, Maine Labor Climate Council . (Attachments: # 1 Affidavit Declaration of Francis Eanes, # 2 Affidavit Declaration of Kendall Martin, # 3 Affidavit Declaration of Patrick Crowley, # 4 Affidavit Declaration of Ryan Murphy, # 5 Affidavit Declaration of Esther Rosario)(Berner, Kyle) (Entered: 09/12/2025) |
| 11/07/2025 | 227 | Judge William G. Young: ELECTRONIC ORDER entered. ORDER REASSIGNING CASE. With the approval of the Chief Judge, pursuant to Local Rule 40.1 (j) (1), it is hereby ORDERED that this case is RETURNED to the Clerk to be reassigned. (KB) (Entered: 11/07/2025) |
| 11/07/2025 | 228 | ELECTRONIC NOTICE of Reassignment. District Judge Patti B. Saris added. Judge William G. Young no longer assigned to case. (SEC) (Entered: 11/07/2025) |
| 11/10/2025 | 229 | ELECTRONIC NOTICE of STATUS CONFERENCE BY VIDEO. This hearing will be conducted by video conference. Counsel of record will receive a video conference invite at the email registered in CM/ECF. If you have technical or |

|  |  | compatibility issues with the technology, please notify the courtroom deputy of the session as soon as possible.

Audio access to the hearing may be available to the media and public. Please check the Court schedule. In order to gain access to the hearing, you must sign up at the following address: https://forms.mad.uscourts.gov/courtlist.html.

For questions regarding access to hearings, you may refer to the general orders and public notices of the Court available on www.mad.uscourts.gov or contact the session here.

Status Conference set for 11/13/2025 09:30 AM in Remote Proceeding before District Judge Patti B. Saris. (MM) (Entered: 11/10/2025) |
|---|---|---|
| 11/13/2025 | 230 | Electronic Clerk's Notes for proceedings held before District Judge Patti B. Saris:

Status Conference held on 11/13/2025 by video.

Hearing scheduled for 11/18/2025 09:30 AM in Courtroom 19 (In Person and remote audio only) before District Judge Patti B. Saris.

(Court Reporter: Lee Marzilli at leemarz47@gmail.com.) (MM) Modified on 11/17/2025 to update docket text (CM). (Entered: 11/13/2025) |
| 11/18/2025 | 231 | Electronic Clerk's Notes for proceedings held before District Judge Patti B. Saris: In person Hearing held on 11/18/2025.

All matters taken under advisement, court adjourned.

(Court Reporter: Lee Marzilli at leemarz47@gmail.com.) (MM) (Entered: 11/18/2025) |
| 11/24/2025 | 232 | Transcript of Hearing In Person held on November 18, 2025, before Judge Patti B. Saris. The Transcript may be purchased through the Court Reporter, viewed at the public terminal, or viewed through PACER after it is released. Court Reporter Name and Contact Information: Lee Marzilli at leemarz47@gmail.com. Redaction Request due 12/15/2025. Redacted Transcript Deadline set for 12/26/2025. Release of Transcript Restriction set for 2/23/2026. (DRK) (Entered: 11/24/2025) |
| 11/24/2025 | 233 | NOTICE is hereby given that an official transcript of a proceeding has been filed by the court reporter in the above-captioned matter. Counsel are referred to the Court's Transcript Redaction Policy, available on the court website at https://www.mad.uscourts.gov/caseinfo/transcripts.htm (DRK) (Entered: 11/24/2025) |
| 12/08/2025 | 234 | District Judge Patti B. Saris: MEMORANDUM and ORDER entered.

Plaintiffs' motions for summary judgment (Dkts. 172 , 175 ) are **ALLOWED** and the Agency Defendants' motion for summary judgment (Dkt. 179 ) is **DENIED**. The Wind Order is declared unlawful, see 5 U.S.C. § 706(2), and is **VACATED** in its entirety.

(CGK) M (Entered: 12/08/2025) |
| 12/08/2025 | 235 | ELECTRONIC NOTICE OF STATUS CONFERENCE by video to discuss form of judgment and remaining case issues:

STATUS CONFERENCE SET FOR 12/15/2025 03:00 PM by video before District Judge Patti B. Saris. |

This hearing will be conducted by video conference. Counsel of record will receive a video conference invite at the email registered in CM/ECF. If you have technical or compatibility issues with the technology, please notify the courtroom deputy of the session as soon as possible.

Audio access to the hearing may be available to the media and public. Please check the Court schedule. In order to gain access to the hearing, you must sign up at the following address: https://forms.mad.uscourts.gov/courtlist.html.

For questions regarding access to hearings, you may refer to the general orders and public notices of the Court available on www.mad.uscourts.gov or contact the session here.

(CGK) (Entered: 12/08/2025)

| 12/15/2025 | 236 | Electronic Clerk's Notes for proceedings held before District Judge Patti B. Saris: Status Conference held on 12/15/2025 by video. Parties shall submit a proposed judgment by 12/18/2025. (Court Reporter: Lee Marzilli at leemarz47@gmail.com.) (MM) (Entered: 12/15/2025) |
| --- | --- | --- |
| 12/17/2025 | 237 | Transcript of Status Conference by Video held on December 15, 2025, before Judge Patti B. Saris. The Transcript may be purchased through the Court Reporter, viewed at the public terminal, or viewed through PACER after it is released. Court Reporter Name and Contact Information: Lee Marzilli at leemarz47@gmail.com. Redaction Request due 1/7/2026. Redacted Transcript Deadline set for 1/20/2026. Release of Transcript Restriction set for 3/17/2026. (DRK) (Entered: 12/17/2025) |
| 12/17/2025 | 238 | NOTICE is hereby given that an official transcript of a proceeding has been filed by the court reporter in the above-captioned matter. Counsel are referred to the Court's Transcript Redaction Policy, available on the court website at https://www.mad.uscourts.gov/caseinfo/transcripts.htm (DRK) (Entered: 12/17/2025) |
| 12/18/2025 | 239 | Proposed Document(s) submitted by Alliance for Clean Energy New York. Document received: Joint Proposed Judgment. (Auslander, James) (Entered: 12/18/2025) |
| 12/18/2025 | 240 | District Judge Patti B. Saris: ORDER entered. JUDGMENT as to State of New York et al v. Trump et al. (CGK) (Main Document 240 replaced on 2/17/2026) (MAP). (Entered: 12/18/2025) |
| 02/17/2026 | 241 | NOTICE OF APPEAL as to 234 Order on Motion for Summary Judgment,,,,,,,,,, 240 Judgment, 162 Memorandum & ORDER by Scott Bessent, Bureau of Land Management, Bureau of Ocean Energy Management, Douglas Burgum, Walter Cruickshank, Department of Commerce, Environmental Protection Agency, US, William "Butch" H. Graham, Jr, Laura Grimm, Howard Lutnick, National Marine Fisheries Service, National Oceanic and Atmospheric Administration, Eugenio Pieiro Soler, Jonathan Raby, Brooke Rollins, Paul Souza, Donald J Trump, U.S. Army Corps of Engineers, U.S. Fish and Wildlife Service, US Department of Agriculture, US Department of Energy, US Department of Interior, US Department of the Treasury, United States of America, Chris Wright, Lee Zeldin. Fee Status: US Government.<br><br>NOTICE TO COUNSEL: A Transcript Report/Order Form, which can be downloaded from the First Circuit Court of Appeals web site at http://www.ca1.uscourts.gov MUST be completed and submitted to the Court of Appeals. **Counsel shall register for a First Circuit CM/ECF Appellate Filer Account at** |

| | |
|---|---|
| | **http://pacer.psc.uscourts.gov/cmecf**. Counsel shall also review the First Circuit requirements for electronic filing by visiting the CM/ECF Information section at **http://www.ca1.uscourts.gov/cmecf**. US District Court Clerk to deliver official record to Court of Appeals by 3/9/2026. (Robertson, Michael) (Entered: 02/17/2026) |

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____

COMMONWEALTH OF MASSACHUSETTS;         )
STATE OF NEW YORK; STATE OF            )
ARIZONA; STATE OF CALIFORNIA;          )
STATE OF COLORADO; STATE OF            )
CONNECTICUT; STATE OF DELAWARE;        )
DISTRICT OF COLUMBIA; STATE OF         )
ILLINOIS; STATE OF MAINE; STATE OF     )
MARYLAND; STATE OF MICHIGAN; STATE     )
OF MINNESOTA; STATE OF NEW JERSEY;     )
STATE OF NEW MEXICO; STATE OF          )
OREGON; STATE OF RHODE ISLAND; and     )
STATE OF WASHINGTON,                   )
                                       )
                   Plaintiffs,         )
                                       )
                   and                 )
                                       )
ALLIANCE FOR CLEAN ENERGY NEW          )
YORK,                                  )
                                       )
                   Intervenor,         )
                                       )    CIVIL ACTION NO.
          v.                           )    25-11221-WGY
                                       )
DONALD J. TRUMP, in his official       )
capacity as President of the           )
United States; UNITED STATES OF        )
AMERICA; DOUGLAS BURGUM, in his        )
official capacity as Secretary of      )
the Interior; BUREAU OF OCEAN          )
ENERGY MANAGEMENT; WALTER              )
CRUICKSHANK, in his official           )
capacity as Acting Director of         )
Bureau of Ocean Energy Management;     )
BUREAU OF LAND MANAGEMENT;             )
JONATHAN RABY, in his official         )
Capacity as State Director of the      )
Bureau of Land Management; U.S.        )
FISH AND WILDLIFE SERVICE; PAUL        )
SOUZA, in his official capacity as     )
Regional Director of the United        )
States Fish and Wildlife Service;      )

DEPARTMENT OF COMMERCE; HOWARD        )
LUTNICK, in his official capacity     )
as Secretary of Commerce; NATIONAL    )
OCEANIC AND ATMOSPHERIC               )
ADMINISTRATION; LAURA GRIMM, in       )
her official capacity as Chief of     )
Staff of the National Oceanic and     )
Atmospheric Administration;           )
National Marine Fisheries Service;    )
EUGENIO PIEIRO SOLER, in his          )
official capacity as Director of      )
the National Marine Fisheries         )
Service; U.S. ARMY CORPS OF           )
ENGINEERS; WILLIAM "BUTCH" H.         )
GRAHAM, JR., in his official          )
capacity as Chief of Engineers for    )
the United States Army Corps of       )
Engineers; ENVIRONMENTAL              )
PROTECTION AGENCY, US; LEE ZELDIN,    )
in his official capacity as           )
Administrator of the U.S.             )
Environmental Protection Agency;      )
US DEPARTMENT OF AGRICULTURE;         )
BROOKE ROLLINS, in her official       )
capacity as Secretary of             )
Agriculture; US DEPARTMENT OF         )
ENERGY; US DEPARTMENT OF THE          )
TREASURY; SCOTT BESSENT, in his       )
official capacity as Secretary of     )
the Treasury; and US DEPARTMENT OF    )
INTERIOR,                             )
                                      )
                 Defendants.          )
_____)

[2]

YOUNG, D.J.                                    July 3, 2025

## MEMORANDUM AND ORDER

### I.   INTRODUCTION

New York, Massachusetts, Arizona, California, Colorado, Connecticut, Delaware, Maine, Maryland, Michigan, Minnesota, New Jersey, New Mexico, Oregon, Rhode Island, Washington, and the District of Columbia (collectively, the "Plaintiff States"), together with Intervenor Plaintiff Alliance for Clean Energy New York ("ACE NY") sue President Donald J. Trump, the United States of America, the U.S. Department of the Interior ("DOI") and its Secretary Douglas Burgum, the Bureau of Ocean Energy Management ("BOEM") and its Acting Director Walter Cruickshank, the Bureau of Land Management and its State Director Jonathan Raby, the U.S. Fish and Wildlife Service and its Regional Director Paul Souza, and several other departments and agencies and their respective heads (collectively, the "Public Officials"), based on the Public Officials' allegedly unlawful pause of all federal agency approvals needed for offshore and onshore wind energy projects nationwide.

The Plaintiff States and ACE NY allege that the Public Officials implemented this pause in response to what the Plaintiff States call the "Wind Directive" and ACE NY calls the "Wind Ban," Section 2(a) of a Presidential Memorandum issued by

[3]

President Donald J. Trump on January 20, 2025, which purported to withdraw the Outer Continental Shelf from leasing for offshore wind energy projects and to pause leasing and licensing for both offshore and onshore wind energy projects pending completion of a comprehensive inter-agency review process, citing several general grounds for concern, and that this withdrawal and pause were unlawful for several reasons.

## A.    Procedural History

The Plaintiff States filed suit against the Public Officials on May 5, 2025.  See Compl., ECF No. 1.  The Alliance for Clean Energy New York ("ACE NY") moved to intervene on May 7, 2025.  ACE NY's Mot. Intervene, ECF No. 23.  This Court allowed ACE NY's motion to intervene on May 15, 2025.  Elec. Order, ECF No. 78.  ACE NY filed its Intervenor Complaint on May 21, 2025.  Compl. Intervention, ECF No. 114.  The Plaintiff States subsequently filed an amended complaint on June 10, 2025. First Am. Compl. ("FAC"), ECF No. 141.

The Plaintiff States bring five counts, all against the agency defendants except where specified: (I) a violation of the Administrative Procedure Act, 5 U.S.C. § 706(2)(A), for arbitrary and capricious action in adopting and implementing a categorical and indefinite halt on wind-related approvals without reasoned basis, justification for departure from past agency policy, or analysis of reliance interests based on past

[4]

policy or inconsistencies with other executive actions promoting energy development, FAC ¶¶ 358-85; (2) a violation of the Administrative Procedure Act, 5 U.S.C. §§ 706(2)(A), (C) for action contrary to law and in excess of statutory authority in disregarding the requirements of laws and regulations governing federal permitting and approvals of wind energy, pending completion of an extra-statutory review process, id. ¶¶ 386-417; (3) an equitable claim for violation of federal law for the same statutory violations, id. ¶¶ 418-23; (4) a common law ultra vires claim (against all defendants) for the President's acting without congressional authorization in the same way, id. ¶¶ 424-30; (5) a citizen suit under the Outer Continental Shelf Lands Act ("OCSLA") (against defendants the United States, DOI, Secretary Burgum, BOEM, and Acting Director Cruickshank) for an OCSLA violation in failing to follow OCSLA's mandate that the DOI must follow its procedures in administering the Outer Continental Shelf, id. ¶¶ 431-42.

ACE NY brings similar claims, but also alleges, in its Counts II and IV, that the same challenged pause (6) is a substantive rule that failed to undergo public notice and comment rulemaking in violation of 5 U.S.C. § 706(D)(2), Compl. Intervention, ¶¶ 183-88; and (7) violates the United States Constitution, Article I, Sec. 8, Cl. 3, and Article IV, Sec. 3, Cl. 2, and the Fifth Amendment, because through it the President

[5]

has usurped the lawmaking and commerce powers of Congress and its power to regulate United States territory and property, and deprived affected owners or lessees of their property interests without due process of law, id. ¶¶ 202-210.

The Plaintiff States and ACE NY moved for a preliminary injunction on May 12, 2025, seeking to enjoin the Public Officials from implementing, relying on, or otherwise giving effect to Section 2(a) of the challenged Presidential Memorandum.  Pls.' Mot. Prelim. Inj., ECF No. 53; [Proposed] Pl.-Intervenor ACE NY's Mot. Prelim. Inj., ECF No. 55.  At a hearing held on June 5, 2025, according to its usual practice, this Court collapsed these motions with trial on the merits pursuant to Federal Rule of Civil Procedure 65(a)(2), and, with the parties' consent, construed the Public Officials' opposition to these motions, Defs.' Consol. Resp. Mem. Opp'n Pls.' Mots. Prelim. Inj. ("Defs.' Opp'n"), ECF No. 123, as a motion to dismiss, Elec. Clerk's Notes, ECF No. 137.  So construed, the Public Officials' motion to dismiss has been fully briefed. [Proposed] Pl.-Intervenor ACE NY Mem. Supp. Mot. Prelim. Inj. ("ACE NY's Mem."), ECF No. 62; Mem. Supp. Pls.' Mot. Prelim. Inj. ("States' Mem."), ECF No. 70; Pl. States' Reply Supp. Mot. Prelim. Inj. ("States' Reply"), ECF No. 135; Pl.-Intervenor ACE NY Reply Mem. Supp. Mot. Prelim. Inj. ("ACE NY's Reply"), ECF NO. 136.  The parties filed additional briefing to address

[6]

concerns raised by the Court at the June 5 hearing.  Pl.-Intervenor ACE NY Suppl. Br. Opp'n Mot Dismiss ("ACE NY's Suppl. Br."), ECF No. 146; Pl. States' Suppl. Br. Opp'n Defs.' Mot. Dismiss ("States' Suppl. Br."), ECF No. 149; Defs.' Reply Br. Supp. Renewed Mot. Dismiss ("Defs.' Suppl. Reply"), ECF No. 156.

The Court heard argument on the motion to dismiss on June 18, 2025, and made tentative rulings subject to this written opinion.  Elec. Clerk's Notes, ECF No. 157.

This Court has subject matter jurisdiction over these claims pursuant to 28 U.S.C. § 1331.

## B.    Facts Alleged[1]

On January 20, 2025, President Trump issued a Presidential Memorandum titled "Temporary Withdrawal of All Areas on the Outer Continental Shelf from Offshore Wind Leasing and Review of the Federal Government's Leasing and Permitting Practices for Wind Projects," which directed agencies categorically and indefinitely to halt all federal approvals necessary for the development of wind energy, pending a multi-agency review process.  90 Fed. Reg. 8363 (Jan. 29, 2025); FAC ¶ 2.  The Plaintiff States and ACE NY specifically challenge the agencies' implementation of Section 2(a) of the Presidential Memorandum

---

[1] These facts are drawn primarily from the Plaintiff States' complaint.  Issues unique to ACE NY's Intervenor Complaint are raised as they arise.

[7]

(the "Wind Directive"), which states that, "[i]n light of various alleged legal deficiencies underlying the Federal Government's leasing and permitting of onshore and offshore wind projects, the consequences of which may lead to grave harm – including negative impacts on navigational safety interests, transportation interests, national security interests, commercial interests, and marine mammals – and in light to potential inadequacies in various environmental reviews required by the National Environmental Policy Act to lease or permit wind projects," the heads of "all . . . relevant agencies, shall not issue new or renewed approvals, rights of way, permits, leases, or loans for onshore or offshore wind projects pending the completion of a comprehensive assessment and review of Federal wind leasing and permitting practices," which assessment is to be led by the Secretary of the Interior, and will "consider the environmental impact of onshore and offshore wind projects upon wildlife, including, but not limited to, birds and marine mammals," and "the economic costs associated with the intermittent generation of electricity and the effect of subsidies on the viability of the wind industry."  90 Fed. Reg. at 8363-64; FAC ¶ 3; Intervenor Compl. ¶ 3.

The Plaintiff States allege that the Wind Directive has "stopped most wind-energy development in its tracks."  FAC ¶ 4. They draw attention to the facial conflict between the Wind

[8]

Directive, which pauses development of a significant source of the United States' current energy output, and the President's declaring a "National Energy Emergency" brought on by insufficient energy production, and calling for a "reliable, diversified, and affordable supply of energy" via an Executive Order issued the same day as the Wind Directive -- which Executive Order, in addition to other executive actions, has encouraged domestic energy development and recommended regulatory shortcuts for it, with the notable exception of wind energy.  Exec. Order 14156, 90 Fed. Reg. 8433 (Jan. 29, 2025); FAC ¶ 5.  They further allege that the Wind Directive has led to the agency defendants' ceasing all wind energy-related permitting and approvals and issuing a stop-work order to halt construction of a previously permitted offshore wind project, and that these actions pose an existential threat to the wind energy industry, thereby harming the Plaintiff States' ability to secure reliable, diversified, and affordable sources of energy, in addition to harming their billions of dollars of investments in related supply chains, jobs, and infrastructure, and their statutory- and policy-based efforts to protect the public health and welfare from pollution and greenhouse-gas emissions.  FAC ¶¶ 6-8.

ACE NY, which is a 501(c)(3) not-for-profit organization that promotes the use of clean energy technology and energy

[9]

efficiency in New York, and whose members include companies engaged in the development and operation of land-based wind and solar power in New York and nationwide and companies developing offshore wind power facilities, including some "in the process of developing wind facilities on lands that entail federal actions" and some involved in manufacturing and supply chain operations that rely on wind energy development, Intervenor Compl. ¶ 12, makes similar allegations regarding the Wind Directive's sweeping impact, id. ¶¶ 3, 8-10, and alleges direct harm to its members in the form of financial losses, impaired contractual obligations and supply chains, and the potential closure of some businesses, id. ¶ 76.

### 1. Factual Backdrop: Reliance History

As background to the challenged actions, the Plaintiff States and ACE NY complain that they have relied on a long history of the federal government's encouraging and thoroughly evaluating wind energy, and thus, as is relevant to their APA claims, that the Wind Directive and its implementation represent a dramatic course reversal without explanation or analysis of their vital reliance interests.  See id. ¶¶ 113-33, 376-78; Intervenor Compl. ¶ 10.  The Plaintiff States outline this reliance history beginning with the celebration of wind energy's growth during President George W. Bush's administration, continuing through President Trump's actions promoting wind

[10]

energy in his first term, and culminating in President Biden's providing clean-energy tax credits and pledging the United States to deploy thirty gigawatts of offshore wind energy by 2030, which attracted increased investment to the sector.  FAC ¶¶ 113-17.  They also point to various agency studies of the impact of wind-energy projects on potentially affected wildlife, the fishing industry, and local and state economies, to court decisions finding that agencies have fulfilled their statutory obligations and conducted adequate environmental reviews with respect to wind projects, and to comprehensive agency reviews of onshore wind energy projects and their environmental impacts, painting a picture of a long, consistent history of governmental awareness and evaluation of the risks and benefits posed by wind energy.  Id. ¶¶ 118-26; see also Intervenor Compl. ¶¶ 38-48.

The Plaintiff States further outline wind power's role as the largest source of renewable energy in the United States and its unique provision of low-cost energy, which has attracted billions of dollars in investments, hundreds of thousands of jobs, and further reliance interests in the form of the states' efforts to meet their own greenhouse gas emission reduction, environmental protection, and population health goals.  FAC ¶¶ 159-68.

ACE NY additionally emphasizes the states', local governments', and Native American tribes' unique roles, tied to

[11]

their sovereign interests and historic police powers over land use decisions and economic development, in developing land-based wind projects, the vast majority of which are sited on nonfederal lands, which roles it alleges the Wind Directive has arbitrarily usurped, in addition to harming the investment-backed interests of private parties in their own property. Intervenor Compl. ¶¶ 49-57, 179.

### 2. The Directive and Its Adoption

President Trump issued the Presidential Memorandum that includes the Wind Directive's categorical and indefinite halt on wind-energy approvals on January 20, 2025.  FAC ¶ 127; 90 Fed. Reg. 8363.   Section 1 of this Presidential Memorandum states that it does not affect "rights under existing leases."  FAC ¶ 129; 90 Fed. Reg. at 8363.  Section 2(a), that is, the Wind Directive, prohibits agency heads from issuing "new or renewed approvals, rights of way, permits, leases, or loans for onshore or offshore wind projects," pending the completion of a comprehensive review of these practices.  FAC ¶ 130; 90 Fed. Reg. at 8364.  This comprehensive review, which is premised on purported legal deficiencies and negative safety, transportation, national security, commercial, and marine mammal wildlife impacts from wind energy projects, is to consider the environmental impact upon wildlife, the economic costs of intermittent electricity generation, and the effect of subsidies

[12]

on the wind industry's viability.  FAC ¶¶ 131-33; 90 Fed. Reg.
at 8363-64.  No timeframe for this comprehensive review is
given.  FAC ¶ 134.  In addition, Section 2(c) of the
Presidential Memorandum requires the Secretary of the Interior
to report to the President on the environmental impact and cost
to surrounding communities of defunct windmills.  Id. ¶ 135; 90
Fed. Reg. at 8364.[2]

The agency defendants have allegedly adopted and
implemented the Wind Directive by ceasing all pending approvals
needed for wind-energy projects, which the Plaintiff States
illustrate with examples of agency actors and websites citing
the Presidential Memorandum when describing a pause on
permitting, with reference to data allegedly showing a lag in
agency permitting and environmental reviews, and with a
description of the impact on specific delayed projects in
Massachusetts and New York.  FAC ¶¶ 142-156.

---

[2] In addition to drawing this Court's attention to the
facial conflict between the Wind Directive and other Executive
Orders calling for vigorous promotion of energy production and
curtailed environmental review processes for other forms of
energy in the face of a purported national energy crisis,
described in more detail above, the Plaintiff States point out
that one of the relevant Executive Orders singles out
Northeastern and West Coast states for their role in the alleged
energy emergency.  FAC ¶¶ 136-41.

[13]

The Plaintiff States further detail their alleged harms with reference to impacted projects and other injuries affecting individual states.  Id. ¶¶ 169-357.

Along similar lines, ACE NY alleges that its members are experiencing severe and ongoing harms from costs to projects in development that cannot proceed without federal permits, lost income from projects delayed or canceled, and related harms affecting contractual obligations, financing, and supply chain issues.  Intervenor Compl. ¶ 76.

### 3. Statutory Schemes

The Plaintiff States allege that "[n]umerous statutes and their implementing regulations require Agency Defendants to consider and issue decisions on applications for wind-energy project approvals," such that these agency defendants must "comprehensively, but promptly, review, approve, deny, or otherwise act on applications to construct and operate wind-energy facilities, following specific procedures and standards." Compl. ¶¶ 56, 58.

The statutory and regulatory violations that the Plaintiff States allege most specifically are violations of OCSLA and its related regulations, because, implementing OCSLA's general statutory mandate of "expeditious and orderly development" of Outer Continental Shelf resources, 43 U.S.C. § 1332(3), Plaintiff States argue, "BOEM's regulations under OCSLA make

[14]

clear that it must promptly process applications and issue permit decisions by either approving, disapproving, or requesting revisions [of permit applications]," which the Wind Directive precludes, such that "by indefinitely preventing all lessees from obtaining approvals and permits necessary for offshore-wind projects, the DOI Defendants have effectively -- and unlawfully, under OCSLA -- removed *already leased* areas in the Outer Continental Shelf from use," States' Mem. 31-32; FAC ¶¶ 59-62; 30 C.F.R. § 585.613(e)(providing that, "[u]pon completion of our technical and environmental reviews and other reviews required by Federal laws . . . BOEM **will approve, disapprove, or approve with conditions** [Site Assessment Plans]" (emphasis added)); 43 U.S.C. § 1341(a) (providing that the President may "from time to time, withdraw from disposition any of the **unleased lands** of the outer Continental Shelf" (emphasis added)); see also ACE NY's Mem. 25-26; States' Suppl. Br. 8-9; ACE NY's Suppl. Br. 14-15.

The Plaintiff States and ACE NY also point to permitting procedure regulations such as those implementing the Clean Water Act, which, pursuant to the statutory command that "to the maximum extent practicable" the relevant permitting decisions should be made "not later than the ninetieth day after the date the notice for such application is published," 33 U.S.C. § 1344(q), provide for timely adjudication of permit applications

[15]

within sixty days (albeit with exceptions), <u>33 C.F.R. §</u> <u>325.2(d)</u>, the timelines of which regulations are now allegedly not being followed.  States' Mem. 32; FAC ¶¶ 63-68; ACE NY Mem. 28-32; States' Suppl. B<u>r. 9-10</u>; ACE NY's Suppl. B<u>r. 15-16</u>.  The Plaintiff States make similar allegations as to other permitting statutes with specific periods specified by regulation for permitting decisions' review.  FAC ¶¶ 69-112; <u>see also</u> ACE NY's Suppl. B<u>r. 16-17</u>.

## II.   ANALYSIS

### A. Pleading Standard

Pursuant to Rule 8(a)(2) of the Federal Rules of Civil Procedure, a complaint "that states a claim for relief must contain . . .  a short and plain statement of the claim showing that the pleader is entitled to relief."  To test the sufficiency of the pleading, a defendant can file a motion to dismiss pursuant to <u>Fed. R. Civ. P. 12(b)(6)</u>.  "When faced with motions to dismiss under both 12(b)(1) and 12(b)(6), a district court, absent good reason to do otherwise, should ordinarily decide the 12(b)(1) motion first."  <u>Katz</u> v. <u>Pershing, LLC</u>, <u>806</u> <u>F. Supp. 2d 452, 456</u> (D. Mass. 2011) (Stearns, J.), <u>aff'd</u>, <u>672</u> <u>F.3d 64</u> (1st Ci<u>r. 2012</u>).  Whether a motion is brought under Rule 12(b)(1) or 12(b)(6), "the reviewing court must take all of plaintiff's allegations as true and must view them, along with all reasonable inferences therefrom, in the light most favorable

[16]

to plaintiff." Verlus v. Experian Info. Sols., Inc., No. 23-CV-11426-DJC, 2025 WL 836588, at *1 (D. Mass. Mar. 17, 2025) (Casper, J.). To survive a motion to dismiss, the complaint must include sufficient factual allegations that, accepted as true, "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). Courts "draw every reasonable inference" in favor of the plaintiff, Berezin v. Regency Sav. Bank, 234 F.3d 68, 70 (1st Cir. 2000), but they disregard statements that "merely offer legal conclusions couched as fact or threadbare recitals of the elements of a cause of action," Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 12 (1st Cir. 2011) (cleaned up).

## B. Article III Standing

The Public Officials argue that the Plaintiff States and ACE NY are not "directly affected by the agencies' temporary hold on making final decisions on *other parties'* permit applications." Defs.' Opp'n 12. They point out that plaintiffs must allege facts showing injury in fact, traceability, and redressability, and that "when the plaintiff is not himself the object of the government action or inaction he challenges, standing is not precluded, but is ordinarily 'substantially more difficult' to establish." Lujan v. Defenders of Wildlife, 504 U.S. 555, 562 (1992) (quoting Allen v. Wright, 468 U.S. 737, 758 (1984)); Defs.' Opp'n 12. This is because "causation and

[17]

redressability ordinarily hinge on the response of the regulated (or regulable) third party to the government action or inaction – and perhaps the response of others as well," so the plaintiff in this scenario has the burden "to adduce facts showing that those choices have been or will be made in such manner as to produce causation and permit redressability."  Lujan, 504 U.S. at 562.

This argument somewhat mischaracterizes the complaints.  As to ACE NY, which relies on an associational standing theory based on direct harm to its members, ACE NY has alleged that its members are experiencing delays in permitting decisions leading to costs and other harms, Intervenor Compl. ¶ 76, and has supported these allegations with declarations pointing to specific projects, see, e.g., Decl. Marguerite Wells, Executive Director of ACE NY Supp. Mot. Prelim. Inj. ("Wells Decl.") ¶¶ 21-49, ECF No. 63 (detailing harms to member leaseholders and manufacturers allegedly attributable to Wind Directive).  Thus, the argument that the harms at issue are too indirect does not defeat ACE NY's standing.

The Plaintiff States are more properly the target of the Public Officials' third-party-standing argument, but this argument fails as to them as well.  As another district court has observed in the context of a challenge brought by states to an extended pause on oil and gas leasing offshore and on public

[18]

lands, the Plaintiff States "have alleged . . . as a result of the [Wind Directive] . . . [imminent] loss of jobs and economic damage," in addition to lost "income" from pledged investments. Louisiana v. Biden, 622 F. Supp. 3d 267, 285 (W.D. La. 2022). This is harm to them allegedly caused by the Wind Directive itself, not harm based on the decisions of some party not before the Court.  In addition, "Plaintiff States have special solicitude because they assert a congressionally bestowed procedural right (the APA), and the government action at issue affects the Plaintiff States' quasi-sovereign interests (damage to economics, loss of jobs, . . . funding for state and local governments)."  Louisiana, 622 F. Supp. 3d at 286.

Given the reasoning on which Lujan's caution against third-party standing claims was based -- that is, on the concern that such claims ask courts to speculate on actions of parties not before the court or actions which it cannot compel by a favorable ruling, 504 U.S. at 562 -- the Public Officials' general argument against standing cannot be dealt with fully without addressing the heart of the Public Officials' standing arguments, which is, in essence, that the plaintiffs here may not get what they want no matter what this Court rules, because too many intermediate decisionmakers are involved in the permit-issuing and other processes on which the threatened wind projects depend, and so which amounts to a kind of

[19]

redressability argument.  Defs.' Opp'n 13-18; Defs.' Suppl. Reply 5.

This argument rests on a fundamental misconstrual of the Administrative Procedure Act, which gives courts the relatively modest task of correcting deviations in agency procedure -- and not, of course, of second-guessing reasonably made decisions of the Executive Branch, or peering behind the curtain to guess at what an agency may do next.  See Federal Commc'ns Comm'n v. Prometheus Radio Project, 592 U.S. 414, 423 (2021) (explaining that APA arbitrary-or-capricious review requires only "that agency action be reasonable and reasonably explained," and that "a court may not substitute its own policy judgment for that of an agency").  As the Supreme Court has observed, even where "[a]gencies . . . have discretion about whether or not to take a particular action," "those adversely affected by a discretionary agency decision generally have standing to complain that the agency based its decision upon an improper legal ground." Federal Election Comm'n v. Akins, 524 U.S. 11, 25 (1998). Injuries may therefore be both traceable and redressable "even though the [agency] might reach the same result exercising its discretionary powers lawfully."  Id.  "We rarely know when we entertain a case . . . whether the agency's *ultimate* action will be favorable to the [plaintiff].  Our job is limited to correcting a legal error -- if error is committed -- in the

[20]

agency decision." Akins v. Federal Election Comm'n, 101 F.3d 731, 738 (D.C. Cir. 1996) (citations omitted), vacated on other grounds, 524 U.S. At the same time, if legal error has been committed, "it has *always* been an acceptable feature of judicial review of agency action that a petitioner's 'injury' is redressed by the reviewing court notwithstanding that the agency might well subsequently legitimately decide to reach the same result through different reasoning." Id. As the Supreme Court has summarized, "[w]hen a litigant is vested with a procedural right [such as those conferred by the APA], that litigant has standing if there is **some possibility** that the requested relief will prompt the injury-causing party to reconsider the decision that allegedly harmed the litigant." Massachusetts v. E.P.A., 549 U.S. 497, 518 (2007) (emphasis added). It is a feature, not a bug, of this review process that, when the smoke settles, the parties may find themselves in roughly the same place they began.

Although this analysis covers the core of the Public Officials' arguments on standing, this Court addresses their specific arguments below, while noting where this general analysis governs.

### C. State Plaintiffs' Standing

The Public Officials argue that the State Plaintiffs fail to satisfy the concrete injury requirement because, when alleged

[21]

injuries are forward-looking, plaintiffs must show an imminent, substantial risk of future harm, but the State Plaintiffs have alleged only possible future injury.  Defs.' Opp'n 12-13.  They argue that the alleged energy reliability and affordability, economic, health, and environmental benefits which the State Plaintiffs claim they will be deprived of if the Wind Directive continues to be implemented are "extremely broad and unspecific," and therefore not actual or imminent in the required sense.  Id. at 13.  More specifically, the Public Officials contend that the states do not "demonstrate that any particular wind project would be authorized and completed but for the Wind Memo," pointing out that only a few states mention specific wind projects, and some of those states that do mention specific projects do not specifically allege that these projects have pending applications that are currently being unlawfully delayed.  Id.

Similarly, but as to traceability, the Public Officials argue that the Plaintiff States' general allegations about energy and economic impacts and the like are too attenuated to satisfy this requirement, because the causal connection between a temporary cessation on wind project approvals and future energy crises depends on weak inferences, beginning with the assumption that the Wind Directive will cause agencies not to approve projects and continuing through the assumption that

[22]

other power generators will fail to provide the required power.

Id. at 16-17.  As to redressability, the Public Officials argue

that the Plaintiff States cannot show that but for the Wind

Directive federal approvals would be forthcoming and would bring

the wide-ranging benefits the Plaintiff States allege they would

receive, particularly given the myriad factors that go into

making wind energy projects successful.  Id. at 17-18.

These arguments are dealt with in large part by the

observations supra, Section II.B: because they invoke a

procedural right under the APA, the plaintiffs need plausibly

allege only "some possibility that the requested relief will

prompt the injury-causing party to reconsider the decision that

allegedly harmed the litigant."  Massachusetts, 549 U.S. at 518.

The Public Officials acknowledge that at least some of the

states allege harms related to specific projects in the course

of the permitting process, Defs.' Suppl. Reply 3-12, which the

plaintiffs allege has been indefinitely halted, and which halt

has allegedly harmed them significantly, both with respect to

these specific projects and otherwise, FAC ¶¶ 201-12, 318-25;

States' Suppl. Br. 2-3, 6 (describing Massachusetts' and New

Jersey's imminent harms in terms of unrealized energy and

economic benefits, including lost jobs, frustrated state

investments, and millions of dollars committed by specific wind

energy projects to state projects); Decl. Elizabeth J. Burdock,

[23]

President and CEO, Oceanic Network ¶¶ 17-21, ECF No. 64 (describing delayed investments and lost work and documenting "near-exponential curve" in investment growth through 2024 coming to an abrupt halt).  This is all that is required.  See Louisiana v. Biden, No. 2:24-cv-00406, 2024 WL 3253103, at *12 (W.D. La. July 1, 2024) (finding standing for plaintiff states based on "lost or delayed revenues tied to . . . natural gas production" and "here and now injury by . . . delayed investments" reducing future revenues).

As to the Public Officials' argument that the Plaintiff States' alleged harms are overly speculative and thus insufficiently imminent, unlike the lost proceeds from the one already-scheduled lease sale that was canceled by the pause in Louisiana, 622 F. Supp. 3d at 279-80, this is a distinction without a difference: the district court in Louisiana considered the state plaintiffs' allegations of imminent job loss and other financial and economic harms alongside the allegations of already-lost potential proceeds, id. at 285, and here the Plaintiff States allege additional harms not present in Louisiana, such as energy reliability and affordability problems due to reliance on the regulatory regimes the Wind Directive has interrupted, and difficulty meeting state statutory emission-reduction goals meant to benefit the states' residents, FAC ¶¶ 159-68.  The First Circuit has observed that a state may show a

[24]

sufficiently imminent "substantial risk of fiscal injury to itself" based on "rational economic assumptions" and "concrete evidence." Massachusetts v. United States Dep't of Health & Hum. Servs., 923 F.3d 209, 223 (1st Cir. 2019) (first quoting Adams v. Watson, 10 F.3d 915, 923 (1st Cir. 1993); and then quoting Clapper v. Amnesty Int'l USA, 568 U.S. 409, 420 (2013)). The Plaintiff States' mundane assumption that a total, indefinite pause on wind energy development will cause them financial and other economic harms, when, for instance, Massachusetts alleges that it has invested hundreds of millions of dollars in offshore-wind infrastructure since 2011, and is to receive tens of millions in in-state investment in relation to one stalled project, which project is anticipated to generate more than 10,000 jobs, is eminently rational, FAC ¶¶ 211-12, and is backed up by concrete evidence in the form of declarations, see, e.g., Decl. Bruce K. Carlisle ¶¶ 22, 25-27, 38, ECF No. 71-5. The Plaintiff States' specific allegations regarding already-canceled or delayed supply chain contracts, power purchase agreements and agreement negotiations, and construction projects, moreover, FAC ¶¶ 198, 315-18, bring the facts of this case in line with those confronted by the district court in the liquefied natural gas export pause case Louisiana v. Biden, where the court found imminent harm to state plaintiffs based on projected loss of tax revenues, decreased investments in natural

[25]

gas development and infrastructure, and already-delayed contracts, investments, and construction, 2024 WL 3253103, at *10.

To the extent that the Public Officials invite this Court to engage in hair-splitting analysis of each state's alleged harm, this Court declines to do so at this stage. "So long as one plaintiff has standing to seek a particular form of global relief, the court need not address the standing of other plaintiffs seeking the same relief." Comfort v. Lynn Sch. Comm., 418 F.3d 1, 11 (1st Cir. 2005) (en banc). "[T]he presence of one party with standing is sufficient to satisfy Article III's case-or-controversy requirement." Rumsfeld v. Forum for Acad. and Institutional Rights, Inc., 547 U.S. 47, 52 n.2 (2006). This Court is sensitive to the Public Officials' concern that relief ought be tailored to redress actually-affected projects, Defs.' Opp'n 40, but, because all plaintiffs seek vacatur under the APA, this concern goes to the scope of any additional injunctive relief, rather than to the plaintiffs' standing to bring suit.

### D. Intervenor ACE NY Standing

The Public Officials argue that ACE NY also does not have standing, because, under the associational standing theory it relies on, it does not identify a specific member that would have standing to sue in his or her own right, "presumably

[26]

because [ACE NY has] not identified a member that has a pending application that has been unlawfully delayed." Id. at 21. The Public Officials cavil with the declarations of ACE NY's members, largely on the basis that purportedly harmed construction companies, leaseholders, and the like are not identified by name, and their harms are too attenuated because they are not themselves affected permit applicants. Id. at 21-22. The Public Officials also argue that companies or persons in the wind energy supply chain business are harmed only indirectly, by third parties' choosing not to buy their products or utilize their services, and that such parties are not with the zone of interests protected by the statutes at issue or directly regulated by the statutes. Id. at 23.

Much of this argument is dealt with supra, Section II.B: again, all that is required is a procedural violation paired with an injury that may possibly be redressed upon reconsideration. Massachusetts, 549 U.S. at 518. ACE NY has alleged that in spades. See, e.g., Intervenor Compl. ¶ 76; Wells Decl. ¶¶ 21-49. Contra the Public Officials' initial contention, moreover, ACE NY has identified members affected by the Wind Directive by name. ACE NY Suppl. Br. 6-8. This Court again takes seriously the Public Officials' concern that relief ought be tailored to redress actually-affected projects, Defs.' Opp'n 40, but judges that this argument goes more to remedy than

[27]

standing, as injury, traceability, and redressability have been firmly established.

**E. Zone of Interests and Extraneous Parties**

The Public Officials also argue that the State Plaintiffs' alleged injuries are outside the relevant statutes' zone of interests, given that the State Plaintiffs are not permit applicants under the statutes they invoke and their alleged harms do not flow from the kinds of environmental harms the relevant statutes are designed to protect against, foreclosing standing on statutory grounds.  Defs.' Opp'n 18-19.

The zone of interests test is not "especially demanding," and only requires that plaintiffs be "arguably" within the zone of interests protected by the relevant statutes, such that "the benefit of any doubt goes to the plaintiff" and suit will be foreclosed on this grounds "'only when a plaintiff's "interests are so marginally related to or inconsistent with the purposes implicit in the statute that it cannot reasonably be assumed that"' Congress authorized the plaintiff to sue."  Lexmark Intern., Inc. v. Static Control Components, Inc., 572 U.S. 118, 130 (2014) (quoting Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v Patchak, 567 U.S. 209, 225 (2012)).  Confronted with the same argument in the similar context of an oil and gas leasing pause challenged by a group of state plaintiffs, the district court in Louisiana v. Biden declined to give the issue

[28]

extended consideration: "Clearly, all of the Plaintiff States' causes of action against Government Defendants are within the 'zone of interests' under the APA." 622 F. Supp. 3d at 290-91. This Court agrees: the Plaintiff States and the wind industry plaintiffs represented by ACE NY all seek to vindicate interests at least marginally related to the invoked statutes, which all have to do with some mix of environmental protection, responsible energy production, and expeditious land development.

The Public Officials also argue that certain of the plaintiffs' claims do not apply to certain defendants, as no specific action or inaction is alleged as to the Department of Energy and its Secretary, the Department of the Treasury and its Secretary, or the Department of Agriculture and its Secretary, and the plaintiffs' alleged injuries all pertain to the temporary cessation directive, not the interagency assessment and review component, which is the only action in which these agencies are involved. Defs.' Opp'n 19-20. The Public Officials similarly argue that the Bureau of Land Management ("BLM") and its Director and the National Marine Fisheries Service ("NMFS") and its Director ought be dismissed from this suit, as they are only vaguely alleged to have implemented the cessation directive, without being linked to any particular permit or authorization decision. Id. at 20.

[29]

This Court again hesitates to draw fine distinctions between parties at this stage, when the gist of the plaintiffs' claims is that all relevant agencies have implemented an unlawful and largely unexplained government-wide pause on all wind energy development and permitting. ACE NY argues at length that BLM has succumbed to a de facto unlawful revision of many of its land use plans, ACE NY Mem. 26-29, and implicates NMFS in the allegedly unlawful permitting pause twice-over, id. at 29-30; see also States' Mem. 3-4. This Court draws the reasonable inference from the plaintiffs' complaints that these agencies have implemented the Wind Directive's pause, causing harm to the plaintiffs. See FAC ¶¶ 406-07, 412-13; Intervenor Compl. ¶¶ 193, 196-97, 218-19. As the plaintiffs have reminded this Court, moreover, "the [factual] plausibility standard has no place in APA review" because "[t]he relevant inquiry is . . . not whether the facts set forth in a complaint state a plausible claim but, rather, whether the administrative record sufficiently supports the agency's decision." Atieh v. Riordan, 727 F.3d 73, 76 (1st Cir. 2013). This Court disagrees, therefore, that these parties and their directors ought be dismissed at this stage.

On the other hand, neither the Plaintiff States nor ACE NY has leveled any specific allegations against the Departments of Agriculture, Energy, or Treasury, or their secretaries, and it

[30]

is hard to see how these agencies' participation in a multi-agency review process could in itself be unlawful.  For this reason, therefore, this Court agrees that these Departments and their Directors ought be dismissed from this suit, and so dismisses them.

### F. Final Agency Action and the Notice-and-Comment Requirement

The Public Officials argue that the plaintiffs fail the two-prong test for identifying final agency action: that is, that the action must mark the consummation of the agency's decision-making process and be one by which rights or obligations are determined or from which legal consequences flow.  Id. at 24; Bennett v. Spear, 520 U.S. 154, 178 (1997). Instead, they argue, the plaintiffs challenge a mix of the temporary cessation-based "Wind Directive" itself, agency implementation of the Wind Directive in the form of generalized notices pertaining to it, and project-specific announcements implementing it.  Id.  The Public Officials also point out that the President is not an agency whose actions are reviewable under the APA, and so argue that the Wind Directive itself is not reviewable, and, for the same reasons, is not subject to the APA's notice-and-comment requirement; moreover, to the extent that it can be construed as a rule, the Wind Directive simply pauses authorizations pending future substantive assessment,

[31]

rather than making any substantive changes itself, and thus represents a rule of agency procedure or practice rather than a substantive rule subject to notice-and-comment.  Id. at 24-25. Likewise, the Public Officials argue, a generalized "halt on wind-energy approvals" is too amorphous to be challenged because judicial review of permitting decisions is generally limited to ultimate approvals, modifications, or disapprovals of permit applications, notices to the public do not determine legal rights or obligations, and even project-specific notices do not represent the consummation of the agency's decision-making process, but rather, temporarily defer decisions in contexts where the agency has discretion to do so and where no specific deadline is provided by statute or, at least without significant exception, by regulation.  Id. at 26-30.

In sum, the Public Officials argue that the plaintiffs' complaints fit squarely within Lujan's warning against lawsuits that seek "wholesale improvement of [agency] program[s] by court decree," rather than attacking specific, final agency actions. 497 U.S. at 891; Defs.' Opp'n 30.  They also distinguish cases relied on by the plaintiffs to establish that even temporary actions may be challenged on the grounds that the Public Officials here do not argue that the Wind Directive is not final because it is temporary, but rather because no agency has made a

[32]

decision representing the consummation of its decision-making process or one with legal consequences.  Defs.' Opp'n 30-31.

This Court will not exhaustively retread the ground covered by the district court in Louisiana v. Biden when faced with similar arguments.  622 F. Supp. 3d at 291-93.  "There is no real question that [plaintiffs] have met the second prong of the Bennett test because the [alleged] Stop [is an action] from which legal consequences will flow," and a number of cases support the proposition that significant pauses and blanket moratoria are final agency actions that cannot be exempted from judicial review merely by being characterized as intermediate. Id. at 291-92; see, e.g., Clean Air Council v. Pruitt, 862 F.3d 1, 6 (D.C. Cir. 2016) (ruling that stay on rule's implementation was final action because it was "essentially an order delaying the rule's effective date, and [the D.C. Circuit] has held that such orders are tantamount to amending or revoking a rule"); Natural Res. Def. Council v. Wheeler, 955 F.3d 68, 79 (D.C. Cir. 2020) ("[I]f an agency's indication of an intent to reconsider an interim (or other action) sufficed to render the action non-final, agencies could evade judicial review of their actions . . . ."); see also Environmental Def. Fund, Inc. v. Gorsuch, 713 F.2d 802, 813 (D.C. Cir. 1983) ("[S]uspension of the permit process as to a class of waste management facilities amounts to a suspension of the effective date of regulation governing that

[33]

class, and may be reviewed . . . as the promulgation of a regulation.").  This makes good sense: after all, could an indefinite "pause" on all agency action whatsoever be construed as intermediate and thus unreviewable?  See GianCarlo Canaparo, Administrative Inertia After Regents and Department of Commerce, 6 Admin. L. Rev. Accord 315, 334 & n.114 (2021) (observing, with respect to the pause that was later challenged in Louisiana, 622 F. Supp. 3d, that "even [a] temporary moratorium may present a . . . problem" under recent, controlling Supreme Court case law, "either because it is, *de facto*, final, or because it amounts to unlawful inaction," on the theory that the affected agencies have a statutory obligation to administer the impeded programs).

This Court questioned the Public Officials at the June 18 hearing on this motion as to whether there was any timetable for the interagency review process that must be completed before the Wind Directive's pause may be lifted, but the Public Officials declined to give one.  Instead of suggesting a reasonable timeframe for, or indeed any end on the horizon to, the Wind Directive's implementation, the Public Officials stressed the distinction between this case and the pause-type cases the plaintiffs have relied on as comparators, see, e.g., Hornbeck Offshore Servs., LLC v. Salazar, 696 F. Supp. 2d 627 (E.D. La. 2010) (granting preliminary injunction enjoining six-month pause on deepwater drilling for oil in the Gulf of Mexico implemented

[34]

following Deepwater Horizon oil spill), on the grounds that this pause is so far shorter, or has had fewer tangible consequences, or less directly conflicts with statutory commands, than the pauses at issue in those cases.  For substantially the same reasons set out above in its imminence analysis with respect to standing, however, see supra Section II.C, this Court does not find the Public Officials' proposed distinction between these other indefinite pause cases and this one persuasive.  Rather, it is persuaded that the Wind Directive's pause, as alleged, is de facto final.

"Whether an agency action has 'direct and appreciable legal consequences' under the second prong of Bennett is a 'pragmatic' inquiry."  Sierra Club v. EPA, 955 F.3d 56, 63 (D.C. Cir. 2020) (quoting United States Army Corps of Engineers v. Hawkes Co., Inc., 578 U.S. 590, 598-99 (2016)).  "[A]n agency's action will be considered final if, looking to the practical effects, it 'appears on its face to be binding' or if it 'is applied by the agency in a way that indicates it is binding.'  The 'most important factor' is 'the actual legal effect (or lack thereof) of the agency action . . . on regulated entities.'"  National Educ. Ass'n v. United States Dep't of Educ., No. 25-cv-091, 2025 WL 1188160, at *16 (D.N.H. Apr. 24, 2025) (quoting National Mining Ass'n v. McCarthy, 758 F.3d 243, 252 (D.C. Cir. 2014)).  Whether or not the Wind Directive ultimately requires the

[35]

affected agencies to act contrary to statute, it in effect amends several regulations by requiring that the agencies must not follow the usual, specified procedures for an unspecified period of time, enacting a kind of de facto suspension of the law with respect to wind energy development.  See Doe v. Trump, 288 F. Supp. 3d 1045, 1070 (W.D. Wash. 2017) ("[W]hether the [challenged action] produces a 'suspension' or an indefinite delay, the [action] has significant real-world impacts on Plaintiffs' various situations.").  Looking to the actual legal effects of the agencies' actions -- that is, the indefinite suspension of leasing and permitting for all wind energy projects -- this Court rules that the agencies' indefinite pause on wind energy leasing and permitting, as alleged, constitutes final agency action.

Although closely related, this is distinct from the notice-and-comment issue.  The district court in Louisiana v. Biden concluded that the indefinite pause on oil and gas leasing on federal lands at issue there -- also implemented at the beginning of a new presidential administration -- was a substantive rule subject to 5 U.S.C. § 553's notice-and-comment requirement, because, applying the relevant test, it "impose[d] rights and obligations and [did] not leave the agency and its decisionmakers room to exercise discretion."  622 F. Supp. 3d at 295-96.  The court relied for this analysis at least in part on

[36]

its determination that specific statutory timelines at issue had not been met because of the challenged action, and on its more general observation that the challenged Executive Order "eliminate[d] the agency's discretion because exercising discretion would be disobeying a Presidential Executive Order." Id. at 296.

The Supreme Court has defined a "substantive rule" as "one 'affecting individual rights and obligations,'" such that it is "'binding' or ha[s] the 'force of law.'" Chrysler Corp. v. Brown, 441 U.S. 281, 301 (1979) (quoting Morton v. Ruiz, 415 U.S. 199, 232, 235, 236 (1974)). The First Circuit has defined "a legislative rule (interchangeably called a substantive rule)" as "one that 'creates rights, assigns duties, or imposes obligations, the basic tenor of which is not already outlined in the law itself.'" New Hampshire Hosp. Ass'n v. Azar, 887 F.3d 62, 70 (1st Cir. 2018) (quoting La Casa Del Convaleciente v. Sullivan, 965 F.2d 1175, 1178 (1st Cir. 1992)). In the context of distinguishing between substantive and interpretive rules, another session of this Court has observed that "[i]n determining whether a rule carries the 'force of law,' [and so is substantive rather than interpretive] the 'critical factor' is 'whether it le[aves] the agency officials free to exercise discretion in an individual case' or instead requires a uniform, predetermined outcome that admits of no exception." Monahan v.

[37]

Winn, 276 F. Supp. 2d 196, 214 (D. Mass. 2003) (Gertner, J.)

(quoting Charles H. Koch, Jr., 1 Admin L. & Prac. § 4.11 (2d ed.

2003)).

The Public Officials' argument that the Wind Directive is,

if anything, a rule of agency procedure or practice, rather than

a substantive rule subject to notice-and-comment, is addressed

by the court in Louisiana only briefly, and dismissed based on

the court's judgment that the challenged Executive Order

modified substantive rights and interests under the Fifth

Circuit's "substantial impact test." Id. Along similar lines,

ACE NY points to case law addressing agency action that

"effect[s] legal changes of general applicability" and

"effectively nullif[ies] pre-existing regulations that were

themselves codified through notice-and-comment rulemaking,"

judging this to be the stuff of substantive rules. Pacito v.

Trump, No. 2:25-cv-255, 2025 WL 655075, at *19 (W.D. Wash. Feb.

28, 2025); ACE NY Mem. 23-24.

This Court tentatively credits the plaintiffs' notice-and-

comment argument, without ruling that the agency action in

question here is a substantive rule at this stage. "To

determine the nature of a rule, the court must look at the

rule's effect on those interests ultimately at stake in the

agency proceeding. If a rule does not substantially affect or

jeopardize those ultimate interests, then it is procedural and

[38]

not substantive.  In short, context matters."  Doe, 288 F. Supp. 3d at 1074 (citations omitted).  The context here supports at least the plausible inference that the Wind Directive is a substantive rule.  Unlike in cases where courts have found that temporary suspensions of license applications did not constitute substantive rules, "focus[ing] on the fact that the delay caused by a suspension did not by itself undermine the interests at stake," and that the challenged pauses were "related to the agencies' ongoing notice and comment rulemaking efforts," here the plaintiffs allege that their interests are undermined with every passing day of the challenged pause, and that there is little indication of whether or when the agencies will resume the regular permitting processes that are (at least someday) required.  Id.  In the case which the Public Officials themselves rely on to argue that the action challenged here is at most a rule of agency procedure or practice, the agency announced its intent to issue a notice of proposed rulemaking when it implemented the pause, and clarified that "procedural fairness required that the processing of applications currently on file be completed."  Kessler v. F.C.C., 326 F.2d 673, 679 (D.C. Cir. 1963).  That is not the case here.  As alleged, the Wind Directive appears to leave the affected agency officials no discretion to deviate from its strictures, effectively removing

[39]

rights from the plaintiffs with no promise of a future rulemaking or clear timeline for resolution of their rights.

At the same time, particularly given the undeveloped nature of the arguments on this count, "whether notice and comment rulemaking was necessary in this case is an issue that requires an administrative record to properly resolve." J.O.P. v. U.S. Dep't of Homeland Sec., No. 19-1944, 2020 WL 2932922, at *17 (D. Md. June 3, 2020).

For these reasons, the motion to dismiss is denied as to ACE NY's Count II.

### G. APA Pleading Challenge and Contrary to Law and Arbitrary or Capricious Claims

Given that "the [Rule 12(b)6 factual] plausibility standard has no place in APA review," and thus this Court is not to make factual plausibility judgments as to the plaintiffs' APA claims, but only at most judgments as to whether "the underlying premise of the complaint is legally flawed (rather than factually unsupported)," the plaintiffs' claims that the challenged agency actions were arbitrary or capricious and contrary to law do not require extended analysis here, as "[t]he focal point of APA review is the existing administrative record." Atieh, 727 F.3d at 76 & n.4. Related to the arguments addressed in the previous section, however, the Public Officials argue generally that the crux of the Plaintiff States' claims belongs under 5 U.S.C. §

[40]

706(1), which applies to agency actions unlawfully withheld or unreasonably delayed, and that the Plaintiffs' failure to plead under this section of the APA is both fatal to their claims and revealing of their claims' inadequacy, because that section requires discrete, mandatory actions and egregious delay, such that a four-month pause like the one at issue here simply would not qualify.  Defs.' Opp'n 31.

This argument rests on the presumption that there was no final agency action here.  Id. at 32.  This Court has ruled otherwise, so it does not discuss this argument at length.

It is relevant to the plaintiffs' 5 U.S.C. §§ 706(2)(A) and (C) contrary-to-law claim, however, that the district court in Ensco Offshore Co. v. Salazar, in the course of evaluating a 5 U.S.C. § 706(1) unreasonable delay challenge to a five-month moratorium on deepwater drilling and permitting, reasoned that "[n]ot acting on permit applications seems contrary to OCSLA's command that drilling development be 'expeditious,' and the APA's command that a permit must be processed 'within a reasonable time.'"  781 F. Supp. 2d 332, 336-37 (E.D. La. 2011).  "Together," the court observed, "OCSLA and the APA inform the government's action on permits and require that the government should act expeditiously to advance development in the Outer Continental Shelf, and not to curtail drilling **unpredictably or indefinitely**."  Id. at 337 (emphasis added).  For these reasons,

[41]

the court determined that OCSLA "establishes a non-discretionary duty on the Department of the Interior to act, favorably or unfavorably, on drilling permit applications," such that "[n]ot acting at all is not a lawful option," and adopted the plaintiff's suggested thirty-day timeline for processing OCSLA permit applications, based on a deadline from a related statute. Id. at 336, 338-39.

Despite its factually distinguishable context -- the drilling permitting requirements are different from those at issue here -- the reasoning of the court in Ensco supports the proposition that, even in a case not specifically challenging agency delay under 5 U.S.C. § 706(1), an across-the-board pause on wind energy-related permitting may be contrary to law even if, as the Public Officials argue, no hard-and-fast deadlines have been violated.  In rejecting the government's proposed relegation of the unspecified permitting timelines to the "unchecked whim of the administrative process," the court in Ensco judged that this view "would produce autocratic discretion at best," observing that "[w]here there should be a queue, there is instead an untended pile."  Id. at 339.  The court determined instead that "Congress anticipated a process that would generally embrace a **rational time frame** for agency action; one faithful to OCSLA's mandate of expeditious development."  Id. at 339 (emphasis added).  The Public Officials here may object to

[42]

this implied characterization of the Wind Directive -- they have argued that the relevant agencies are reviewing and processing wind energy applications and requests without acting on them, so their piles are not entirely untended, Defs.' Opp'n 3-4 -- and may of course argue from the administrative record that the agencies have complied with the statutory and regulatory mandates even as they have stretched the previously established permit approval timelines.  On the facts alleged, however, the plaintiffs have stated a claim for agency action contrary to law.

The Court therefore DENIES the motion to dismiss as to the Plaintiff States' Count II and ACE NY's Count III.

For similar reasons, and given that the Public Officials do not meaningfully contest the substance of the Plaintiff States' arbitrary-or-capricious claim under 5 U.S.C. § 706(2)(A) -- except to say that later decisions on specific permits will not be arbitrary or capricious, Defs.' Opp'n 32-33 -- this Court also DENIES the motion to dismiss as to that claim, that is, Plaintiff States' and ACE NY's Count I.

**H. Equitable, Ultra Vires, and Constitutional Claims**

The Public Officials briefly dispose of the plaintiffs' ultra vires and equitable claims, arguing that they duplicate the plaintiffs' claim under the APA that the agencies have exceeded their statutory mandates and that these kinds of claims

[43]

cannot be used to make an end-run around the final agency action requirement.  Id. at 33.  The Public Officials also argue that judicial review as to any surviving ultra vires claim would in any case be limited, because the ultra vires doctrine only applies to "'extreme' agency error where the agency has stepped so plainly beyond the bounds of [its statutory authority], or acted so clearly in defiance of it, as to warrant the immediate intervention of an equity court," New York v. McMahon, No. 25-10601, 2025 WL 1463009, at *23 (D. Mass. May 22, 2025) (Joun, J.) (alteration in original) (quoting Federal Express Corp. v. United States Dep't of Com., 39 F. 4th 756, 764 (D.C. Cir. 2022)), and no patent misconstructions of statutes or specific, unambiguous statutory violations of this kind have been alleged. Id. at 34.

This Court agrees with the Public Officials, and applies this reasoning to ACE NY's constitutional claim as well. "[P]laintiffs' concerns are better addressed by []other count[s] of their complaint," that is, their APA claims.  Jafarzadeh v. Nielsen, 321 F. Supp. 3d 19, 40 (D.D.C. 2018).  As to ACE NY's constitutional claim, because "judging the constitutionality of action taken by a coequal branch of government is 'the gravest and most delicate duty that this Court is called on to perform,'" id. (quoting Northwest Austin Mun. Util. Dist. No. One v. Holder, 557 U.S. 193, 204 (2009)), "if a case can be

[44]

decided on either of two grounds, one involving a constitutional question, the other a question of statutory construction or general law, the Court will decide only the latter," Ashwander v. Tennessee Valley Auth., 297 U.S. 288, 347 (1936) (Brandeis, J., concurring).

Likewise, "because plaintiffs are able to assert the same claim through the APA, they cannot obtain relief . . . through the Court's inherent power to review ultra vires agency actions." Jafarzadeh v. Duke, 270 F. Supp. 3d 296, 311 (D.D.C. 2017). Although, as another session of this Court has recently observed, "ultra vires relief is designed to permit courts to 'reestablish the limits' on executive authority when it acts 'beyond its authority,'" Victim Rights L. Center v. United States Dep't of Educ., No. 25-11042, 2025 WL 1704311, at *15 (D. Mass. June 18, 2025) (Joun, J.) (quoting Aid Ass'n for Lutherans v. U.S. Postal Serv., 321 F.3d 1166, 1173 (D.C. Cir. 2003)), and is at least arguably available where the President has acted "without any authority, constitutional or statutory," McMahon, 2025 WL 1463009, at *22 n.17 (quoting American Fed'n of Gov't Emps., AFL-CIO v. Trump, No. 25-cv-03698, 2025 WL 1358477, at *18 (N.D. Cal. May 9, 2025)), the Supreme Court has recently reiterated that such claims are "essentially a Hail Mary pass," and are unavailable where plaintiffs have "an alternative path to judicial review," Nuclear Regul. Comm'n v. Texas, 605 U.S. --

[45]

--, 145 S. Ct. 1762, 1776 (2025) (quoting Nyunt v. Chairman, Broadcasting Bd. of Governors, 589 F.3d 445, 449 (D.C. Cir. 2009)). Likewise, although "the Supreme Court has assumed without deciding that some ultra vires claims may lie against presidential action," on balance "it is unclear whether ultra vires review is available at all" to challenge presidential actions, because the President is not an agency and courts generally may not enjoin the President. American Foreign Serv. Ass'n v. Donald J. Trump, No. 25-5184, 2025 WL 1742853, at *2 (D.C. Circ. June 20, 2025). In view of its ruling that the plaintiffs' APA claims may go forward and its judgment that the allegations here do not rise to the extremely high standard for such claims, this Court therefore follows the general rule that ultra vires is "a doctrine of last resort, 'intended to be of extremely limited scope,'" National Treasury Emps. Union v. Trump, No. 25-0935, 2025 WL 1218044, at *12 (D.D.C. Apr. 28, 2025) (quoting Schroer v. Billington, 525 F. Supp. 2d 58, 65 (D.D.C. 2007)), and rules that ultra vires action has not been plausibly alleged here.

Particularly given that ACE NY collapses its constitutional and ultra vires claims into its APA-grounded contrary-to-law argument in its briefing, ACE NY Mem. 32, and the Plaintiff States argue only from absence that "[n]othing in the Constitution or any act of Congress authorizes the President or

[46]

Agency Defendants to categorically and indefinitely halt wind-energy approvals," States' Mem. 33, this Court judges that "[t]his is a classic APA claim," and that "[t]he specifics of plaintiffs' allegations are a far better fit for this doctrinal box," within which "the Court will be able to consider the allegations fully." Nielsen, 321 F. Supp. 3d at 40. It applies this reasoning to the plaintiffs' ultra vires and ACE NY's constitutional claims, and to the Plaintiff States' equitable claim for violations of federal law, which duplicates their contrary-to-law claim under the APA.

The Court therefore ALLOWS the motion to dismiss as to the Plaintiff States' Counts III and IV and ACE NY's Counts IV and V.

### I. OCSLA Citizen Suit Claim (Plaintiff States' Count V; Intervenor's Count VI)

The Public Officials argue that OCSLA citizen suit claims cannot be brought until sixty days after giving the appropriate federal official written notice of the alleged violation, and that this requirement has not been met here. Id. at 34-35. The "imminent threat" or "immediate[] affect" exceptions to this rule do not apply, the Public Officials claim, because such effects could only happen after determinations are made only pending OCSLA planning documents, and, moreover, the Plaintiffs

[47]

identify no mandatory deadline that has been violated.  Id. at
35.

This Court need not address the Public Officials' arguments
or any possible exhaustion issues, because the plaintiffs "have
not pursued and/or briefed this claim.  Additionally, the
citizen suit provision was not intended to operate as a means of
obtaining 'umbrella' relief for a series of agency decisions
that were or will be subject to judicial review under the APA."
Louisiana, 622 F. Supp. 3d at 296.

This Court therefore ALLOWS the motion to dismiss as to the
OCSLA citizen suit claims, that is, Plaintiff States' Count V
and ACE NY's Count VI.

[48]

## III. CONCLUSION

The Plaintiffs sue the Public Officials for violations of the APA, for statutory violations in equity, for <u>ultra vires</u> action under the common law, for unconstitutional action in usurping congressional powers and seizing property without due process, and for an OCSLA violation under the statute's citizen suit provision.  The Public Officials move to dismiss all counts.

This Court DENIES the Public Officials' motion to dismiss, <u>ECF No. 123</u>, as to the Plaintiff States' Counts I and II and ACE NY's Counts I, II, and III.

This Court ALLOWS the Public Officials' motion to dismiss as to the Plaintiff States' Counts III, IV, and V and ACE NY's Counts IV, V, and VI.

**SO ORDERED.**

/s/ William G. Young  
WILLIAM G. YOUNG  
JUDGE  
of the  
UNITED STATES[3]

---

[3] This is how my predecessor, Peleg Sprague (D. Mass 1841-1865), would sign official documents. Now that I'm a Senior District Judge I adopt this format in honor of all the judicial colleagues, state and federal, with whom I have had the privilege to serve over the past 47 years.

[49]

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                    )
STATE OF NEW YORK, et al.,          )
                                    )
                    Plaintiffs,     )
                                    )
and                                 )
                                    )
ALLIANCE FOR CLEAN ENERGY NEW       )
YORK,                               )
                                    )          Civil Action
          Plaintiff-Intervenor,     )          No. 25-cv-11221-PBS
                                    )
v.                                  )
                                    )
DONALD J. TRUMP, in his official    )
capacity as President of the        )
United States, et al.,              )
                                    )
                    Defendants.     )
_____ )

## MEMORANDUM AND ORDER

December 8, 2025

Saris, J.

## INTRODUCTION

On January 20, 2025, President Trump issued an executive memorandum titled "Temporary Withdrawal of All Areas on the Outer Continental Shelf From Offshore Wind Leasing and Review of the Federal Government's Leasing and Permitting Practices for Wind Projects." 90 Fed. Reg. 8363 (Jan. 20, 2025) (the "Wind Memo"). The Wind Memo directed federal agencies to suspend issuing all new permits, leases, and other authorizations needed to develop and operate wind energy projects, both onshore and offshore, pending

1

a wide-ranging assessment of federal wind leasing and permitting practices. Pursuant to that directive, several federal agencies[1] (the "Agency Defendants") ordered an immediate pause in the issuance of all wind energy authorizations (the "Wind Order").

Seventeen states[2] and the District of Columbia (the "State Plaintiffs"), and Alliance for Clean Energy New York ("ACE NY," and together with the State Plaintiffs, "Plaintiffs"), bring this suit under the Administrative Procedure Act ("APA"), 5 U.S.C. § 551 et seq., challenging the Wind Order. Now before the Court are the parties' cross-motions for summary judgment.[3]

---

[1] The agencies remaining in this suit are the Department of the Interior (and three of its subagencies: the Bureau of Ocean Energy Management, the Bureau of Land Management, and the U.S. Fish and Wildlife Service); the Department of Commerce (and two of its subagencies: the National Marine Fisheries Service and the National Oceanic and Atmospheric Administration); the Environmental Protection Agency; and the U.S. Army Corps of Engineers. Three other agencies were also originally named as defendants but were subsequently dismissed: the Department of Agriculture, the Department of Energy, and the Department of the Treasury. See Massachusetts v. Trump, 790 F. Supp. 3d 8, 25 (D. Mass. 2025). Several public officials were also named as defendants. For ease of reference, the Court refers to the defendants collectively as the "Agency Defendants."

[2] Those states are Arizona, California, Colorado, Connecticut, Delaware, Illinois, Maine, Maryland, Massachusetts, Michigan, Minnesota, New Jersey, New Mexico, New York, Oregon, Rhode Island, and Washington.

[3] The Court has also reviewed and is thankful for the submissions of various amici: Save Long Beach Island, Inc. (Dkt. 111); a group of local, regional, and national environmental nonprofits (Dkt. 220); a California coalition consisting of local government entities, environmental nonprofits, a labor union, an industry trade group, and a public official (Dkt. 224); and a group of four

After review of the parties' submissions and a hearing, the Court concludes that the Wind Order constitutes a final agency action that is arbitrary and capricious and contrary to law. Accordingly, the Court **ALLOWS** Plaintiffs' motions (Dkts. 172, 175), **DENIES** the Agency Defendants' motion (Dkt. 179), and declares unlawful and **VACATES** the Wind Order.

## BACKGROUND

### I.   Factual Background

The following facts are not in dispute.

The Wind Memo, which was published in the Federal Register, contains two sections. The first section, which is not at issue in this litigation, invokes the President's authority under section 12(a) of the Outer Continental Shelf Lands Act ("OCSLA"), 43 U.S.C. § 1341(a), to "withdraw from disposition for wind energy leasing all areas within the O[uter] Continental Shelf," thereby "temporarily prevent[ing] consideration of any area in the [Outer Continental Shelf] for any new or renewed wind energy leasing." Temporary Withdrawal of All Areas, 90 Fed. Reg. at 8363.[4] The second section, as relevant here, provides as follows:

---

coalitions that provide training programs for workers in the offshore wind energy industry (Dkt. 226).

[4] The first section of the Wind Memo also instructs the Secretary of the Interior to "conduct a comprehensive review of the ecological, economic, and environmental necessity of terminating or amending any existing wind energy leases" and to "identify[]

3

In light of various alleged legal deficiencies underlying the Federal Government's leasing and permitting of onshore and offshore wind projects, the consequences of which may lead to grave harm -- including negative impacts on navigational safety interests, transportation interests, national security interests, commercial interests, and marine mammals -- and in light of potential inadequacies in various environmental reviews required by the National Environmental Policy Act to lease or permit wind projects, <u>the Secretary of the Interior, the Secretary of Agriculture, the Secretary of Energy, the Administrator of the Environmental Protection Agency, and the heads of all other relevant agencies, shall not issue new or renewed approvals, rights of way, permits, leases, or loans for onshore or offshore wind projects pending the completion of a comprehensive assessment and review of Federal wind leasing and permitting practices</u>. The Secretary of the Interior shall lead that assessment and review in consultation with the Secretary of the Treasury, the Secretary of Agriculture, the Secretary of Commerce, through the National Oceanic and Atmospheric Administration, the Secretary of Energy, and the Administrator of the Environmental Protection Agency. The assessment shall consider the environmental impact of onshore and offshore wind projects upon wildlife, including, but not limited to, birds and marine mammals. The assessment shall also consider the economic costs associated with the intermittent generation of electricity and the effect of subsidies on the viability of the wind industry.

<u>Id.</u> at 8363-64 (emphasis added).[5] In short, the Wind Memo directs agencies to impose an indefinite moratorium on the "issu[ance]" of all "new or renewed approvals, rights of way, permits, leases, or

---

any legal bases for [their] removal." Temporary Withdrawal of All Areas, <u>90 Fed. Reg. at 8363</u>.

[5] The second section of the Wind Memo also contains several provisions not relevant to this litigation, including an order that several agencies "assess the environmental impact and cost to surrounding communities of defunct and idle windmills." <u>Id.</u> at 8364.

loans for onshore or offshore wind projects" until agencies complete a "comprehensive assessment and review" (the "Comprehensive Assessment") of those projects' impacts. Id. at 8364. The Wind Memo further provides that "[t]his memorandum shall be implemented consistent with applicable law." Id.

On the same day the Wind Memo was promulgated, the Acting Secretary of the Interior issued a written order "temporarily suspend[ing]" all "delegations of authority" within the Interior Department "[t]o issue any onshore or offshore renewable energy authorization, including but not limited to a lease, amendment to a lease, right of way, amendment to a right of way, contract, or any other agreement required to allow for renewable energy development." Dkt. 165-3 at 1. By its terms, the written order would "remain in effect for 60 days," id. at 2, but the Agency Defendants acknowledge that, to this day, all relevant agencies "have temporarily ceased issuing permits until the [Comprehensive] Assessment . . . is complete, as instructed in the Wind Memo," Dkt. 180 at 13. The Court uses the term "Wind Order" to describe the Agency Defendants' decision to suspend issuing all authorizations related to wind energy projects.

The Agency Defendants have represented that the Comprehensive Assessment is "underway" but have provided no information about its timeline or any anticipated end date. Id. at 12; see, e.g., Dkt. 123-3 ¶ 5 (stating that the Interior Department has held

5

"meetings . . . to plan how to further the ongoing assessment" and "has begun compiling and reviewing information . . . that is needed to support" it); Dkt. 123-7 ¶ 8 (attesting that the National Marine Fisheries Service has "identified staff" to assist with the Comprehensive Assessment and has "engaged in preliminary coordination to prepare to support the assessment"). These representations are not part of the administrative record.

## II.  Procedural History

On May 5, 2025, the State Plaintiffs brought the instant suit. As relevant here, the State Plaintiffs' operative complaint claims that the Wind Order is (1) arbitrary and capricious, in violation of 5 U.S.C. § 706(2)(A); and (2) contrary to law and in excess of statutory authority, in violation of 5 U.S.C. § 706(2)(A) and (C).

ACE NY -- a nonprofit association with various wind project developers and supply chain operators as its members -- filed its complaint in intervention on May 21, 2025. Like the State Plaintiffs, ACE NY claims that the Wind Order is arbitrary and capricious and contrary to law. ACE NY also claims that the Wind Order is procedurally improper in violation of 5 U.S.C. § 706(2)(D) because the Agency Defendants did not undergo notice and comment before implementing it.

On July 3, 2025, another judge of this Court (Judge Young) denied the Agency Defendants' motion to dismiss the above claims.[6] See Massachusetts v. Trump, 790 F. Supp. 3d 8, 32 (D. Mass. 2025). The parties subsequently filed cross-motions for summary judgment, which are now before this Court.

## DISCUSSION

### I. Constitutional Standing

To establish constitutional standing, "Plaintiffs must show (1) that they suffered an injury in fact that is concrete, particularized, and actual or imminent; (2) that the injury was likely caused by the defendant; and (3) that the injury would likely be redressed by judicial relief." Plazzi v. FedEx Ground Package Sys., Inc., 52 F.4th 1, 4 (1st Cir. 2022) (cleaned up) (quoting TransUnion LLC v. Ramirez, 594 U.S. 413, 423 (2021)). "If at least one plaintiff has standing, the suit may proceed." Biden v. Nebraska, 600 U.S. 477, 489 (2023); see also Comfort v. Lynn Sch. Comm., 418 F.3d 1, 11 (1st Cir. 2005) (en banc) ("So long as one plaintiff has standing to seek a particular form of

---

[6] The motion to dismiss was originally filed as an opposition to Plaintiffs' motions for a preliminary injunction. The Court, with the consent of the parties, collapsed Plaintiffs' motions with a trial on the merits pursuant to Federal Rule of Civil Procedure 65(a)(2) and construed the Agency Defendants' opposition as a motion to dismiss. See Massachusetts, 790 F. Supp. 3d at 15-16. The Court then denied the motion as to Plaintiffs' APA claims and dismissed their other claims. See id. at 30-32. No preliminary injunction was issued.

global relief, the court need not address the standing of other plaintiffs seeking the same relief."), abrogated on other grounds by, Parents Involved in Cmty. Schs. v. Seattle Sch. Dist. No. 1, 551 U.S. 701 (2007).

Judge Young previously found that Plaintiffs had constitutional standing at the motion to dismiss stage. See Massachusetts, 790 F. Supp. 3d at 20-24. Plaintiffs must, however, "support each element of standing 'with the manner and degree of evidence required at the successive stages of the litigation.'" Murthy v. Missouri, 603 U.S. 43, 58 (2024) (quoting Lujan v. Defs. of Wildlife, 504 U.S. 555, 561 (1992)). At the summary judgment stage, a plaintiff "must 'set forth' by affidavit or other evidence 'specific facts'" establishing standing. Lujan, 504 U.S. at 561 (quoting Fed. R. Civ. P. 56(e)). As explained below, the Court concludes that the State Plaintiffs and ACE NY have each satisfied this requirement and that the Agency Defendants' arguments to the contrary are unpersuasive.

**A. State Plaintiffs**

The State Plaintiffs have produced ample evidence demonstrating that they face ongoing or imminent injuries due to the Wind Order. First, project delays caused by the Wind Order reduce or defer tax revenue and returns on the State Plaintiffs' investments in wind energy developments. See Wyoming v. Oklahoma, 502 U.S. 437, 447 (1992) (holding that decreased tax revenues

constitute injury in fact); Franchise Tax Bd. v. Alcan Aluminium Ltd., 493 U.S. 331, 336 (1990) (same as to diminished return on investment). For example, the Commonwealth of Massachusetts alone invested millions of dollars into the wind industry in 2024; it is a "rational economic assumption[]" that returns on those investments are imperiled by an indefinite suspension of wind permitting. Massachusetts v. U.S. Dep't of Health & Hum. Servs., 923 F.3d 209, 223 (1st Cir. 2019) (quoting Adams v. Watson, 10 F.3d 915, 923 (1st Cir. 1993)). Similarly, the State Plaintiffs provide documentation that the Wind Order has resulted in delays to a project planned by Atlantic Shores Offshore Wind that is expected to provide nearly $2 billion in economic benefits to the State of New Jersey. Those anticipated benefits are now jeopardized or deferred.

The Wind Order has also disrupted the State Plaintiffs' plans to themselves derive energy from wind projects. For instance, delays to the SouthCoast Wind project have postponed the delivery of thousands of megawatts of wind energy to the Commonwealth of Massachusetts. The Agency Defendants concede that those delays stem at least in part from their "evaluat[ing] the applicability of the Wind Memo" to the project. Dkt. 180 at 24. Schedule disruptions resulting from the Wind Order have likewise compelled the State of New York to cancel solicitations for a transmission

9

project that would have connected New York City's electricity grid to offshore wind generators and produced long-term cost savings.

Further, the State Plaintiffs point out that absent the Wind Order, the development of wind energy projects would lower energy costs. See Belmont Mun. Light Dep't v. Fed. Energy Regul. Comm'n, 38 F.4th 173, 185 (D.C. Cir. 2022) (holding that states suffer injury from increased electricity rates due to interests "in protecting their citizens and electric ratepayers"). The State Plaintiffs also present evidence that the Wind Order impedes their ability to reduce greenhouse gas emissions through renewable wind energy generation, see Massachusetts v. EPA, 549 U.S. 497, 521 (2007) (holding that states suffer injury in fact from the "serious and well recognized" "harms associated with climate change"), and forces them to incur expenses to shift toward other energy sources to meet renewable energy procurement and pollution-reduction targets, see New Jersey v. EPA, 989 F.3d 1038, 1046 (D.C. Cir. 2021) (noting that "exacerbated administrative costs and burdens . . . constitute a concrete and particularized injury"). These continuing harms constitute injury in fact.

So, too, do the State Plaintiffs satisfy the requirements of causation and redressability. See FDA v. All. for Hippocratic Med., 602 U.S. 367, 380-81 (2024). The Wind Order caused the above injuries, which would be redressed by its vacatur. And the Supreme Court has held that a plaintiff has standing to assert that an

10

agency "based its decision upon an improper legal ground" even if the agency "might later, in the exercise of its lawful discretion, reach the same result for a different reason." Gutierrez v. Saenz, 606 U.S. 305, 320 (2025) (quoting FEC v. Akins, 524 U.S. 11, 25 (1998)). The State Plaintiffs have adequately demonstrated Article III standing.

**B.   ACE NY**

As an organization asserting standing on behalf of its members, ACE NY must show that (1) "its members would otherwise have standing to sue in their own right"; (2) "the interests it seeks to protect are germane to the organization's purpose"; and (3) "neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll., 600 U.S. 181, 199 (2023). "The first two prongs of this test have constitutional dimensions; the third prong is prudential." Housatonic River Initiative v. U.S. EPA, 75 F.4th 248, 265 (1st Cir. 2023).

The Agency Defendants contend that ACE NY has failed to specify any member with standing. In mounting this challenge, the Agency Defendants are tilting at windmills. Contrary to their assertion, ACE NY does, in fact, identify various such members. See id. (noting that an association need only identify one member with standing). Those members include entities that operate (or

11

seek to operate) onshore and offshore wind energy projects in thirty-two states, as well as entities in the wind energy supply chain. And the injuries to those members from the Wind Order are manifest. For example, declarations submitted by ACE NY indicate that Atlantic Shores Offshore Wind -- a wind energy project development company which is among ACE NY's many members -- has had multiple permits stalled or withdrawn, with the government specifically citing the Wind Order as the rationale for withdrawing at least one of them. In response, Atlantic Shores Offshore Wind has "materially reduced its personnel, terminated contracts, and canceled project investments." Dkt. 146-1 ¶ 22. While development progress is stalled for various of ACE NY's wind developer members, many of them remain "required to pay rental fees on their stagnant leases," leaving "billions of dollars in stranded investments." Id. ¶ 4. Meanwhile, ACE NY's supply chain members "have lost and will continue to lose work and contracts as individual projects' development schedules are delayed." Dkt. 178 ¶ 3; see id. ¶ 5 (citing 82.8% decrease in quarterly supply chain contracts from 2024 to first half of 2025); All. for Hippocratic Med., 602 U.S. at 384-85 (noting that downstream economic injuries to suppliers can form basis for standing where injuries result from "predictable chain of events").

To the extent that the Agency Defendants argue that ACE NY fails to show that its members' injuries were caused by (and can

be redressed by the vacatur of) the Wind Order due to uncertainty over whether individual projects would have timely proceeded in the absence of the permitting pause, that contention disregards the economic costs that ACE NY's members have already incurred in response to project delays. And ACE NY's members' injuries are "both traceable and redressable 'even though the [Agency Defendants] might reach the same result exercising [their] discretionary powers lawfully.'" Massachusetts, 790 F. Supp. 3d at 21 (quoting Akins, 524 U.S. at 25). ACE NY has thus established that it has members with standing to sue in their own right.

The Court also readily concludes that ACE NY has satisfied the other two prerequisites for associational standing. ACE NY's "mission is to promote the use of clean electricity technologies and energy efficiency . . ., increase energy diversity and security, boost economic development, improve public health, and reduce air pollution." Dkt. 114 ¶ 12. "The 'interests at stake' in this litigation" thus "are clearly 'related to [ACE NY's] core purposes.'" Housatonic, 75 F.4th at 265 (quoting Me. People's All. & Nat. Res. Def. Council v. Mallinckrodt, Inc., 471 F.3d 277, 283 (1st Cir. 2006)). And the remedies sought by ACE NY -- i.e., declaratory relief and vacatur of the Wind Order -- are "'prospective relief' [that] would 'inure to the benefit of those members of [ACE NY] actually injured,'" meaning that "individual members' participation is not necessary to either the claim[s]

13

asserted or the relief requested." Id. (first quoting Warth v. Seldin, 422 U.S. 490, 515 (1975); and then quoting Animal Welfare Inst. v. Martin, 623 F.3d 19, 25 (1st Cir. 2010)). ACE thus has established associational standing.

## II.  Zone of Interests

Next, the Agency Defendants contend that Plaintiffs do not fall within the zones of interests of the statutes under which they sue. As the Supreme Court has stated, the zone-of-interests analysis "requires [a court] to determine, using traditional tools of statutory interpretation, whether a legislatively conferred cause of action encompasses a particular plaintiff's claim." Lexmark Int'l, Inc. v. Static Control Components, Inc., 572 U.S. 118, 127 (2014). In other words, the inquiry turns on whether a plaintiff has a cause of action under a statute. See id. at 128.

The APA authorizes suit by any "person suffering legal wrong because of agency action[] or adversely affected or aggrieved by agency action within the meaning of a relevant statute." 5 U.S.C. § 702. This cause of action belongs to "anyone even 'arguably within the zone of interests to be protected or regulated by the statute . . . in question.'" FDA v. R. J. Reynolds Vapor Co., 606 U.S. 226, 233 (2025) (quoting Ass'n of Data Processing Serv. Orgs. v. Camp, 397 U.S. 150, 153 (1970)). "A plaintiff may sue under the APA unless her interests are so marginally related to or inconsistent with the purposes implicit in the statute that it

14

cannot reasonably be assumed that Congress intended to permit the suit. The inquiry is not especially demanding." Id. (cleaned up).

Plaintiffs contend that the Wind Order is contrary to two substantive provisions of the APA itself, see 5 U.S.C. §§ 555(b), 558(c), as well as a variety of statutes and regulations that collectively govern the permitting process for wind energy projects.[7] Because Plaintiffs either seek permits under these provisions (in the case of ACE NY's wind developer members) or directly benefit from the issuance of such permits (in the case of the State Plaintiffs and ACE NY's supply chain members), Plaintiffs' claims are well within the zones of interests of the provisions at issue, which all set forth timelines and standards for wind energy permitting. To take just one example, Plaintiffs invoke OCSLA, which aims to enable the "expeditious and orderly development" of the Outer Continental Shelf. 43 U.S.C. § 1332(3). Plaintiffs' claims, which likewise seek to expedite wind energy development, are within the zone of interests of that statute. See

---

[7] These laws include OCSLA, 43 U.S.C. § 1331 et seq.; the Clean Water Act, 33 U.S.C. § 1251 et seq.; the Rivers and Harbors Act, 33 U.S.C. § 401 et seq.; the Clean Air Act, 42 U.S.C. § 7401 et seq.; the National Environmental Policy Act, 42 U.S.C. § 4321 et seq.; the Endangered Species Act, 16 U.S.C. § 1531 et seq.; the Bald and Golden Eagle Protection Act, 16 U.S.C. § 668 et seq.; the Marine Mammal Protection Act, 16 U.S.C. § 1361 et seq.; the Federal Land Policy and Management Act, 43 U.S.C. § 1701 et seq.; and the Fixing America's Surface Transportation Act, 42 U.S.C. § 4370m et seq.; and the various regulations promulgated under these statutes.

15

Louisiana v. Biden, 622 F. Supp. 3d 267, 291-92 (W.D. La. 2022) (holding that states' APA claims alleging violation of OCSLA due to oil and gas leasing moratorium satisfied zone-of-interests test).

Seafreeze Shoreside, Inc. v. U.S. Department of the Interior, cited by the Agency Defendants, is not to the contrary. 123 F.4th 1 (1st Cir. 2024), cert. denied, 145 S. Ct. 2680 (2025), and cert. denied, 145 S. Ct. 2681 (2025). In Seafreeze, an organization representing commercial fishermen sought to invoke "aesthetic and recreational interests in marine mammals" to oppose the development of an offshore wind facility under the Marine Mammal Protection Act. Id. at 21. The First Circuit held that the organization's claim did not fall within the zone of interests of that statute because the "protection of marine mammals . . . [wa]s not germane to the [organization]'s purpose, which [wa]s to represent the interests of commercial fisheries and related organizations." Id. Here, in contrast, the interests asserted by Plaintiffs in obtaining wind energy permits are aligned with the purposes of the statutory provisions that authorize and regulate the issuance of those permits. Indeed, the Agency Defendants cite no case in which a permit applicant was found to be outside the zone of interests of a statutory provision regulating permit issuance. Additionally, the First Circuit in Seafreeze found that the plaintiffs' claims were within the zone of interests of the

16

National Environmental Policy Act (another statute invoked by Plaintiffs here) because the discharge of fill material would have had "adverse economic effects" on commercial fishing. Id. Here, similarly, Plaintiffs have alleged various adverse economic consequences resulting from the Wind Memo.

III. **Merits**

In the context of an APA challenge, "a motion for summary judgment is simply a vehicle to tee up a case for judicial review." Bos. Redevelopment Auth. v. Nat'l Park Serv., 838 F.3d 42, 47 (1st Cir. 2016). The Court therefore reviews the parties' cross-motions for summary judgment "not to determine whether a dispute of fact remains," but rather to adjudicate, based on the administrative record, whether the Wind Order satisfies the APA's requirements. Id.

Under the APA, the Court must "hold unlawful and set aside agency action, findings, and conclusions found to be," inter alia, "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," 5 U.S.C. § 706(2)(A), or "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right," id. § 706(2)(C). Judicial review of agency action under these standards is deferential and narrow. See Littlefield v. U.S. Dep't of the Interior, 85 F.4th 635, 643 (1st Cir. 2023).

The Court first addresses the issue of whether the Wind Order is a final agency action subject to judicial review. Finding that

17

it is, the Court then resolves, in turn, Plaintiffs' arguments that the Wind Order is arbitrary and capricious and contrary to law.

### A.    Final Agency Action

Under the APA, plaintiffs may challenge an "agency action," 5 U.S.C. § 706, which is defined to "include[] the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act," id. § 551(13); see id. § 701(b)(2). An agency action is "subject to judicial review" if it is "made reviewable by statute" or, as relevant here, when it is a "final agency action." Id. § 704. The Agency Defendants contend that the Wind Order is not a challengeable final agency action.

An agency action is considered "final" under the APA if two conditions are satisfied: "First, the action must mark the consummation of the agency's decisionmaking process -- it must not be of a merely tentative or interlocutory nature. And second, the action must be one by which rights or obligations have been determined, or from which legal consequences will flow." U.S. Army Corps of Eng'rs v. Hawkes Co., 578 U.S. 590, 597 (2016) (quoting Bennett v. Spear, 520 U.S. 154, 177-78 (1997)). The Court addresses each of these conditions in turn and concludes that each of them is met.

18

### 1.  Consummation

The threshold question is whether a "temporary" pause can qualify as a "consummation of the agency's decisionmaking process." Id. (quoting Bennett, 520 U.S. at 178). The Court determines that it can.

An agency action can satisfy the "consummation" prong "notwithstanding the agency's characterization of the [action] as an interim" one. Nat. Res. Def. Council v. Wheeler, 955 F.3d 68, 78 (D.C. Cir. 2020). That is because

> an interim agency resolution counts as final agency action despite the potential for a different permanent decision, as long as the interim decision is not itself subject to further consideration by the agency. In that event, the interim resolution is the final word from the agency on what will happen up to the time of any different permanent decision.

Id.; see, e.g., Clean Air Council v. Pruitt, 862 F.3d 1, 6 (D.C. Cir. 2016) (per curiam) (noting that an "interim" modification of the status quo can constitute final agency action); Salazar v. King, 822 F.3d 61, 83-84 (2d Cir. 2016) ("The APA does not require that the challenged agency action be the agency's final word on the matter for it to be 'final' for the purposes of judicial review."). Relatedly, "when agencies opt to make final administrative determinations in [a] two-stage way," the initial stage of the process may be a final agency action if it "itself [has] altered the legal status quo." Glob. Tower Assets, LLC v. Town of Rome, 810 F.3d 77, 84 (1st Cir. 2016).

19

These principles have led various courts to conclude that an agency-imposed suspension of certain activities constitutes final agency action. See, e.g., Minard Run Oil Co. v. U.S. Forest Serv., 670 F.3d 236, 247-49 (3d Cir. 2011) (holding that moratorium on mineral drilling until completion of environmental impact statement constituted final agency action); Louisiana, 622 F. Supp. 3d at 291-93 (holding that indefinite "pause" on issuing new oil and natural gas leases constituted final agency action); Texas v. United States, 524 F. Supp. 3d 598, 642-43 (S.D. Tex. 2021) (holding that "100-day pause on removals" constituted final agency action); cf. Env't Def. Fund, Inc. v. Gorsuch, 713 F.2d 802, 813 (D.C. Cir. 1983) ("[S]uspension of the permit process as to a class of waste management facilities amounts to a suspension of the effective date of regulation governing that class, and may be reviewed . . . as the promulgation of a regulation.").[8] Even if a moratorium may eventually be lifted, the agency action effecting it "represents the consummation of the [agency]'s decisionmaking process with respect to the moratorium" and therefore is subject to APA challenge. Minard, 670 F.3d at 248 (emphasis added); see Texas, 524 F. Supp. 3d at 642 ("The immediacy of the implementation

---

[8] Various other courts have reached the same or similar conclusion. See, e.g., Louisiana, 622 F. Supp. 3d at 291-92 (collecting cases); Stenson Tamaddon, LLC v. U.S. IRS, 742 F. Supp. 3d 966, 988 (D. Ariz. 2024).

of the . . . pause demonstrates [the agency]'s decision <u>with regard to the pause itself</u> is final." (emphasis added)).

This case law makes clear that the Wind Order marks the consummation of the Agency Defendants' decisionmaking process. It is undisputed that the Wind Order "altered the legal status quo" under which the relevant agencies previously processed applications for leases, permits, and other authorizations necessary for wind project development. <u>Glob. Tower Assets</u>, <u>810 F.3d at 84</u>. And the Agency Defendants concede that the Wind Order will remain in effect until, at the earliest, the Comprehensive Assessment is complete. In other words, the Wind Order -- despite being "characteriz[ed] . . . as an interim" undertaking -- "is the final word from the [A]gency [Defendants] on what will happen up to the time of any different permanent decision" resulting from the Comprehensive Assessment. <u>Wheeler</u>, <u>955 F.3d at 78</u>.

More than ten months after the Wind Order instituted a "temporary" pause on the issuance of wind energy authorizations, no end to the Comprehensive Assessment appears to be in sight. The Agency Defendants neither included a timeline for that assessment in the administrative record nor provided an anticipated end date during the course of this litigation. The long-term nature of the Wind Order reinforces the finding that it constitutes final agency action.

21

## 2. Legal Consequences

Under the second prong of the finality test, an agency action is final only if it is "one by which rights or obligations have been determined[] or from which legal consequences will flow." Hawkes Co., 578 U.S. at 597 (quoting Bennett, 520 U.S. at 178). Courts have regularly determined that this condition is satisfied when an indefinite pause is imposed by an agency. See, e.g., Louisiana, 622 F. Supp. 3d at 291 (concluding that "[t]here [was] no real question that [p]laintiff [s]tates ha[d] met the second prong of the Bennett test" due to a suspension of oil and natural gas lease issuance); Texas, 524 F. Supp. 3d at 643 (holding that "legal consequences . . . undoubtedly flow[ed]" from an 100-day pause on removals); Doe v. Trump, 288 F. Supp. 3d 1045, 1070 (W.D. Wash. 2017) ("[A] 'suspension' or an indefinite delay . . . has significant real-world impacts on Plaintiffs' various situations."). A suspension on agency authorizations "prevent[s] [p]laintiffs from moving forward" with their proposed activities, such that they are "trapped without recourse due to the indefinite postponement of agency action." Connecticut v. U.S. Dep't of the Interior, 363 F. Supp. 3d 45, 60 (D.D.C. 2019) (quoting Soundboard Ass'n v. FTC, 888 F.3d 1261, 1268 (D.C. Cir. 2018)).

The Wind Order "gives rise to 'direct and appreciable legal consequences'" and thus satisfies the second prong of the finality test. Hawkes Co., 578 U.S. at 598 (quoting Bennett, 520 U.S. at

22

178). Until full processing of applications related to wind energy projects resumes, no such project can move forward. Indeed, as was previously held in this litigation, the Wind Order amounts to a "de facto suspension of the law with respect to wind energy development." Massachusetts, 790 F. Supp. 3d at 27. For many of the same reasons that Plaintiffs have standing, see supra Section I, the legal consequences of the Wind Order are apparent.

The Court therefore concludes that the Wind Order constitutes a final agency action. Having made this threshold determination, the Court now turns to adjudicating whether the Wind Order complies with the APA.

### B. Arbitrary and Capricious

Plaintiffs contend that the Wind Order is arbitrary and capricious in violation of the APA. See 5 U.S.C. § 706(2)(A) (instructing courts to "hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, [or] an abuse of discretion"). Plaintiffs highlight the sparsity of the administrative record (which consists solely of the Wind Memo and the Interior Department's implementing order), arguing that the Agency Defendants were obligated under the APA, and failed, to analyze their options and explain the basis for the Wind Order, notwithstanding that the Agency Defendants acted pursuant to the Wind Memo.

*1. Applicability of Arbitrary-and-Capricious Review*

At the outset, the Court must address the difficult issue raised by the Agency Defendants' argument that arbitrary-and-capricious review does not even apply because their action was directed by the President. The Agency Defendants contend that because they "merely followed" the Wind Memo "as the [Wind Memo] itself commands," the Wind Order did not constitute a "decision" and therefore no reasoned explanation was required. Dkt. 209 at 6. In effect, the Agency Defendants ask this Court to hold that an agency is exempt from the requirements of § 706(2)(A) whenever it acts pursuant to a presidential command.

Circuit precedent forecloses this argument. The First Circuit has noted that an "agency action that carries out a presidential directive is ordinarily subject to APA review." Agatha v. Trump, 151 F.4th 9, 11 (1st Cir.), rev'd on other grounds, Trump v. Orr, __ S. Ct. __ (2025) [2025 WL 3097824]; see also New York v. Trump, 133 F.4th 51, 70 n.17 (1st Cir. 2025) (noting that the APA's restrictions are properly applied to agencies' "actions under . . . [e]xecutive [o]rders"). At least two other circuits have reached similar conclusions. See Nebraska v. Su, 121 F.4th 1, 15 (9th Cir. 2024) ("The Supreme Court has never excepted a final rule from APA review because it carried out a presidential directive."); Chamber of Com. of the U.S. v. Reich, 74 F.3d 1322, 1327 (D.C. Cir. 1996) ("[T]hat the [agency]'s regulations are based

24

on the President's Executive Order hardly seems to insulate them from judicial review under the APA . . . .").[9]

That does not end the matter, however, because a recent order on the Supreme Court's emergency docket addressed the applicability of the APA to an agency decision pursuant to a presidential directive. See Orr, __ S. Ct. __ [2025 WL 3097824]. Due to that order's relevance to the Agency Defendants' central argument here, an in-depth discussion of the procedural history of Orr is warranted.

The litigation culminating in the Supreme Court's order in Orr involved an "Executive Branch policy requiring all new passports to display an individual's biological sex at birth." __ S. Ct. at __ [2025 WL 3097824, at *1]. On January 20, 2025, President Trump signed an executive order directing the State Department to require every passport to list its holder's biological sex assigned at birth. See Orr v. Trump, 778 F. Supp. 3d 394, 400 (D. Mass. 2025). In late January 2025, the State Department implemented that executive order by "requir[ing] all passports to reflect only applicants' sex assigned at birth" and

---

[9] Numerous district courts have held the same. See Kingdom v. Trump, No. 25-cv-691, 2025 WL 1568238, at *10 (D.D.C. June 3, 2025) (collecting cases); see also, e.g., Drs. for Am. v. Off. of Pers. Mgmt., 793 F. Supp. 3d 112, 145 (D.D.C. 2025); Woonasquatucket River Watershed Council v. U.S. Dep't of Agric., 778 F. Supp. 3d 440, 471 (D.R.I. 2025), appeal filed, No. 25-1428 (1st Cir. May 1, 2025); Louisiana, 622 F. Supp. 3d at 294-95.

mandating that all passport holders report their sex as either male or female. Id. A group of plaintiffs initiated several legal challenges to this State Department policy. See id. As relevant here, the plaintiffs claimed that the policy was arbitrary and capricious under the APA because "the record indicate[d] that the State Department considered virtually nothing aside from the [e]xecutive [o]rder's directive when it developed" the policy. Id. at 424.

Another session of this Court agreed and issued a preliminary injunction barring enforcement of the policy as to certain of the plaintiffs. See id. at 423-25, 433. The court noted that the policy "was adopted and announced mere days after" the executive order was issued and that the State Department had failed to "make factual findings," "explain why the facts supporting [its] prior passport policy no longer carr[ied] weight," and "address reliance interests affected by its reversal of the prior policy." Id. at 423-24.

Importantly, in arriving at this conclusion, the district court rejected two distinct arguments made by the government. First, the court disagreed with the government's position that the passport policy was unreviewable under the APA, holding that the "APA contains no exception for agency actions . . . that carry out an executive order." Id. at 419. Second, the government contended that 22 U.S.C. § 211a -- which provides that the Secretary of State

26

may grant passports "under such rules as the President shall designate and prescribe" -- was "reason enough" for the State Department's adoption of the policy pursuant to the President's executive order, such that further study and explanation of the relevant issues was not required. Id. at 424. The court rejected this argument as well. See id.

The government appealed the district court's order and moved for a stay pending appeal. The First Circuit denied the motion. See Agatha, 151 F.4th at 13. In so doing, the First Circuit, like the district court, addressed the government's two distinct arguments in turn. First, the First Circuit disagreed with the government's argument that the passport policy was "not subject to review under the APA because it was 'compelled by' the President's [e]xecutive [o]rder." Id. at 11. The First Circuit then rejected the government's argument that the passport policy was "unreviewable" because § 211a "commits the action [concerning the content of passports] to the President's sole discretion." Id.

Having failed to persuade the First Circuit, the government turned to the Supreme Court. In its briefing in support of its application for a stay pending appeal, the government emphasized the atypicality of the situation given the existence of § 211a. Because § 211a "itself requires the [State] Department to follow the President's 'rules,'" the government argued, the State "Department considered the only aspect relevant . . .: that

27

[§ 211a] required it to follow" the executive order. Application for a Stay at 29-30, Orr, __ S. Ct. __ (No. 25A319) (quoting 22 U.S.C. § 211a). The government distinguished this situation from the ordinary "case where the challenged agency action is the exercise of discretion 'delegated to an agency head but directed by the President,'" highlighting that the litigation instead presented "a case where the exercise of discretion is 'committed to . . . the President' himself, and the challenged agency action just ministerially carries out the President's decision." Id. at 27 (alteration in original) (quoting Elena Kagan, Presidential Administration, 114 Harv. L. Rev. 2245, 2351 (2001)); see also Reply in Support of Application for Stay at 11, Orr, __ S. Ct. __ (No. 25A319) ("This case thus starkly contrasts with cases respondents cite where statutes vested an agency with the relevant decisionmaking authority." (citation omitted)). Given that distinction, the government stressed, the fact pattern in Orr did not "require the Court to hold that 'agencies automatically meet the APA's procedural requirements when they implement the President's policy views.'" Reply in Support of Application for Stay at 2-3, Orr, __ S. Ct. __ (No. 25A319) (quoting Respondents' Opposition to Application for Stay at 24, Orr, __ S. Ct. __ (No. 25A319)).

On November 6, 2025, the Supreme Court granted the government's stay application. See Orr, __ S. Ct. at __ [2025 WL

3097824, at *1]. Only one sentence of the Supreme Court's order is relevant here:

> Nor are respondents likely to prevail in arguing that the State Department acted arbitrarily and capriciously by declining to depart from Presidential rules that Congress expressly required it to follow. See 22 U.S.C. § 211a.

Id. (emphasis added). The phrasing of this sentence, in conjunction with the Supreme Court's citation to § 211a, makes clear that the Supreme Court is likely to accept the government's second argument -- i.e., that an agency need not provide a reasoned explanation, other than pointing to an executive order, in the specific scenario where a statute (such as § 211a) expressly delegates discretion to the President himself and "require[s] [the agency] to follow" directives pursuant to that delegation. Application for a Stay at 30, Orr, __ S. Ct. __ (No. 25A319). The Supreme Court's order says nothing, however, about the government's first argument -- i.e., that all other agency actions pursuant to executive orders are likewise exempted from the APA's requirement of reasoned explanation.

Indeed, interpreting Orr to have addressed the government's first argument would be inconsistent with Supreme Court precedent. The Supreme Court has previously directed arbitrary-and-capricious review of an agency action under the APA even where that agency action was carried out pursuant to a presidential directive. See Biden v. Texas, 597 U.S. 785, 793, 807-14 (2022) (holding that

29

agency memoranda issued pursuant to an executive order constituted final agency action under the APA and directing the district court to "consider . . . whether the [memoranda] comply with section 706 of the APA" (citing Motor Vehicle Mfrs. Ass'n of the U.S. v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 46-57 (1983)). Because the Supreme Court "does not normally overturn, or . . . dramatically limit, earlier authority sub silentio," Shalala v. Ill. Council on Long Term Care, Inc., 529 U.S. 1, 18 (2000), the Supreme Court's order in Orr cannot reasonably be read to imply that all agency actions stemming from presidential directives are exempted from APA review.

Accordingly, mindful that the reasoning of orders on the Supreme Court's emergency docket serve as precedent for lower courts, see Nat'l Insts. of Health v. Am. Pub. Health Ass'n, 145 S. Ct. 2658, 2660 (2025), this Court concludes that Orr did not overrule First Circuit precedent dictating that "agency action that carries out a presidential directive is ordinarily subject to APA review." Agatha, 151 F.4th at 11 (emphasis added); see New York, 133 F.4th at 70 n.17. Rather, that precedent still applies where no statute "expressly require[s] [the agency] to follow" a presidential directive. Orr, __ S. Ct. at __ [2025 WL 3097824, at *1].

Moreover, that method of applying APA review makes good sense. Where, as the government noted in its briefing in Orr, a statute

"expressly vests 'the President,' not the agency, with exclusive authority" to prescribe a rule, "[t]hat delegation puts the President's 'authority . . . at its maximum.'" Reply in Support of Application for Stay at 9, Orr, __ S. Ct. __ (No. 25A319) (second alteration in original) (first quoting 22 U.S.C. § 211a; and then quoting Youngstown Sheet & Tube Co. v. Sawyer, 343 U.S. 579, 635 (1952) (Jackson, J., concurring)). In such a scenario, requiring an agency to assess all relevant factors and issue a reasoned explanation before acting -- despite its discretion being specifically circumscribed by Congress's mandate that the agency follow the President's directive -- would contravene Congress's instructions and operate as an unauthorized (and pointless) workaround of the Supreme Court's holding that the President's own "actions are not subject to [the APA's] requirements." Franklin v. Massachusetts, 505 U.S. 788, 801 (1992); cf. Bradford v. U.S. Dep't of Lab., 101 F.4th 707, 731 (10th Cir. 2024) (finding that an agency action cannot "be[] an arbitrary and capricious exercise of agency discretion [where] the agency ha[s] no discretion to act otherwise"), cert. denied, 145 S. Ct. 1047 (2025). But where a "challenge is to an action delegated to an agency head but directed by the President," rather than "to an action that Congress ha[s] committed to the sole discretion of the President," a "different situation obtains: then, . . . the review provisions [of the APA] usually applicable to that agency's action should govern." Kagan,

31

supra, at 2351.[10] Insulating an agency action from arbitrary-and-capricious review in such a circumstance would undermine the APA and "shockingly allow Presidents to insulate any desired rulemaking from judicial review with the single stroke of an executive pen." Su, 121 F.4th at 15.

_____

[10] The Court finds Justice Kagan's prescient treatment of this topic persuasive. In relevant part, her 2001 article states as follows:

> It is true that the Supreme Court held in Franklin v. Massachusetts that the President is not an "agency" as defined in the APA and his actions therefore are not subject to the judicial review provisions of that statute. This decision, however, arose from a challenge to an action that Congress had committed to the sole discretion of the President, separate from and subsequent to agency involvement. When the challenge is to an action delegated to an agency head but directed by the President, a different situation obtains: then, the President effectively has stepped into the shoes of an agency head, and the review provisions usually applicable to that agency's action should govern. Nothing in Franklin's interpretation of the APA or in its -- or any other case's -- underlying discussion of separation of powers issues is to the contrary. As Strauss notes, ever since Marbury v. Madison, the Court has posited a sphere of "superstrong" presidential discretion over political matters, not amenable to judicial control; but never has the Court indicated, nor could it consistent with rule of law principles, that all exercises of presidential authority fall within this zone. And so long as the courts remain open to legal challenges, the use of presidential directive authority cannot too greatly displace the clear preferences of the prior enacting (as opposed to the current overseeing) Congress with respect to agency action.

Kagan, supra, at 2350-51 (footnotes omitted) (quoting Peter L. Strauss, Presidential Rulemaking, 72 Chi.-Kent L. Rev. 965, 977 (1997)).

Here, the Agency Defendants concede that no statute expressly requires them to follow rules prescribed by the President regarding wind energy authorizations. The language of the Wind Memo itself provides insight on this point: the first section of the Wind Memo, which is not at issue in this litigation, specifically invokes section 12(a) of OCSLA -- which vests discretion in the "President of the United States" to "withdraw from disposition any of the unleased lands of the [O]uter Continental Shelf," 43 U.S.C. § 1341(a) -- to effect a withdrawal of such lands for wind energy leasing.[11] See Temporary Withdrawal of All Areas, 90 Fed. Reg. at 8363. The second section of the Wind Memo, in contrast, invokes no statutory grant of authority to the President, instead merely instructing certain agencies to implement a suspension of wind energy authorizations "consistent with applicable law." Id. at 8364; see id. at 8363-64. Indeed, Plaintiffs identify various statutes governing the permitting of wind projects that contemplate the prompt processing of permit applications by agencies, potentially indicating that the President's "power is at its lowest ebb" in directing otherwise. Youngstown Sheet & Tube Co., 343 U.S. at 637 (Jackson, J., concurring).

---

[11] The Court notes that § 1341(a) is similar to § 211a in that both statutes expressly vest discretion in the President to take a specified action.

33

Because Congress has not "committed to the sole discretion of the President" the ability to suspend wind energy authorizations, the "usually applicable" arbitrary-and-capricious standard of the APA governs the Court's review. Kagan, supra, at 2351. And, as the Court now will explain, the Agency Defendants have not satisfied that standard.

### 2.   Application to Wind Order

"The APA's arbitrary-and-capricious standard requires that agency action be reasonable and reasonably explained." FCC v. Prometheus Radio Project, 592 U.S. 414, 423 (2021). A court will generally not disturb an agency action unless "the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency," or provided reasoning "so implausible that it could not be ascribed to a difference in view or the product of agency expertise." State Farm, 463 U.S. at 43. This standard of review is "deferential": the "court may not substitute its policy judgment for that of the agency." Prometheus Radio Project, 592 U.S. at 423.

"A change in administration brought about by the people casting their votes is a perfectly reasonable basis for an executive agency's reappraisal of the costs and benefits of its programs and regulations." State Farm, 463 U.S. at 59 (Rehnquist,

34

J., concurring). To change its "existing policies," an agency need only "provide a reasoned explanation for the change." Encino Motorcars, LLC v. Navarro, 579 U.S. 211, 221 (2016). That obligation "ordinarily demand[s] that [the agency] display awareness that it is changing position" but does not justify the application of a "heightened standard" of review. FCC v. Fox Television Stations, Inc., 556 U.S. 502, 514-15 (2009). The agency "need not demonstrate to a court's satisfaction that the reasons for the new policy are better than the reasons for the old one; it suffices that the new policy is permissible . . ., that there are good reasons for it, and that the agency believes it to be better." Id. at 515. When the agency's new position "rests upon factual findings that contradict those which underlay [the] prior" position or when the agency's prior position "has engendered serious reliance interests," however, the agency may be required to provide a "more detailed justification." Id.

Here, the administrative record consists of only two documents: the Wind Memo and the Interior Department's written order suspending the issuance of renewable energy authorizations pursuant to the Wind Memo. See Dkt. 165-2; Dkt. 165-3; Dkt. 165-5; Dkt. 165-7; Dkt. 165-9. The Agency Defendants have certified that these two documents constitute the entirety of the "evidence considered, directly or indirectly, by [the Agency] Defendants for the alleged decision" to "temporarily cease issuing new approvals

35

and other authorizations" pursuant to the Wind Memo. Dkt. 165 at 2, 4; see Dkt. 165-1 ¶ 6; Dkt. 165-4 ¶ 3; Dkt. 165-6 ¶ 6; Dkt. 165-8 ¶ 5. Although the Interior Department's written order stated that it would expire in sixty days and purported only to bind divisions of the Interior Department, all Agency Defendants acknowledge that they will continue to carry out the Wind Order at least until the completion of the Comprehensive Assessment. See, e.g., Dkt. 180 at 13.

This scant administrative record makes clear, and the Agency Defendants do not meaningfully dispute, that the Agency Defendants have not "reasonably considered the relevant issues and reasonably explained the[ir] decision" to implement the Wind Order. Prometheus Radio Project, 592 U.S. at 423. Indeed, the Agency Defendants candidly concede that the sole factor they considered in deciding to stop issuing permits was the President's direction to do so.

Further, given that the Wind Order constitutes a change of course from decades of agencies' issuing (or denying) permits related to wind energy projects, the Agency Defendants were required, at minimum, to "provide a reasoned explanation for the change" and to "display awareness that [they were] changing position." Encino Motorcars, 579 U.S. at 221 (quoting Fox Television, 556 U.S. at 515). They failed to do so. Instead, they implemented the Wind Order on Inauguration Day without elucidating

36

the "reasons for the new policy." Fox Television, 556 U.S. at 515. And even assuming, arguendo, that the Wind Memo itself could be characterized as the Agency Defendants' own explanation for their manner of implementing it, the Wind Memo does not provide adequate explanation: It merely includes a single sentence citing "various alleged legal deficiencies underlying" wind permitting, "potential inadequacies in various environmental reviews," and the possibility that these vaguely defined issues "may lead to grave harm." Temporary Withdrawal of All Areas, 90 Fed. Reg. at 8363 (emphases added). The Court is "unable to divine or fathom a relationship between" this cursory sentence "and the immense scope of the moratorium" on all wind energy authorizations. Hornbeck Offshore Servs., L.L.C. v. Salazar, 696 F. Supp. 2d 627, 637 (E.D. La. 2010). Whatever level of explanation is required when deviating from longstanding agency practice, this is not it.

The Agency Defendants also failed to account for reliance interests engendered by their previous policy of adjudicating wind permit applications. For example, the State Plaintiffs point out that various states "have designed their energy policies to rely on [the] development of" wind energy projects, including by setting procurement and pollution-reduction targets. Dkt. 173 at 32. The Agency Defendants were obligated, at minimum, to "assess whether there were reliance interests, determine whether they were significant, and weigh any such interests against competing policy

37

concerns." Dep't of Homeland Sec. v. Regents of the Univ. of Cal., 591 U.S. 1, 33 (2020). They did not do so, let alone provide the "more detailed justification" required upon determining that serious reliance interests exist. Fox Television, 556 U.S. at 515.

Accordingly, the Court finds that the Wind Order is arbitrary and capricious. The Wind Order therefore must be set aside. See 5 U.S.C. § 706(2)(A).

C.    Contrary to Law

Next, Plaintiffs claim that the Wind Order is "not in accordance with law," id., and "in excess of statutory . . . authority," id. § 706(2)(C). These two provisions of the APA contain a "linguistic distinction without a practical difference" in the context of an agency action that is allegedly contrary to statutory requirements. Victim Rts. L. Ctr. v. Cardona, 552 F. Supp. 3d 104, 127 (D. Mass. 2021). An agency action also must be set aside as contrary to law when it is inconsistent with regulations. See, e.g., Nat'l Env't Dev. Ass'n's Clean Air Project v. EPA, 752 F.3d 999, 1011 (D.C. Cir. 2014); see also Norton v. S. Utah Wilderness All. (SUWA), 542 U.S. 55, 65 (2004) (noting that "law," as used in the APA, "includes . . . agency regulations that have the force of law").

Multiple statutes and regulations provide the permitting architecture for wind projects. See supra note 7. These laws contain a variety of fixed deadlines, see, e.g., 33 U.S.C.

38

§ 1344(a) (requiring the Army Corps of Engineers to publish notice of a dredge-and-fill permit application within fifteen days of a completed application), and also more general language commanding agencies to act promptly, see, e.g., 50 C.F.R. § 13.11(c) (requiring the U.S. Fish and Wildlife Service to process certain permit applications "as quickly as possible").

Plaintiffs contend that the Wind Order violates various specific and general statutory and regulatory permitting deadlines, as well as provisions of the APA requiring reasonably expeditious agency proceedings, see 5 U.S.C. §§ 555(b), 558(c). The Agency Defendants respond that because "Congress has set deadlines in issuing decisions on some types of wind energy project applications but has left others to the discretion of the applicable agency," the Agency Defendants can theoretically satisfy all specific deadlines while still lawfully withholding final decisions on wind energy authorizations pursuant to the Wind Order. Dkt. 180 at 37.

Even if specific processing deadlines are met, the Wind Order necessarily directs agencies to violate two APA provisions. See FCC v. NextWave Pers. Commc'ns Inc., 537 U.S. 293, 300 (2003) (noting that an agency action is contrary to law under § 706(2) if it is inconsistent with "any law, . . . not merely those laws that the agency itself is charged with administering"). First, the APA requires that "within a reasonable time, [an] agency shall proceed

39

to conclude a matter presented to it." 5 U.S.C. § 555(b). This provision "imposes a general but nondiscretionary duty upon an administrative agency to pass upon a matter presented to it 'within a reasonable time.'" Mashpee Wampanoag Tribal Council, Inc. v. Norton, 336 F.3d 1094, 1099 (D.C. Cir. 2003) (quoting 5 U.S.C. § 555(b); accord, e.g., Fed. Energy Regul. Comm'n v. Powhatan Energy Fund, LLC, 949 F.3d 891, 903 (4th Cir. 2020); see also Kingdomware Techs., Inc. v. United States, 579 U.S. 162, 171 (2016) ("[T]he word 'shall' usually connotes a requirement.").

Second, "[w]hen application is made for a license required by law, [an] agency, . . . within a reasonable time, shall set and complete proceedings required to be conducted in accordance with" procedures governing formal adjudications "or other proceedings required by law and shall make its decision." 5 U.S.C. § 558(c).[12] This provision requires that any adjudicatory hearings mandated by law with respect to license applications "be set and completed in an expeditious and judicious manner." City of West Chicago v. U.S. Nuclear Regul. Comm'n, 701 F.2d 632, 644 (7th Cir. 1983) (quoting Marathon Oil Co. v. EPA, 564 F.2d 1253, 1260 n.25 (9th Cir. 1977));

---

[12] The Agency Defendants contend that § 558(c) governs only "formal adjudications and rulemakings involving licenses." Dkt. 209 at 18 n.9. Not so. The provision also expressly contemplates "other proceedings required by law." 5 U.S.C. § 558(c); see Marathon Oil Co. v. EPA, 564 F.2d 1253, 1260 n.25 (9th Cir. 1977) (noting that § 558(c) extends to "other types of licensing proceedings" beyond formal adjudications governed by §§ 556 and 557).

40

accord, e.g., Beach TV Props., Inc. v. Solomon, No. 15-1823, 2016 WL 6068806, at *12 (D.D.C. Oct. 14, 2016). The term "license" is defined broadly by the APA to include any "permit, certificate, approval, registration, charter, membership, statutory exemption or other form of permission." 5 U.S.C. § 551(8). As noted in the Attorney General's Manual on the APA -- "a document whose reasoning [the Supreme Court] ha[s] often found persuasive," SUWA, 542 U.S. at 63 -- § 558(c) requires agencies to "hear and decide licensing proceedings as quickly as possible." Attorney General's Manual on the Administrative Procedure Act 89-90 (1947); see Marathon Oil, 564 F.2d at 1260 n.25. As with § 555(b), the word "shall" in § 558(c) reflects that that provision's directive is nondiscretionary. See Kingdomware Techs., 579 U.S. at 171.

The Wind Order is contrary to both of these provisions of the APA. An indefinite halt on issuing (or denying) all authorizations related to wind projects violates the statutory requirement that agencies must "proceed to conclude . . . matter[s] presented to" them "within a reasonable time." 5 U.S.C. § 555(b); see Ensco Offshore Co. v. Salazar, 781 F. Supp. 2d 332, 336-37 (E.D. La. 2011) (holding that the Interior Department's inaction on permit applications pursuant to a moratorium on offshore drilling likely was inconsistent with § 555(b)). Nor is the moratorium on permitting of wind energy projects consistent with the Agency Defendants' obligation to "set and complete

41

proceedings" and "make [their] decision[s]" on license applications "within a reasonable time." 5 U.S.C. § 558(c).

Of course, §§ 555(b) and § 558(c) do not require any particular result, and the Court expresses no view on whether the Agency Defendants should issue or withhold any particular permit. Cf. Massachusetts, 790 F. Supp. 3d at 21 ("It is a feature, not a bug, of th[e] [APA] that, when the smoke settles, the parties may find themselves in roughly the same place they began."). But, while a President may direct a reappraisal of permitting practices after a change of administration, see State Farm, 463 U.S. at 59 (Rehnquist, J., concurring), the Agency Defendants may not, as they have done here, decline to adjudicate applications altogether, for an unspecified time, pending the completion of a wide-ranging assessment with no anticipated end date. See Louisiana, 622 F. Supp. 3d at 294 (holding that moratorium on oil and gas leasing was contrary to law because "[b]y stopping the process, the agencies [we]re in effect amending two Congressional statutes"); Texas, 524 F. Supp. 3d at 651-52 (finding that 100-day pause on removals likely was contrary to statute generally requiring removals within 90 days); Stenson Tamaddon, LLC v. U.S. IRS, 742 F. Supp. 3d 966, 992 (D. Ariz. 2024) (noting that an indefinite moratorium on processing certain claims would "directly contravene" a statute mandating that the agency "shall" process those claims). Rather, the Agencies must "either grant[] or deny[]

42

[each] permit application within a reasonable time. Not acting at all is not a lawful option." Ensco, 781 F. Supp. 2d at 336.

The Agency Defendants resist this conclusion by arguing that Plaintiffs' § 706(2) challenge is an improper vehicle for challenging agency inaction in alleged violation of §§ 555(b) and 558(c). In their view, Plaintiffs have used the wrong tool in the APA toolbox. According to the Agency Defendants, Plaintiffs' sole potential avenue for relief was through § 706(1), which allows courts to "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1). See generally SUWA, 542 U.S. at 61-65 (discussing this provision).

Not so. Sections 706(1) and 706(2) are not mutually exclusive. See All. To Save The Mattaponi v. U.S. Army Corps of Eng'rs, 515 F. Supp. 2d 1, 10 (D.D.C. 2007); see also, e.g., Hi-Tech Pharmacal Co. v. U.S. FDA, 587 F. Supp. 2d 1, 10 (D.D.C. 2008) (noting that a "failure to act" that "is the functional equivalent of final agency action" may form "the basis for an APA claim pursuant to [§] 706(2)"). For that reason, multiple courts have held agency policies of inaction to be contrary to law under § 706(2). See, e.g., Louisiana, 622 F. Supp. 3d at 294; Texas, 524 F. Supp. 3d at 651-52. The Court does the same here.

Nor does the Wind Memo's savings clause -- which instructs agencies to "implement[] [the Wind Memo] consistent with applicable law" -- warrant a different conclusion. Temporary

43

Withdrawal of All Areas, 90 Fed. Reg. at 8364. It may be true, as the Agency Defendants argue, that if an "agency is capable of following an Executive directive 'consistent with applicable law,' it must be permitted to do so." Dkt. 180 at 42; cf. Trump v. Am. Fed'n of Gov't Emps., 145 S. Ct. 2635, 2635 (Sotomayor, J., concurring) (noting, where agency reduction-in-force plans pursuant to an executive order with similar savings clause were not yet before the Supreme Court, that the Court had "no occasion to consider whether the[] [plans] c[ould] and w[ould] be carried out consistent with the constraints of law"). But Plaintiffs have challenged "the Agency Defendants' actions under the" Wind Memo, not the Wind Memo itself. New York, 133 F.4th at 70 n.17. The proof is in the pudding: No permits have issued since the Wind Order was promulgated, and the Agency Defendants acknowledge that they will not issue any permits at least until they complete the Comprehensive Assessment, for which there is no timeline. See, e.g., Dkt. 123-2 ¶ 6 ("The [Army] Corps [of Engineers] . . . does not intend to issue any permits until the [C]omprehensive [A]ssessment . . . is completed."). That action is contrary to law. See Louisiana, 622 F.3d at 275, 294 (holding pause on oil and gas leasing to be contrary to law despite being implemented pursuant to executive order containing similar savings clause).

44

For these reasons, in addition to being arbitrary and capricious, the Wind Order must be set aside on the independent basis that it is contrary to law. See 5 U.S.C. § 706(2)(A), (C).[13]

## IV.  Remedy

Where, as here, a court determines that an agency action is arbitrary and capricious or contrary to law, the APA authorizes the court to "hold unlawful and set aside" that action. 5 U.S.C. § 706(2). "[T]he ordinary result" in response to finding an agency action unlawful "is that the [action is] vacated -- not that [its] application to the individual p[laintiffs] is proscribed." Nat'l Mining Ass'n v. U.S. Army Corps of Eng'rs, 145 F.3d 1399, 1409 (D.C. Cir. 1998) (quoting Harmon v. Thornburgh, 878 F.2d 484, 495 n.21 (D.C. Cir. 1989)); see Corner Post, Inc. v. Bd. of Governors of the Fed. Rsrv. Sys., 603 U.S. 799, 829-30 (2024) (Kavanaugh, J., concurring) ("The text and history of the APA authorize vacatur. . . . [T]o 'set aside' a[n] [agency action] is to vacate it."); Ass'n of Am. Univs. v. Dep't of Def., __ F. Supp. 3d __, __

---

[13] Because the Court concludes that the Wind Order must be set aside as substantively invalid, the Court need not resolve ACE NY's additional claim that the Wind Order is procedurally invalid due to being adopted without notice and comment. See Cent. Or. Hosp. Dist. v. Sullivan, 757 F. Supp. 1134, 1145 n.13 (D. Or. 1991) ("Plaintiff also alleges that the notice and comment procedures of the APA were violated . . . . Because the court has found the Secretary's actions arbitrary and capricious, the court does not reach this claim." (citation omitted)).

(D. Mass. 2025) [2025 WL 2899765, at *27-30] (explaining in depth why vacatur is appropriate under the APA).

The Agency Defendants request that the Court issue at most a "limited vacatur" that lifts implementation of the Wind Order only "with respect to the specific wind projects and their pending applications and authorizations that are found to be inconsistent with applicable law and for which [Plaintiffs] are able to prove a certainly impending harm." Dkt. 180 at 48. But although the Supreme Court recently held that courts lack the authority to issue universal injunctions, it specifically declined to alter existing law on "whether the [APA] authorizes federal courts to vacate federal agency action." Trump v. CASA, Inc., 606 U.S. 831, 847 & n.10 (2025) (citing 5 U.S.C. § 706(2))). Under circuit precedent, vacatur "is a proper remedy when an agency fails to explain its reasoning adequately" or has acted contrary to law. Harrington v. Chao, 280 F.3d 50, 60 (1st Cir. 2002). And "[g]iven the breadth of the [Wind Order's] coverage, the p[roject]-specific vacatur requested by the [Agency Defendants] is not feasible." Custom Commc'ns, Inc. v. FTC, 142 F.4th 1060, 1075 (8th Cir. 2025) (per curiam).

ACE NY also expressly requests that the Court issue a declaratory judgment that the Agency Defendants have violated the APA. Because the Agency Defendants "offer no specific objection to declaratory judgment as an available or appropriate form of

relief[,] . . . the Court will issue declaratory judgment." <u>Ass'n of Am. Univs.</u>, __ F. Supp. 3d at __ [<u>2025 WL 2899765</u>, at *30]; <u>see also Am. Pub. Health Ass'n v. Nat'l Insts. of Health</u>, <u>145 F.4th 39, 50</u> (1st Cir.) ("[D]eclaratory relief . . . is well within the scope of the APA."), <u>rev'd in part on other grounds</u>, <u>145 S. Ct. 2658</u> (2025). Nor do the Agency Defendants develop any argument that the Wind Order should be remanded to the relevant agencies.

Accordingly, the Court vacates the Wind Order and declares it unlawful in violation of <u>5 U.S.C. § 706(2)(A)</u> and <u>(C)</u>.

## ORDER

For the foregoing reasons, Plaintiffs' motions for summary judgment (Dkts. 172, 175) are **ALLOWED** and the Agency Defendants' motion for summary judgment (<u>Dkt. 179</u>) is **DENIED**. The Wind Order is declared unlawful, <u>see</u> <u>5 U.S.C. § 706(2)</u>, and is **VACATED** in its entirety.

SO ORDERED.

/s/ PATTI B. SARIS
Hon. Patti B. Saris
United States District Judge

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

STATE OF NEW YORK, *et al.,*

Plaintiffs,

v.

DONALD J. TRUMP, *et al.*,

Defendants.

No. 1:25-cv-11221-PBS

**[JOINT PROPOSED] JUDGMENT**[1]

This action came to decision before the Court. The issues have been tried or determined and a decision has been rendered.

**IT IS ORDERED AND ADJUDGED** that pursuant to this Court's Memorandum and Order on State Plaintiffs' and Plaintiff-Intervenor's Motions for Summary Judgment and Agency Defendants' Cross Motion for Summary Judgment entered on December 8, 2025 (ECF No. 234), judgment shall enter in favor of State Plaintiffs on Counts I and II of their First Amended Complaint and in favor of Plaintiff-Intervenor on Counts I and III of its Complaint against the Department of the Interior (and three of its subagencies: the Bureau of Ocean Energy Management, the Bureau of Land Management, and the U.S. Fish and Wildlife Service; and Douglas Burgum, in his official capacity as Secretary of the Interior; Matthew Giacona, in his

---

[1] This Proposed Judgment was submitted at the request of the Court, made during the December 15, 2025, status conference. By submitting this Proposed Judgment, Defendants in no way waive or concede any arguments that were asserted in earlier proceedings.

official capacity as Acting Director of the Bureau of Ocean Energy Management;[2] Bill Groffy, in his official capacity as Acting Director of the Bureau of Land Management;[3] and Brian Nesvik, in his official capacity as Director of the U.S. Fish and Wildlife Service[4] ), the Department of Commerce (and two of its subagencies: the National Oceanic and Atmospheric Administration and the National Marine Fisheries Service; and Howard Lutnick, in his official capacity as Secretary of Commerce; Neil A. Jacobs, in his official capacity as Administrator of the National Oceanic and Atmospheric Administration;[5] and Eugenio Pinerio-Soler, in his official capacity as Assistant Administrator for NOAA Fisheries), the Environmental Protection Agency (and Lee Zeldin, in his official capacity as Administrator of the Environmental Protection Agency), and the U.S. Army Corps of Engineers (and Lieutenant General William H. "Butch" Graham, Jr., in his official capacity as Chief of Engineers of the U.S. Army Corps of Engineers) (collectively, the "Agency Defendants").

**IT IS FURTHER ORDERED AND ADJUDGED** that each Agency Defendant's decision to implement section 2(a) of the Presidential Memorandum entitled *Temporary Withdrawal of All Areas on the Outer Continental Shelf from Offshore Wind Leasing and Review of the Federal Government's Leasing and Permitting Practices for Wind Projects*, 90 Fed. Reg. 8363 (Jan. 29, 2025), by not issuing new or renewed approvals, rights of way, permits, leases, or loans for onshore or offshore wind projects pending the completion of a comprehensive

---

[2] Pursuant to Federal Rule of Civil Procedure 25(d), Matthew Giacona is automatically substituted for Walter Cruickshank as Acting Director of the Bureau of Ocean Energy Management.

[3] Pursuant to Federal Rule of Civil Procedure 25(d), Bill Groffy is automatically substituted for Jonathan Raby as Acting Director of the Bureau of Land Management.

[4] Pursuant to Federal Rule of Civil Procedure 25(d), Brian Nesvik is automatically substituted for Paul Souza as Director of the U.S. Fish and Wildlife Service.

[5] Pursuant to Federal Rule of Civil Procedure 25(d), Neil A. Jacobs is automatically substituted for Laura Grimm as Administrator of the National Oceanic and Atmospheric Administration.

assessment and review of Federal wind leasing and permitting practices ("Wind Order"),[6] is

hereby **DECLARED** unlawful and is **VACATED** in its entirety.

      **IT IS FURTHER ORDERED** that given these rulings, the Court need not resolve Count

II of Plaintiff-Intervenor's Complaint and thus denies that claim without prejudice. State

Plaintiffs' and Plaintiff-Intervenor's remaining claims are dismissed consistent with the Court's

July 3, 2025, Memorandum and Order on Defendants' motion to dismiss. The Court retains

jurisdiction to enforce this judgment.

Date: _____12/18/25_____      _____

                                     Patti B. Saris
                          Judge, United States District Court

---

[6] For clarity, Agency Defendants' "Wind Order" does not include the Secretary of the Interior's January 20, 2025, Order 3415 (at ECF No. 165-3). By its terms, Secretary's Order 3415 expired once it was amended on January 29, 2025, and that amendment then expired 60 days after its issuance. While it was in effect, Secretary's Order 3415 temporarily suspended delegated authority from the Secretary to Department Bureaus and Offices to take various actions, including the issuance of onshore and offshore renewable energy authorizations, but did not purport to affect issuance of authorizations at higher levels within the Department.

3

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

STATE OF NEW YORK, *et al.*,

        Plaintiffs,

v.

DONALD J. TRUMP, in his official capacity
as President of the United States, *et al.*,

        Defendants.

Civil Action No. 1:25-cv-11221-PBS

### DEFENDANTS' NOTICE OF APPEAL

Notice is hereby given that Defendants in the above-captioned matter, through counsel of record, appeal to the United States Court of Appeals for the First Circuit from the District Court's Judgment entered on December 18, 2025, (Dkt. 240), and all adverse rulings incorporated in or ancillary to that judgment, including the Memorandum and Order dated December 8, 2025, (Dkt. 234) and the Memorandum and Order dated July 3, 2025, (Dkt. 162).

Respectfully submitted this 17th day of February 2026.

**ADAM R. F. GUSTAFSON**

Principal Deputy Assistant Attorney General
U.S. Department of Justice
Environment & Natural Resources Division

*/s/ Michael K. Robertson*

MICHAEL K. ROBERTSON
Trial Attorney (DC Bar No. 1017183)
U.S. Department of Justice
Environment & Natural Resources Division
Natural Resources Section
4 Constitution Square
150 M Street NE

1

Washington, DC 20002
Tel: (202)-305-9609
Email: Michael.Robertson@usdoj.gov

*Attorney for Federal Defendants*

2